# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

**THOMAS SHEPPHEARD,**
**TYLER RANDALL, and**
**ADAM PERRY, next friend and guardian of**
**Minor child J.P., on their own behalf**
**and on behalf of all others**
**similarly situated,**

      **Plaintiffs,**

**v.**                                       **Civil Action No. 5:23-cv-00530**
                                                            **Judge Irene C. Berger**

**JAMES C. JUSTICE JR., his official capacity**
**as Governor of the State of West Virginia, and**
**MARK SORSAIA, in his official capacity**
**as the Cabinet Secretary of the West Virginia**
**Department of Homeland Security,**

      **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT MARK SORSAIA'S MOTION TO DISMISS

**NOW COMES** the Defendant, Mark Sorsaia, in his official capacity as the Cabinet Secretary of the West Virginia Department of Homeland Security, by counsel, Natalie C. Schaefer, Caleb B. David, Kimberly M. Bandy and Shuman McCuskey Slicer PLLC, and submits this Memorandum of Law in support of his Motion to Dismiss.

## FACTUAL BACKGROUND

Plaintiffs' Complaint seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Eighth and Fourteenth Amendments. Compl. ¶1. Specifically, Plaintiffs allege that overcrowding, understaffing, and deferred maintenance at the facilities where they are housed constitute deliberate indifference to Plaintiffs' health and safety as a result of the conditions of confinement in the State's correctional facilities. Compl. ¶2. According to the

1

Complaint, Plaintiff Sheppheard is incarcerated at Mt. Olive Correctional Complex; Plaintiff Randall is incarcerated at Southwestern Regional Jail; and Plaintiff J.P. is incarcerated at Donald R. Kuhn Juvenile Center. Compl, ¶¶7-9. They allege that the action is brought on behalf of themselves and all others similarly situated. Compl. ¶4.

Plaintiffs bring this action against two Defendants, James C. Justice, Jr., the Governor of West Virginia, and Mark Sorsaia, the Cabinet Secretary for the West Virginia Department of Homeland Security, each in his official capacity. The only allegation in the Complaint that specifically relates to Defendant Sorsaia is that, "[a]s Cabinet Secretary of the WVDHS, Cabinet Secretary Sorsaia is charged with providing support, oversight, and guidance to the West Virginia Division of Corrections and Rehabilitation." Compl. ¶16. Plaintiffs seek extraordinarily broad-sweeping relief, asking this Court to direct the appropriation of 330 million dollars from West Virginia's budget surplus "in order to make all of the necessary deferred maintenance repairs" and to hire and pay correctional staff. Compl., Prayer for Relief at (e) and (f). Plaintiffs further seek to "compel [Defendants] to implement and enforce policies, procedures, and practices" and to "compel them to make all necessary structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions." Compl., Prayer for Relief at (c) and (d).

## STANDARD OF REVIEW

Defendant Sorsaia is entitled to dismissal pursuant to the Eleventh Amendment to the United States Constitution. It is unsettled in the Fourth Circuit whether Eleventh Amendment immunity is to be considered under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] To the extent that the specific Rule to be utilized is unsettled, relief is requested in the alternative under Rule 12(b)(1) and/or Rule 12(b)(6).

---

[1] *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000) ("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule

Defendant Sorsaia moves for dismissal pursuant to Rule 12(b)(1) based upon standing and mootness. Mootness raises a question of jurisdiction. *Jackson v. Moore*, No. 3:22-cv-452, 2023 U.S. Dist. LEXIS 95537, *13 (S.D.W. Va. May 8, 2023) (additional citations omitted). Standing is a question of subject matter jurisdiction. *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) (citing *Long Term Care Partners, LLC v. United States,* 516 F.3d 225, 230 (4th Cir. 2008)). The plaintiffs bear the burden of establishing standing to assert each of their claims. *Id.*

"On a motion to dismiss for lack of jurisdiction, the Court is not constrained to consider only the allegations of the complaint, but may consider materials outside the pleadings." *Kansas City Life Ins. Co. v. Citicorp Acceptance Co.*, 721 F. Supp. 106, 107 (S.D.W. Va. 1989) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "Such materials may be considered without converting a Rule 12(b)(1) motion to a motion for summary judgment." *Id.* (citing *Adams v. Bain*, 697 F.2d at 1219); (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). Concerning questions of jurisdiction, the Court may weigh the evidence and determine facts. *Id.* The burden of establishing jurisdiction is on the Plaintiffs. *Id.*

Additionally, Defendant Sorsaia moves for dismissal pursuant to Rule 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted. They have failed to exhaust administrative remedies in connection with their claims; they have failed to state plausible claims that Defendant Sorsaia has violated their rights; their claims violate separation of powers; their Complaint presents a non-justiciable political question; and their claims are barred by the Tenth Amendment to the United States Constitution.

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 953 (4th Cir. 1992) (additional citation omitted).

---

12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)").

For purposes of a motion to dismiss under Rule 12(b)(6), courts must consider the Complaint's factual allegations as true, but need not do so with respect to mere conclusory legal allegations, which need not be given such consideration. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Further, a claim must be dismissed even if it is merely conceivable but fails to cross "the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. A claim has facial plausibility only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955).

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Defendant Sorsaia has included matters outside the pleadings related to his argument that Plaintiffs have failed to exhaust their administrative remedies, as discussed in Section D, below. To the extent the Court considers the matters outside the pleadings, only Section D should be viewed under Rule 56, and the remaining arguments should be considered under Rule 12.

## ARGUMENT

### A.    The Eleventh Amendment Bars These Claims.

Pursuant to the Eleventh Amendment to the United States Constitution, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)) (additional citations omitted). Suit may be barred by the Eleventh Amendment even though a State is not named a party to the action:

> When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Edelman*, 415 U.S. at 663 (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S 459, 464 (1945)). As described by the Supreme Court, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 663 (additional citations omitted).

*Ex parte Young*, 209 U.S. 123 (1908), held that the Eleventh Amendment does not bar an action which seeks prospective relief only. *Edelman*, 415 U.S. at 664. The relief sought in this case is not prospective as contemplated in *Ex parte Young*. Instead, Plaintiffs seek appropriations from the State treasury to pay for what is alleged to be an accrued monetary liability based upon years of alleged inaction related to lack of adequate appropriations for maintenance of facilities and salaries of correctional staff in the past. This relief is retroactive in nature and is more analogous to relief that has been found to be barred by the Eleventh Amendment in cases such as *Edelman* than it is to the exception recognized in *Ex parte Young*. The label of "equitable" relief is not important, but instead, "how closely it may in practice resemble a money judgment payable out of the state treasury." *Edelman*, 415 U.S. at 666. Because Plaintiffs in this matter seek payment from state funds to address past conduct, it is the type of "equitable restitution" that was found to be barred by the Eleventh Amendment in *Edelman*. *Id.* at 668; *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256–257 (2011). Where, as here, the requested injunction "would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought," it is barred. *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882–83 (7th Cir. 2012) (additional citation omitted).

Additionally, *Ex Parte Young* does not apply because Plaintiffs have not demonstrated that Cabinet Secretary Sorsaia has the legal ability to remedy the alleged constitutional violation. To the extent that the alleged harms arise from the lack of monetary appropriations, Defendant Sorsaia has neither the ability to propose budgets or appropriations nor the ability to pass them into law. That authority resides in the Governor and the Legislature, respectively. *Gribben v. Kirk*, 197 W. Va. 20, 24-25, 475 S.E.2d 20, 24-25 (1996) ("[T]he power to appropriate money from the treasury of this State is vested in the legislature subject to specific requirements for executive action by the Governor pursuant to W. Va. Const. art. VI, § 51."). Even if Plaintiffs secure the requested relief, the resulting injunction will not "be effective with respect to the underlying claim." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). Similarly, Plaintiffs have pointed to no authority held by Secretary Sorsaia to carry out the additional injunctive relief requested. It is the Commissioner of the Division of Corrections and Rehabilitation, and not the Cabinet Secretary, who is given the authority to "exercise general supervision over the administration of the institutions under the jurisdiction of the division[,]" "[e]stablish rules, policies, and regulations in writing governing all subdivisions and institutions within the division[,]" and "[s]upervise the treatment, custody, and discipline of all inmates and residents and the maintenance of the institutions and their industries[.]" W. Va. Code § 15A-3-4(a)(1), (3), and (8); § 15A-3-12(a) (listing facilities); *see* Compl. ¶19. "[A] general 'supervisory' role does not permit an individual to sue an officer under *Ex Parte Young*." *Doyle v. Hogan*, 1 F.4th 249, 256 (4th Cir. 2021) (additional citations omitted). Federal courts in West Virginia have repeatedly dismissed claims against the Governor of West Virginia and other state constitutional officers, rejecting arguments that rest on the general law enforcement, control, and supervisory authority granted to the state officials under state law. *See, e.g., Sonda v. Justice*, No. 5:22-CV-124, 2022 WL 16707251, at *4

(N.D.W. Va. Sept. 7, 2022); *Penkoski v. Justice*, No. 1:18-CV-10, 2018 WL 6597322, at *5 (N.D.W. Va. Aug. 3, 2018), *report and recommendation adopted*, No. 1:18-CV-10, 2018 WL 5862582 (N.D.W. Va. Nov. 9, 2018); *Young v. Morrisey*, No. 2:20-CV-00666, 2020 WL 10324196, at *3 (S.D.W. Va. Nov. 3, 2020), *report and recommendation adopted*, No. 2:20-CV-00666, 2021 WL 2433798 (S.D.W. Va. June 15, 2021). The outcome here should be no different.

Because the Eleventh Amendment bars an award of monetary and injunctive relief in the instant matter, Plaintiffs' request for a declaratory judgment also fails. "[O]therwise the [declaratory] relief would operate as a means of avoiding the amendment's bar." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO,* 680 F.3d 875, 883 (7th Cir. 2012) (quoting *MSA Realty Corp. v. State*, 990 F.2d 288, 295 (7th Cir. 1993)).

### B.     Plaintiffs Lack Standing.

To ensure that federal courts do not exceed their constitutional authority, the doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540 (2016) (cleaned up). There are three basic components of standing: injury, causation/traceability, and redressability. Specifically, to establish standing in federal court, a complainant must demonstrate that: (1) they have suffered an injury-in-fact, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. *See Spokeo*, 578 U.S. at 338; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).

Plaintiffs fail to satisfy the standing requirements. More specifically, traceability does not require that a Defendant's actions "be the sole or even immediate cause of [Plaintiffs'] injury." *See Sierra Club v. United States DOI,* 899 F.3d 260, 284 (4th Cir. 2018). Even so, an injury that results

from "the independent action of some third party not before the court" decidedly falls short. *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 41-42, 96 S. Ct. 1917 (1976); *see also Friends for Ferrell Parkway v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002) ("The traceability requirement ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court."). Indeed, where multiple actors are involved, a Plaintiff can establish causation only if the Defendant's conduct had a "determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169, 117 S. Ct. 1154 (1997). Thus, "standing [that] depends on the unfettered choices made by independent actors . . . whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," requires a Plaintiff to "adduce facts showing that those choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at 562 (cleaned up); *Alvarez v. Becerra*, No. 21-2317, 2023 U.S. App. LEXIS 8751, *6-9, 2023 WL 2908819 (4th Cir. 2022).

Similarly, Plaintiffs cannot obtain redress from this Court because Secretary Sorsaia has no authority to act as requested in the injunction. W. Va. Const. Art. VI, § 51. Therefore, Plaintiffs have no standing, and this matter should be dismissed.

### C.  Plaintiffs' Claims Are Moot.

Plaintiffs seek injunctive relief by way of appropriations to address overcrowding, understaffing, and deferred maintenance. Any request for injunctive relief must satisfy the second threshold issue of mootness. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented."

*Ross v. Reed*, 719 F.2d. 689, 694 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation. . . must continue throughout its existence." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, 117 S. Ct. 1055 (1997). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944 (1969); *Lewis v. W. Reg'l Jail*, No. 3:11-cv-01016, 2012 U.S. Dist. LEXIS 121135, *8-13, 2012 WL 3670393 (S.D.W. Va. July 24, 2012). This constitutional requirement is of paramount importance because the federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447 (1992) (citation omitted).

A court is deprived of jurisdiction over a case when the case becomes moot. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S. Ct. 373 (1983); *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). A claim may be mooted "when the claimant receives the relief he or she sought to obtain through the claim," because the court no longer "has [ ] effective relief to offer." *Dunlap*, 290 F.3d at 197 (citations omitted). *Williams v. Ozmint*, 716 F.3d 801, 808-809 (4th Cir. 2013).

The instant Complaint seeking injunctive appropriations was filed on August 8, 2023. These requests have become moot in light of subsequent legislation. On August 14, 2023, three legislative bills were signed by the Governor that directly increase efforts to fill vacant positions at correctional facilities. SB 1003, SB 1004, and SB 1005 relate to increased funding for the West Virginia Division of Corrections and Rehabilitation. SB 1003, 1004, 1004, 2023 Leg., 1st Spec. Sess. (W. Va. 2023). The collective legislation provides approximately $35 million to supplement

salaries for current correctional staff, to increase starting pay for new staff, and to provide a bonus for non-uniformed staff.

Governor Justice also signed SB 1039, which, in conjunction with legislation passed in the 2023 regular legislative session, allows the West Virginia Division of Corrections and Rehabilitation special revenue fund to now be used toward deferred maintenance projects, allocating an amount of about $100 million. SB 1039, 2023 Leg., 1st Spec. Sess. (W. Va. 2023); *see also* HB 2024, 2023 Leg., Reg. Sess. (W. Va. 2023); HB 3513, 2023 Leg., Reg. Sess. (W. Va. 2023; HB 3552, 2023 Leg., Reg. Sess. (W. Va. 2023). According to the Complaint, this is approximately 167% of what is alleged to be needed to address the deferred maintenance that was believed to be the most critical in 2022, the cost of which is approximately sixty million dollars. Compl. ¶72. These efforts moot the Plaintiffs' requests for the injunctive relief sought.

### D. Plaintiffs Failed to Exhaust Administrative Remedies, Warranting Dismissal.

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the Plaintiffs failed to exhaust all administrative remedies, thereby barring all claims. Plaintiffs failed to satisfy the requirements set forth by WVDCR policy and failed to exhaust all administrative remedies for the issuance of "appropriations" to remedy purported overcrowding, understaffing, and deferred maintenance.

Section 1997e(a) of the Prison Litigation Reform Act of 1995 states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Civil action with respect to prison conditions" means "any civil proceeding arising under Federal law with respect

to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2), in part.

In *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001), the Supreme Court held that the exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative process. *Id*. at 741. This exhaustion requirement is met where an inmate properly exhausts the administrative review process available to them, not when an inmate no longer has any remedies available to them after, for example, a rejection of a grievance as untimely. *See generally Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

The Court in *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or other some wrong." *Id*. at 532. Not only must a prisoner exhaust his administrative remedies, but he must also do so properly. This "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits." *Woodford*, 548 U.S. at 90, 126 S. Ct. at 2385, 165 L. Ed. 2d 368 (citation omitted).

The Supreme Court of the United States has held "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 918-919 (2007) (citing *Porter*, 534 U.S. at 524). The Supreme Court recognized this exhaustion requirement as "[k]ey" among the reforms enacted by Congress in the PLRA "designed to filter out the bad claims and facilitate consideration of the good." *Id*. at 203-204, 127 S. Ct. at 914. The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled

into court." *Id.* "Proper exhaustion" is required by the PLRA, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93, 126 S. Ct. at 2384, 2387.

In West Virginia correctional facilities, a grievance must be filed within fifteen (15) days "of any occurrence that would cause [an inmate] to file a grievance." WVDCR Policy Directive 335.00, attached hereto as **Exhibit A**, p. 4, ¶ IV. If an inmate believes that the unit manager's response does not resolve the issue, "the inmate may appeal to the Superintendent within five (5) days …." **Ex. A**, p. 6, ¶ V. If the inmate believes that the Superintendent's response does not resolve his or her grievance, the inmate may submit an appeal to the Commissioner of the Division of Corrections and Rehabilitation within five days after receiving the Superintendent's response or the time for the response has passed by mailing the grievance appeal to the Commissioner by first class mail. **Ex. A**, p. 7, ¶ VI. Policy Directive 335.00 specifically states, "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." **Ex. A**, p. 8, ¶ VI.C.[2]

Plaintiffs failed to exhaust any administrative remedies regarding the issues asserted in the Complaint, namely overcrowding, understaffing, and deferred maintenance. **Exhibit C**, Aff. of Lawrence Pettey; **Exhibit D**, Aff. of Jeremy Dolin. By failing to seek redress through the grievance process regarding the issues of overcrowding, understaffing, and deferred maintenance, Plaintiffs failed to comply with the administrative procedures for grievance appeals within Policy Directive 335.00. As a result, Plaintiffs failed to exhaust their available administrative remedies; therefore, Secretary Sorsaia is entitled to summary judgment, and Plaintiffs' claims must be dismissed.

---

[2] A grievance procedure also exists at juvenile facilities. *See* WVDJC Policy 334.00, attached hereto as **Exhibit B**.

### E.      Venue is Improper in the Beckley Division.

"Upon motion, . . . any action, suit or proceeding of a civil nature . . . may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b), in part. Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). A civil action may be brought in,

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]

28 U.S.C. § 1391(b)(1)-(2).

Venue in the Beckley Division is improper for two reasons. First, neither Defendant resides in the Beckley Division. "It is beyond cavil that the official residence of state officials is determinative for purposes of venue." *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982). "As one court has stated: Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties." *Id.* (quoting *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) (quoting 1 Moore's Federal Practice, pp. 1487-88)), *cert. denied*, 411 U.S. 964, 93 S. Ct. 2142, 36 L. Ed. 2d 685 (1973). Here, both Defendants perform their official duties in Charleston; therefore, their residences for venue purposes are in the Charleston Division.

Second, none of the named Plaintiffs reside in the Beckley Division. Instead, the facilities at which they are incarcerated are located in Fayette, Logan, and Boone Counties, all of which are

within the Charleston Division. Therefore, pursuant to the federal venue statute, and for the convenience of the parties and witnesses, venue properly lies in the Charleston Division.

### F. Plaintiffs Fail to State A Claim Upon Which Relief May Be Granted for Alleged Violations of the Eighth And Fourteenth Amendments.

The Eighth Amendment, which prohibits infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, applies to claims by prisoners against corrections officials challenging conditions of confinement. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("[T]he Eighth Amendment imposes a duty on prison officials to 'provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Whether an inmate's conditions of confinement amount to "cruel and unusual punishment" must be measured against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958)). Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) "objective" and (2) "subjective" components. *Scinto*, 841 F.3d at 225 (citing *Farmer*, 511 U.S. at 834).; *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019)).

To satisfy the "objective" prong, a plaintiff inmate must "demonstrate that 'the deprivation alleged [was], objectively, sufficiently serious.'" *Id*. at 225 (quoting *Farmer*, 511 U.S. at 834). "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.'" *Id*. (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)).

To satisfy the "subjective" prong in an Eighth Amendment case, a plaintiff challenging his conditions of confinement must demonstrate that prison officials acted with "deliberate indifference." *Scinto*, 841 F.3d at 225. "To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). A plaintiff may satisfy this standard by "prov[ing] by circumstantial evidence that a risk was so obvious that it had to have been known." *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015). Put differently, "[a]n obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011); *see also Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019). To demonstrate a deprivation of a basic human need that is sufficiently serious, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The standard is essentially the same for pretrial detainees. "Claims of pretrial detainees against detention center officials regarding health, safety, and conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment." *Emilien v. Weeks*, 2022 U.S. Dist. LEXIS 108651, *5 (D.S.C. 2022) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861 (1979) and *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). The standard for determining whether jail officials have violated a pretrial detainee's right to due process is deliberate indifference. *Id.* (citing *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992)). When analyzing

such cases under the Fourteenth Amendment, the Fourth Circuit looks to Eighth Amendment precedents interpreting the standard of deliberate indifference. *Id.* (citing *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). Conduct by governmental actors is actionable as a violation of the Fourteenth Amendment only when it "shocks the conscience." *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708 (1998)).

In order to survive a motion to dismiss, a plaintiff must allege *personal involvement* on the part of each defendant in a constitutional violation and demonstrate a causal connection between the act and his alleged injury. *Green v. McGrue*, 2019 U.S. Dist. LEXIS 137361, *18 (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). Specific acts or omissions by each defendant which violated plaintiff's constitutional rights must be alleged. *Id.* (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (additional citation omitted). Similarly, there is generally no "supervisory liability" under 42 U.S.C. § 1983, as *respondeat superior* cannot form the basis of a claim asserted under the statute. *Green v. Rubenstein*, No. 2:09-cv-112, 2010 U.S. Dist. LEXIS 52535, *10-11 (S.D.W. Va. Apr. 19, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362, 95 S. Ct. 598 (1976)). Instead, liability must be premised upon each Defendant's alleged personal constitutional violations. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citations omitted). The Complaint fails to allege facts to support a claim against Defendant Sorsaia based upon conditions of confinement. It further fails to allege that any Plaintiff has suffered a serious or significant physical or emotional injury resulting from the challenged conditions.

"[J]ail overcrowding is not a per se constitutional violation." *Worrell v. New River Valley Reg'l Jail*, No. 7:08-cv-00554, 2008 U.S. Dist. LEXIS 88452, *9 (W.D. Va. October 31, 2008) (citing *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). "To the extent

that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quoting *Rhodes*, 452 U.S. at 347). Policies that cause jail overcrowding "do not violate the Eighth Amendment unless they deprive the inmate of the 'minimal civilized measure of life's necessities.'" *Schoonover v. Sheriff*, No. 1:18-cv-302, 2021 U.S. Dist. LEXIS 187834, *39 (S.D. Ohio Sept. 30, 2021) (quoting *Rhodes*, 452 U.S. at 347). "[O]nly 'extreme deprivations' can 'support a prison-overcrowding claim.'" *Id.* (quoting *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012)) (cleaned up). Similarly, understaffing and deferred maintenance are not per se constitutional violations.

Plaintiffs allege only isolated incidents that do not rise to the level of constitutional violations. Moreover, they allege nothing that suggests that the incidents are occurring on an agency-wide basis, or to individuals other than the three named Plaintiffs.

Plaintiff Sheppheard was incarcerated at MOCC on or about May 1, 2023. Compl. ¶109. He alleges that he has been given inadequate portions of food, has only had access to showers with hot water, which resulted in blisters on his back, does not get regular access to new toothbrushes and toothpaste, does not have access to a law library, and does not have recreational time. Compl. ¶¶113-117. These vague allegations do not establish the frequency with which any of the alleged conditions occurred. As such, they are isolated incidents which do not give rise to constitutional violations. To the extent that Plaintiff Sheppheard purports to represent a class of individuals similarly situated, there are no allegations in the Complaint which plausibly support the conclusion that these same conditions exist over time at MOCC or that they exist at any other prison facility. Further, the Complaint fails to allege any facts that tend to show that these conditions are the result of overcrowding, understaffing, or deferred maintenance.

Plaintiff Randall was incarcerated at Southwestern on or about April 15, 2022. Compl. ¶132. He alleges that he has observed inmates sleeping on the floor, that he has been exposed to mold, that he has been exposed to rodent feces, and that he has been given inadequate portions of food. Compl. ¶¶137-140. Plaintiff's alleged "observation" of inmates sleeping on the floor does not give rise to a constitutional violation. Additionally, these vague allegations do not establish the frequency with which any of the alleged conditions occurred. As such, they are isolated incidents which do not give rise to constitutional violations. To the extent that Plaintiff Randall purports to represent a class of individuals similarly situated, there are no allegations in the Complaint which plausibly support the conclusion that these same conditions exist over time at Southwestern or that they exist at any other jail facility. Further, the Complaint fails to allege any facts that tend to show that these conditions are the result of overcrowding, understaffing, or deferred maintenance.

Plaintiff J.P. was incarcerated at Kuhn Juvenile Center on or about May 31, 2023. Compl. ¶155. He alleges that he has been served undercooked food and that he has not always had access to hot water. Compl. ¶¶159-160. These vague allegations do not establish the frequency with which any of the alleged conditions occurred. As such, they are isolated incidents which do not give rise to constitutional violations. To the extent that Plaintiff J.P. purports to represent a class of individuals similarly situated, there are no allegations in the Complaint which plausibly support the conclusion that these same conditions exist over time at Kuhn or that they exist at any other juvenile facility. Further, the Complaint fails to allege any facts that tend to show that these conditions are the result of overcrowding, understaffing, or deferred maintenance.

There is no alleged participation by Sorsaia in any alleged constitutional deprivation. The Complaint alleges that Defendants were deliberately indifferent to the health, safety, and other basic needs of Plaintiffs by having actual knowledge of such conditions and deliberately taking no

action to remedy them in a timely or appropriate manner. Compl. ¶165. This allegation is not plausible as it relates to Sorsaia. Sorsaia was appointed to his position as Cabinet Secretary effective August 1, 2023.[3] This Complaint was filed only one week later, on August 8, 2023. There is no plausible allegation that satisfies the subjective component, that Sorsaia knew of and disregarded an excessive risk to inmate health or safety with respect to any of the Plaintiffs.

To the extent that the Plaintiffs specifically allege failure to appropriate money to address staffing and deferred maintenance, Cabinet Secretary Sorsaia does not have the ability to provide such relief as he neither has the authority to propose budgets or appropriations nor to pass them. This authority resides in the Governor and the Legislature, respectively. However, within the first month of his appointment as Cabinet Secretary, several measures were passed by the Legislature which appropriated millions of dollars to WVDCR. *See* Section C, above.

### G.    Plaintiffs Ask This Court to Mandate Legislative Action Which Is Beyond the Scope of Appropriate Injunctive Relief And Invades the Legislative and Executive Functions of West Virginia State Government.

Plaintiffs seek the following injunctive relief: (1) an order enjoining Defendants "from engaging in further unconstitutional practices … and compel[ling] them to implement and enforce polices, procedures, and practices necessary to ensure the minimal civilized measure of life's necessities and/or the Constitutional thresholds of confinement are provided to all inmates …"; (2) an order enjoining Defendants "from engaging in further unconstitutional practices … and compel[ling] them to make all necessary structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions to ensure these constitutional deprivations cease and do not continue in the future"; (3) an order enjoining and compelling

---

[3] "Gov. Justice thanks Secretary Jeff Sandy," Office of the Governor, *available at* https://governor.wv.gov/News/press-releases/2023/Pages/Gov.-Justice-thanks-Secretary-Jeff-Sandy-for-his-service-after-announcing-retirement;-appoints-Mark-Sorsaia-as-Secretary-of.aspx

"Defendants to spend state budget surplus funds to hire and pay the requisite number of correctional staff needed to appropriately staff the facilities, not less than 60 million dollars"; and (4) an order enjoining "Defendants from engaging in further unconstitutional practices … by the least intrusive means to correcting that harm with respect all inmates housed in a West Virginia prison[.]" Compl. ¶ *Ad damnum*, c-f (ECF Doc. 1). The injunctive relief sought by Plaintiffs is inappropriate as it violates the separation of powers and requests that the federal judiciary order State executive officials to take both executive and legislative action.

Article VI, Section 51 of the Constitution of West Virginia governs appropriations of State funds. "The Legislature shall not appropriate any money out of the treasury except in accordance with the provisions of this section." W. Va. Const. Art. VI, § 51. The Constitution requires the Governor to submit to the Legislature a budget for the next ensuing fiscal year, and "[t]he budget shall contain a complete plan of proposed expenditures and estimated revenues for the fiscal year and shall show the estimated surplus or deficit of revenues at the end of each fiscal year." W. Va. Const. Art. VI, § 51(b)(2). The Supreme Court of Appeals of West Virginia has recognized "that the power to appropriate money from the treasury of this State is vested in the legislature subject to specific requirements for executive action by the Governor pursuant to W. Va. Const. art. VI, § 51." *Gribben v. Kirk*, 197 W. Va. 20, 24-25, 475 S.E.2d 20, 24-25 (1996). "The Governor starts the process by submitting a proposed budget to the legislature for consideration; however, the legislature actually appropriates the funds." *Id.* (citing *Bd. of Educ. v. Bd. of Public Works*, 144 W. Va. 593, 109 S.E.2d 552 (1959)). "Once the legislature appropriates the funds and the process of executive consideration is completed by the Governor, the Auditor issues a warrant authorizing the expenditure of the appropriation." *Id.* (citing W. Va. Const. art. X, § 3).

Article V of the Constitution of West Virginia provides for separation of powers: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time …." W. Va. Const. art. V, § 1. "The inhibition in article V against the exercise of dual authority is specific. Recognizing the force of that inhibition, this court said that it 'necessarily follows' if an act 'in any degree requires the circuit court to exercise legislative powers, it is to that extent void.'" *State ex rel. State Bldg. Comm'n v. Bailey*, 151 W. Va. 79, 88, 150 S.E.2d 449, 454 (1966) (quoting *Shepherd v. Wheeling*, 30 W. Va. 479, 481, 4 S.E. 635, 636 (1887)). The Supreme Court of Appeals of West Virginia has held,

> "The separation of these powers; the independence of one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained. No theory of government has been more loudly acclaimed."

*Id.* (quoting *State v. Huber*, 129 W. Va. 198, 209, 40 S. E. 2d 11, 18 (1946)).

Here, Plaintiffs ask this Court to mandate legislative action that is beyond the scope of appropriate injunctive relief and invades the legislative and executive functions of West Virginia state government. Plaintiffs seek an order from this Court directing the executive branch of the State's government to initiate specific appropriations in the hundreds of millions of dollars, a power which is specifically constitutionally ascribed to the Governor. To effectuate the order, the Court would necessarily have to compel the Legislature to then pass the appropriations bill, a power which is specifically constitutionally ascribed to the Legislature. Additionally, the Court would necessarily have to compel the Governor to sign the bill, a power which is specifically constitutionally ascribed to the Governor. Such an Order would render obsolete the separation of powers doctrine and West Virginia's Constitution. Thus, Plaintiffs' requested relief violates the

separation of powers doctrine and cannot be awarded. Therefore, Plaintiffs have failed to state a claim upon which relief may be granted, and Plaintiffs' Complaint must be dismissed.

**H.      Plaintiffs' Complaint Presents a Non-justiciable Political Question.**

The Supreme Court of the United States has held "that '[i]n determining whether a question falls within [the political question] category, the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations.'" *Baker v. Carr*, 369 U.S. 186, 210 (1962) (quoting *Coleman v. Miller*, 307 U.S. 433, 454-455 (1939)). "The nonjusticiability of a political question is primarily a function of the separation of powers." *Id.* The Supreme Court has described the circumstances in which a political question is present:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217.

Prominent on the surface of this case is a textually demonstrable constitutional commitment of the issue to a coordinate political department. Plaintiffs seek an injunction compelling the Defendants to implement and enforce policies, procedures, and practices regarding conditions of confinement, compelling them to appropriate funds to make structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions, and compelling "Defendants to spend state budget surplus funds to hire and pay the requisite number of correctional staff needed to appropriately staff the facilities, not less than 60 million

dollars." In essence, Plaintiffs ask this Court to invade the provinces of the executive and legislative branches of the State government to force policy decisions preserved by the West Virginia Constitution to those coordinate branches. Plaintiffs do not seek redress for specific alleged constitutional harms. Instead, they seek to influence the political process by judicial decree. Thus, Plaintiffs seek policy determinations of a kind clearly for nonjudicial discretion, and Plaintiffs request that this Court undertake legislative and executive functions reserved to branches of the State government. Therefore, Plaintiffs have presented a nonjusticiable political question from which this Court should abstain.

## I.        The Tenth Amendment Bars the Instant Action.

The Tenth Amendment to the United States Constitution provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. 10. The instant case implicates one of the oldest questions of constitutional law. *New York v. United States*, 505 U.S. 144, 149, 112 S. Ct. 2408, 2414 (1992). It consists of discerning the proper division of authority between the Federal Government and the States. *Id.*

The Tenth Amendment "states but a truism that all is retained which has not been surrendered." *United States v. Darby*, 312 U.S. 100, 124, 61 S. Ct. 451 (1941). As Justice Story explained, "this amendment is a mere affirmation of what, upon any just reasoning, is a necessary rule of interpreting the constitution. Being an instrument of limited and enumerated powers, it follows irresistibly, that what is not conferred, is withheld, and belongs to the state authorities." 3 J. Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES 752 (1833). Indeed, it has been uniformly held that "[t]he States unquestionably do retain a significant measure of sovereign authority . . . to the extent that the Constitution has not divested them of their original powers and

transferred those powers to the Federal Government." *Id.* (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. at 549) (internal quotation marks omitted).

The United States Supreme Court has held that it is incontestable that the Constitution established a system of "dual sovereignty." *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S. Ct. 2395 (1991); *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S. Ct. 792 (1990). Although the States surrendered many of their powers to the new Federal Government, they retained "a residuary and inviolable sovereignty," THE FEDERALIST No. 39, at 245 (J. Madison). Residual state sovereignty is also implicit, of course, in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones, Art. I, § 8, which implication was rendered express by the Tenth Amendment's assertion that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In *Printz v. United States*, 521 U.S. 898, 918-919, 117 S. Ct. 2365, 2376-2377 (1997), the high Court stated,

> The great innovation of this design was that "our citizens would have two political capacities, one state and one federal, each protected from incursion by the other"--
> "a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it." The Constitution thus contemplates that a State's government will represent and remain accountable to its own citizens.

*Printz*, 521 U.S. at 920-921, 117 S. Ct. at 2377 (internal citations omitted).

Congress (and by extrapolation any federal branch of government, including the judiciary) may not simply "commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States*, 505 U.S. 144, 149, 112 S. Ct. 2408, 2414 (1992) (citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 101 S. Ct. 2352 (1981)). "Neither government may destroy the other nor curtail in

any substantial manner the exercise of its powers." *Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 523 (1926); *Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792 (1990) ("Under our federal system, the States possess sovereignty concurrent with that of the Federal Government."); *Gregory v. Ashcroft*, 501 U.S. at 461 ("The States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere.").

The Federal Government may neither issue directives requiring the States to address particular problems nor command the States' officers to administer or enforce a regulatory program. It matters not whether policymaking is involved, and no case-by-case weighing of the burdens or benefits is necessary; such commands are fundamentally incompatible with our constitutional system of dual sovereignty. *Printz*, 521 U.S. at 935, 117 S. Ct. at 2384. The Plaintiffs' request that this federal Court mandate Secretary Sorsaia to somehow appropriate hundreds of millions of West Virginia dollars is an extraordinary example of a Tenth Amendment violation. West Virginia is a sovereign State with the absolute right to govern consistent with the United States and West Virginia Constitutions. Because of this sovereign status, this Court cannot provide the requested redress without frustrating the purpose of the Tenth Amendment.

**MARK SORSAIA,**
**By Counsel,**

/s/ Caleb B. David
Natalie C. Schaefer, Esquire (WVSB #9103)
Caleb B. David, Esquire (WVSB #12732)
Kimberly M. Bandy, Esquire (WVSB #10081)
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953
Charleston, WV  25339
(304) 345-1400; (304) 343-1826 (fax)
nschaefer@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**THOMAS SHEPPHEARD,
TYLER RANDALL, and
ADAM PERRY, next friend and guardian of
Minor child J.P., on their own behalf
and on behalf of all others
similarly situated,**

      **Plaintiffs,**

**v.**                                                            **Civil Action No. 5:23-cv-00530
Judge Irene C. Berger**

**JAMES C. JUSTICE JR., his official capacity
as Governor of the State of West Virginia, and
MARK SORSAIA, in his official capacity
as the Cabinet Secretary of the West Virginia
Department of Homeland Security,**

      **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant Mark Sorsaia, do hereby certify that on the 31st day of October 2023, a true and exact copy of **"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARK SORSAIA'S MOTION TO DISMISS"** was served on counsel via electronic means as follows:

Stephen P. New
Emilee B. Wooldridge
Stephen New & Associates
***Counsel for Plaintiff s***
430 Harper Park Drive
Beckley, WV 25801
steve@newlawoffice.com

Timothy Lupardus
The Lupardus Law Office
***Counsel for Plaintiffs***
275 Bearhole Road
Pineville, WV 24874
office@luparduslaw.com

26

Zachary Whitten
The Whitten Law Office
***Counsel for Plaintiffs***
P.O. Box 753
Pineville, WV 24874
zwhittenlaw@gmail.com

Robert Dunlap
Robert Dunlap & Associates
***Counsel for Plaintiffs***
208 Main Street
Beckley, WV 25801
rdunlapesq@gmail.com

Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
***Counsel for Defendant Justice***
P.O. Box 3983
Charleston, WV 25339
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

/s/ Caleb B. David
Natalie C. Schaefer, Esquire (WVSB #9103)
Caleb B. David, Esquire (WVSB #12732)
Kimberly M. Bandy, Esquire (WVSB #10081)
***Counsel for Mark Sorsaia***
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953
Charleston, WV  25339
(304) 345-1400; (304) 343-1826 (fax)
nschaefer@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com