**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| **THOMAS SHEPPHEARD,** | ) | |
| **TYLER RANDALL, and** | ) | |
| **ADAM PERRY, next friend** | ) | |
| **and guardian of Minor child J.P.,** | ) | |
| **on their own behalf and on behalf** | ) | |
| **of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:23-cv-00530** |
| | ) | **(Judge Berger)** |
| **JAMES C. JUSTICE JR.,** | ) | |
| **in his official capacity as Governor of** | ) | |
| **the State of West Virginia, and** | ) | |
| **MARK SORSAIA, in his official** | ) | |
| **capacity as the Cabinet Secretary** | ) | |
| **of the West Virginia Department** | ) | |
| **of Homeland Security,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MARK SORSAIA'S MOTION TO DISMISS

**COME NOW**, Plaintiffs, on their own behalf and on behalf of all other similarly situated, by counsel, and for *Plaintiffs' Response in Opposition to Defendant Mark Sorsaia's Motion to Dismiss* [Doc. 12, 13] state as follows:

## STATEMENT OF THE CASE

This is a class action suit filed against James C. Justice Jr. ("Governor Justice"), in his official capacity as Governor of the State of West Virginia, and Mark Sorsaia ("Defendant Sorsaia" or "Defendant"), in his official capacity as the Cabinet Secretary of the West Virginia Department of Homeland Security ("WVDHS") seeking to remedy violations of the Eighth Amendment's prohibition against cruel and unusual punishment in West Virginia prisons, jails, and juvenile

facilities. These facilities are operated the West Virginia Department of Corrections and Rehabilitation ("WVDCR") as part of the WVDHS.

Count I of the *Complaint* alleges *Eighth Amendment* violations in the prison system and seeks injunctive relief to remedy the unconstitutional conditions that Defendants have permitted to persist. Plaintiffs allege that Defendants violated their constitutional rights guaranteed under the *Eighth Amendment* by depriving them of basic human necessities, cruel and unusual punishment, and denying care for serious medical needs. *See, Complaint* ("*Compl.*") [Doc 9] at ¶163. Defendants are alleged to have been "deliberately indifferent to the health, safety, and other basic needs of Plaintiffs (and all similarly situated inmates and former inmates)" and to have had "actual knowledge of such conditions and deliberately taking no action to remedy them in a timely or appropriate manner." *See id*. at ¶165.

Specifically, Plaintiffs allege that "[t]he actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law." *See id*. at ¶166. Further, Plaintiffs allege that "[d]uring the time period at issue, it was clearly established that the serious deprivations of basic human needs at MOCC, Southwestern, and Kuhn and all other West Virginia correctional facilities, as described hereinabove, violated the Eighth Amendment to the United States Constitution." *See id*. at ¶167. Plaintiffs allege that as a result of the unconstitutional conduct of the Defendants, "Plaintiffs (and all similarly situated inmates and former inmates) are suffering a deprivation of their Constitutional rights." *See id*. at ¶168.

Defendant Sorsaia seeks dismissal of the *Complaint* in its entirety for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). However, Defendant's arguments fail to establish that dismissal is warranted under either rule.

## STATEMENT OF ALLEGED FACTS

The Complaint alleges that Plaintiff Thomas Sheppheard, ("Plaintiff Sheppheard") was incarcerated at Mt. Olive Correctional Complex ("MOCC") in Fayette County; Plaintiff Tyler Randall, ("Plaintiff Randall") was incarcerated at Southwestern Regional Jail ("Southwestern") in Logan County; and, Plaintiff J.P., ("Plaintiff J.P."), a minor, is an inmate incarcerated at Donald R. Kuhn Juvenile Center ("Kuhn") in Boone County. *See* Complaint [Doc.9] at ¶¶ 7-9.

Defendant Governor Justice is the duly elected Governor of the State of West Virginia and is sued in his official capacity. *See id.* at ¶¶10 and 14. Governor Justice is responsible for submitting a proposed budget for each fiscal year to the legislature for consideration pursuant to W. Va. Const. art. VI, § 51, as well as overseeing and carrying out various executive functions including, *inter alia*, corrections. *See id.* at ¶11. The Legislature of West Virginia is empowered to appropriate the funds pursuant to *W. Va. Const. art. X, § 3*, including, *inter alia*, West Virginia's corrections systems. *See id.* at ¶12.  After the budget bill has been finally acted upon by both houses, supplementary appropriation bills may be considered and passed pursuant to *W. Va. Const. art. VI, § 51*. *See id.* at ¶13.

Defendant Sorsaia is Cabinet Secretary of the West Virginia Department of WVDHS and is sued in his official capacity. *See id.* at ¶¶15 and 17. Defendant Sorsaia is charged with providing support, oversight, and guidance to the WVDCR. *See id.* at ¶16.

The State of West Virginia is charged with ensuring that inmates are subjected to appropriate and humane conditions of confinement while housed in any correctional facility. *See id.* at ¶20. The State of West Virginia is similarly charged with maintaining and operating its correctional facilities in a manner that meets the minimal civilized measure of life's necessities, by providing, *inter alia*, beds and bedding for all inmates, appropriate food and access to drinking

water, access to basic hygiene products, toilets, showers, and laundry, and providing living conditions free of mold, sink and toilet water, human waste or sewage, rats, insects, and other contaminants for all inmates housed therein. *See id.* at ¶21. The State of West Virginia is tasked by law with ensuring that all correctional facilities are free from the conditions of overcrowding, understaffing, and are properly maintained and it has failed in this regard for over a decade. *See id.* at ¶22. Despite the constitutional requirements set forth in the *Eighth Amendment,* Defendants have subjected inmates housed at all the states correctional facilities and other such facilities throughout the state, including Plaintiffs, to inhumane living conditions, deprived them of basic human necessities, and acted with deliberate indifference towards their health and safety. *See id.* at ¶28.

On August 11, 2022, Governor Justice issued Executive Order 33. 5-22 finding that: "A state of Emergency exists in West Virginia as it pertains to the staffing levels of our juvenile and adult detention and correctional facilities." *See id.* at ¶33. Governor Justice recognized that "any shortage of correctional officers limits the ability to properly supervise the State's incarcerated individuals" and lack of proper supervision may present a danger to the incarcerated individuals and others. *See id.* at ¶34. Moreover, excessive amounts of overtime are not conducive to safe working practices and environments. *See id.* at ¶42. Three hundred National Guard members were inserted into in the jails and prisons to help with the severe understaffing in the late summer of 2022. *See id.* at ¶35.

Brad Douglas worked in the state's correctional system for a quarter century and testified that understaffing and deferred maintenance have an impact on safety. *See id.* at ¶30. Betsy Jividen served as Commissioner of WVDCR from January 2018 to July 2022. In 2022, the inmate population was overcrowded and the facilities were understaffed. *See id.* at ¶31. Both testified that

the overcrowding has been at least a decade in the making. *See id.* at ¶32. Former Cabinet Secretary Jeff Sandy testified that understaffing has been an issue for decades. *Id.*

West Virginia lags behind competitively in terms of correctional officer pay. *See id.* at ¶43. In 2018, Governor Justice recognized correctional officers are grossly underpaid. *See id.* at ¶46. This caused a high turnover rate. *Id.* The current circumstances of overtime, utilizing the National Guard, and, having non-security personnel working at some of the security posts inside the jails is not sustainable. *See id.* at ¶47.

From July 2019 through July 2022, understaffing in West Virginia's facilities worsened. *See id.* at ¶50. The correctional officer shortage and overworked staff affects the security of the jails as the facilities depend on staff and security staff to operate them safely. *See id.* at ¶¶51-52. The 2023 correctional officer shortage is the worst in the past thirty years. *See id.* at ¶53.

With respect to overcrowding, based upon the WVDCR Fiscal Year Annual Reports for 2019, 2020, 2021, and 2022, statistics and charts show an increase in population among all correctional facilities in comparison to prior years. *See id.* at ¶55. The State of West Virginia was aware of the rapidly increasing population of prison inmates as early as 2011. *See id.* at ¶57. From January 2018 through July 2022, overcrowding in West Virginia's facilities worsened. *See id.* at ¶58.

Overcrowding makes a facility less safe, secure, and humane than it could be resulting in having two to three inmates in a cell and inmates sleeping in the day room of the facility. *See id.* at ¶¶59 and 61. Overcrowding also makes the maintenance situation worse. *See id.* at ¶62.

As of April 2022, West Virginia's correctional facilities were in serious need of maintenance that is only getting worse. *See id.* at ¶63. Deferred maintenance is maintenance that needs to be done and is not getting done due mostly to the lack of funding. *See id.* at ¶64. In July

2022, the deferred maintenance was approximately Two Hundred Million Seventy-Seven Million Dollars. *See id.* at ¶65. While a certain amount of money is allotted every year for maintenance, "it doesn't touch what the overarching bill is." *See id.* at ¶66.

The cost of the deferred maintenance that was believed to be the most critical in 2022 was approximately Sixty Million Dollars. *See id.* at ¶72. Twenty-Seven Million of that amount is needed for door locking control systems and doors and locks. *See id.* at ¶73. A state of disrepair of doors, locks, and door locking control systems can present a risk of harm to inmates as inmates need to be prevented from being able to access other inmates during lockdowns or at night when an inmate is sleeping. *See id.* at ¶74.

Meetings between WVDHS and WVDCR officials and legislators, representatives from the Governor's office, of the Legislature, and State budget office officials have occurred wherein these individuals were informed that using part of the money from the budget surplus would greatly improve a lot of the issues. *See id.* at ¶77. These government officials would be presented with written proposals with options as to how to correct the overcrowding, understaffing, and deferred maintenance problems within the facilities. *See id.* at ¶78. The state is not lacking in funds to address the unconstitutional conditions at the facilities as the state ended the 2023 fiscal year with a $1.8 billion dollar surplus and according to Governor Justice, "shattering the all-time record for biggest single-year revenue surplus in state history for the second straight year in a row." *See id.* at ¶¶83-84.

Plaintiffs seek to certify three classes. Class A includes all currently incarcerated individuals who are inmates housed at MOCC and other prison facilities in West Virginia. *See id.* at ¶95. Class B includes all currently incarcerated individuals who are inmates housed at Southwestern and other jail facilities. *See id.* at ¶118. Class C includes all currently incarcerated

minor individuals who are inmates housed at Kuhn Juvenile Center and other Juvenile Center facilities in West Virginia. *See id.* at ¶141.

Plaintiff Sheppheard is the Named Plaintiff who is the proposed representative for Class A. Plaintiff Sheppheard was incarcerated at MOCC on or about May 1, 2023. *See id.* at ¶109. Plaintiff Randall is the Named Plaintiff who is the proposed representative for Class B. Plaintiff Randall was incarcerated at Southwestern on or about April 15, 2022. *See id.* at ¶132. Plaintiff J.P. is the Named Plaintiff who is the proposed representative for Class C. Plaintiff J.P. was incarcerated at Kuhn Juvenile Center on or about May 31, 2023. *See id.* at ¶155.

These Plaintiffs and the putative class members are subject to overcrowded facilities, resulting in conditions that were unsafe, unsanitary, and did not meet the requirements set out by law. *See id.* at ¶¶110, 133, and 156. These Plaintiffs and the putative class members are subjected to facilities that were not properly staffed, resulting in unsafe conditions for all inmates in the jails resulting in conditions that were unsafe, unsanitary, and did not meet the requirements set out by law. *See id.* at ¶¶111, 134, and 157. These Plaintiffs and the putative class members are subjected to correctional facilities that require millions of dollars of maintenance, resulting in facilities that are unsafe, unsanitary, and did not meet the requirements set out by law. *See id.* at ¶¶112, 135, and 158.

Plaintiff Sheppheard has been given inadequate portions of food at MOCC; has only had access to showers with hot water, which resulted in blisters on his back; does not get regular access to new toothbrushes and toothpaste; does not have access to a law library; and, does not have recreational time at MOCC. *See id.* at ¶¶113-117. Plaintiff Randall has been housed in overcrowded cells; observed inmates sleeping on the floor; has been exposed to mold; has been exposed to rodent feces while in his pod; and, has been given inadequate portions of food at

Southwestern. *See id.* at ¶¶137-140.  Plaintiff J.P. has been served undercooked food and has not always had access to hot water since being incarcerated at Kuhn. *See id.* at ¶¶159-160.

## LEGAL STANDARD

Defendant seeks dismissal under both Rule 12(b)(1) and Rule 12(b)(6). The bases assert for Rule 12(b)(1) dismissal are sovereign immunity, standing, and mootness. Defendant also seeks dismissal under Rule 56 on the issue of failure to exhaust administrative remedies as Defendant attached extraneous materials to his motion and argues that "he is entitled to summary judgment." *See*, *Memorandum of Law in Support of Defendant Mark Sorsaia's Motion to Dismiss* ("*Memo in Support*") [Doc 13] at p. 12.

A motion to dismiss filed pursuant to Fed. R. of Civ. P. 12(b)(6) tests the legal sufficiency of a Complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "[T]he legal sufficiency of a complaint is measured by whether it meets the standards stated in Rule 8 and Rule 12(b)(6)." *Id*. Rule 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the…claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007). The court must also "draw all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a [plausible] claim entitling him to relief." *Francis*, 588 F.3d at 193. "To satisfy the plausibility standard, a plaintiff is not required to

plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F. 3d 447, 452 (4th Cir. 2017) (emphasis added).

Moreover, "Plaintiffs are not ordinarily required to plead allegations relevant to potential affirmative defenses to an asserted claim." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund*, 929 F.3d at 152. Further, "a motion to dismiss under Rule 12(b)(6) does not typically resolve the applicability of defenses to a well-pled claim." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (stating a motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses"); *see also Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Defendant is not entitled to dismissal on any of the grounds asserted.

## ARGUMENT

### A.  The Eleventh Amendment does not Bar Plaintiffs' Claims.

Defendant Sorsaia's argument regarding the Eleventh Amendment is based upon a misinterpretation of the *Complaint* and the relief sought. Defendant contends that Plaintiffs seek compensation for actions that were supposed to be taken in the past by the state, but were not taken. This is not true. Plaintiffs, in fact, seek to enjoin ongoing violations of the *Eighth Amendment* that result from overcrowding, understaffing, and deferred maintenance. Plaintiffs allege that these constitutional violations have been occurring for years and continue to occur. In the *Elderman* case relied upon by Defendant, the United States Supreme Court, in referencing cases wherein the Court authorized equitable relief that had an impact on state treasuries, stated:

> State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they

had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra*.

*Edelman v. Jordan*, 415 U.S. 651, 668, 94 S. Ct. 1347, 1358 (1974).

The *Eleventh Amendment*, read literally, does not prohibit a federal court from exercising its judicial power when the suit involves a Citizen of the State commencing an action against that State:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*USCS Const. Amend. 11*.

The prohibition against Citizens suing their own State in federal court was developed out of the application of common law that a state could not be sued without its consent with a caveat that any suit alleging unconstitutional acts could be brought against an official of the State. *See e.g. Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441 (1908); *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504 (1890).

Defendant Sorsaia incorrectly bases his argument on the incorrect statement that "relief sought in this case is not prospective as contemplated in *Ex parte Young*." [Doc. 13, at p. 5]. Plaintiffs seek to enjoin Defendants from engaging in further unconstitutional practices [Doc. 8, Prayer for Relief, at c)]; compel them to make all necessary structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions to ensure these constitutional deprivations cease and do not continue in the future [Doc. 8, Prayer for Relief, at d)]; enjoin them, under 18 U.S.C. § 3626, from engaging in further unconstitutional practices, by the least intrusive means to correcting that harm with respect to all inmates housed in a West Virginia prison; [Doc. 8, Prayer for Relief, at g)]; impose definite time limitations within which

the Defendants and the State of West Virginia must comply with the injunction [Doc. 8, Prayer for Relief, at h)]; and, grant any further relief this Honorable Court deems just and proper [Doc. 8, Prayer for Relief, at k)]. Admittedly, the Prayer for Relief asks for specific monetary amounts in paragraphs e) and f), but only to the extent that these Defendants know and have known for some time an approximate amount to correct the conditions. Plaintiffs seek to enjoin continuing unconstitutional practices, which is exactly the type of relief permitted under *Ex Parte Young*. Moreover, the Prison Litigation Reform Act ("PLRA") defines "prospective relief" as "all relief other than compensatory monetary damages." *See,* 18 U.S.C. § 3626(g)(7). Therefore, Plaintiffs herein are entitled to all appropriate relief, but are not entitled to compensatory monetary damages, nor are they claiming such damages.

Plaintiffs' claims are not unique. The Orleans Parish Prison ("OPP") in the State of Louisiana faced similar unconstitutional conditions of confinement and a lawsuit sought "to address deficiencies in safety and security, medical and mental health care, environmental conditions, fire safety, and Spanish language services at OPP." *Jones v. Gusman*, 296 F.R.D. 416, 423 (E.D. La. 2013). In *Jones*, the United States District Court for the Eastern District of Louisiana considered a motion filed by Class Plaintiffs, the United States, and the Sheriff of Orleans Parish for approval of a proposed consent judgment. *Id*. at 426.

The Louisiana District Court considered the requirement under the PLRA that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." *Id*. at 429 (*citing*, 18 U.S.C. § 3626(a)(1)(A)). The plaintiffs in *Jones* alleged violations of the *Eighth* and *Fourteenth Amendments* and alleged, as have Plaintiffs in this case, that the "underlying constitutional violations alleged in this matter are systemic." *Id*. at 430. The plaintiffs alleged

deficiencies at OPP as follows: (1) safety and security, (2) medical care and mental health care, (3) environmental conditions, and (4) fire safety." *Id*. at 431. With respect to the funding of the constitutionally required remedies, the District Court noted that the consent agreement provided that "[t]he Court shall determine the initial funding needed to ensure constitutional conditions of confinement at OPP, in accordance with the terms of this Agreement, and the source(s) responsible for providing that funding at an evidentiary hearing ('funding trial')." *Id*. at 456 (underlining omitted). Thus, the PLRA permits a court to determine the remedies necessary to alleviate the unconstitutional conditions and consider the source of the funding required for the remedies.[1]

The United States Supreme Court considered the unconstitutional conditions in the California penal system due to overcrowding. *See, Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910 (2011). Specifically, the *Brown* Court considered whether "the remedial order issued by the three-judge court is consistent with requirements and procedures set forth in a congressional statute, the Prison Litigation Reform Act  of 1995 (PLRA)." *Id.*  at 500. The three-judge court determined that the violations of the *Eighth Amendment* could not be effectively remedied without a reduction in the prison system population. *Id*. The order gave the state officials the discretion to choose the method to reduce the overcrowding, such as new construction or out-of-state transfers, but the failure to meet the terms of the order would require the release of prisoners. *Id*. at 500-501. The Supreme Court also noted that California did not have the financial ability to construct new facilitates. *Id*. at 528. West Virginia does not suffer from fiscal constraints.

The United States District Court for the Southern District of Iowa considered a plan submitted by the defendants to remedy a constitutional violation of substantive due process resulting from extraordinarily long lockup sentences; *Eighth Amendment* violations of inadequate

---

[1] Plaintiffs recognize that sovereign immunity was not applicable in the case.

exercise time and inadequate mental health treatment; and, violations resulting from the creation of overly stressful living conditions by housing mentally ill and non-mentally ill prisoners together at a state penitentiary. *Goff v. Harper*, 59 F. Supp. 2d 910, 912-913 (S.D. Iowa 1999). This was the fourth plan the District Court considered, noting that "plan four is now a better plan due to the two Iowa legislative sessions which provided the money to make the improvements possible." *Id*. at 913.

The Defendants were given the opportunity to devise a plan to remedy the unconstitutional conditions; however, the Court altered the plan to provide additional relief. *Id*. at 914. Ultimately, the District Court concluded that the relief order with respect to the constitutional violations "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. at 928.

Defendant's arguments with respect to the relief sought are also untimely as the Court has not ruled that the Plaintiffs are entitled to relief nor has the Court determined the nature of the appropriate relief to prevent the continuing violation of Plaintiffs' constitutional rights. As demonstrated by the opinions in *Jones, Brown,* and *Goff*, fashioning a remedy involves an intensive examination of the existing conditions at the facility and the proposed remedies. Factual determinations are not appropriate at this stage of the litigation regarding those issues.

Moreover, "[i]t is simply premature to rule upon the issue of [the relief sought] in the context of a motion to dismiss stage as there has been no discovery or development of a record in this case." *Weirton Area Water Bd. v. 3M Co.*, No. 5:20-CV-102, 2020 U.S. Dist. LEXIS 244141, at *24 (N.D.W. Va. Dec. 30, 2020) (citation and quotation marks omitted). *See also*, *Hoffman v. Richardson*, No. 2:18-CV-333, 2020 U.S. Dist. LEXIS 252729, *12 (S.D. Tex. Aug. 5, 2020) (memorandum and recommendation by Magistrate Judge) ("At this stage in the case, the

undersigned cannot conclude that the injunctive relief sought by Plaintiff is not so narrowly drawn as to be the least intrusive means necessary to correct any violation of her constitutional rights.")

In summary, Defendant Sorsaia is not entitled to dismissal on the basis of sovereign immunity. Plaintiffs seek only to enjoin continuing violations of their constitutional rights and do not seek compensatory damages. Thus, Plaintiffs only seek prospective relief for the violations, which is constitutionally permissible.

### B.  Plaintiffs do not Lack Standing

Defendant Sorsaia's request for dismissal due to lack of standing should be disregarded by this Court as the argument provides no specificity as to how Cabinet Secretary Sorsaia has no authority to act as requested in the injunction. Former Cabinet Secretary Jeff Sandy "oversaw the consolidation of jails, prisons, and juvenile centers into one government unit."[2] Moreover, Sandy "visited the SRJ [Southern Regional Jail] regarding issues concerning toilet paper, mattresses, and water." *See*, *Order and Proposed Findings and Recommendation* [Doc 774], *Rose v. Sandy,* Civil Action No. 5:22-cv-00405, (S.D. W. Va. Oct. 30, 2023) at p. 11. Defendant Sorsaia has the authority to ensure that this government unit is operated in a constitutional manner.

### C.  Plaintiffs' Claims are not Moot.

Defendant Sorsaia's argument that Plaintiffs' claims are moot is deficient in that Defendant Sorsaia does not establish that the constitutional violations occurring in the correctional system have been stopped. That some initial steps, long overdue, have been taken only affects the remedy that may be granted, not the claims. Further, while partial funds have been allocated for staffing and maintenance, these funds do not address the overcrowding in the correctional system. Nor can

---

[2] https://wvmetronews.com/2023/07/19/homeland-security-secretary-jeff-sandy-to-retire-at-the-end-of-the-
month/#:~:text=He%20also%20oversaw%20the%20consolidation,wrote%20in%20his%20retirement%20
letter. (accessed November 14, 2023).

one determine how many staff have been added to correct the understaffing problem. Moreover, no evidence is before this Court on how the funds for maintenance were used and if the use eliminated any of the inhumane conditions of confinement. Therefore, the Plaintiffs' claims are not moot and dismissal is not proper.

### D.  Plaintiffs are not Required to Allege an Exhaustion of Administrative Remedies.

Defendant Sorsaia also contends that Plaintiffs' claims are barred by the failure to exhaust administrative remedies and attaches policies and affidavits that cannot be considered in a motion to dismiss. Defendants Sorsaia admits as much when he requests summary judgment on this issue. *See, Memo in Support* [Doc 13] at pp. 4 and 12. More importantly, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007).

"[E]xhaustion is only required to the extent that administrative remedies are actually available to the inmate." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 47 (S.D. W. Va. 2020). "Failure to exhaust 'is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion.'" *See id*. at 46 (citing, *Porter v. Sturm,* 781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones v. Bock,* 549 U.S. 199, 212-13, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)). "A plaintiff is under no duty to anticipate or attempt to defuse the defenses that might be raised in the defendant's answer," inclusive of the statute of limitations. *See Gable v. Gable*, 245 W.Va. 213, 218, 858 S.E.2d 838 (2021); *See also Wade v. Winslow*, 2015 U.S. Dist. LEXIS 94029 (N.D.W.Va. 2015).  Inasmuch as Defendant attempts to assert otherwise, his motion to dismiss should be denied on this issue.

However, for purposes of the present Motion to Dismiss, Plaintiffs are "not required to affirmatively show exhaustion in his complaint."  *Wilcox*, 877 F.3d at 167 (citing *Jones v. Bock*). Indeed, at the Motin to Dismiss stage, Plaintiffs' claims are not subject to dismissal "based on the plaintiff's failure to affirmatively show exhaustion."  *Id*. (citing *Custis v. Davis*, 851 F.3d 358, 361-62 (4th Cir. 2017)).

This Court in *Baxley* (Judge Chambers) extensively discussed plaintiffs alleged failure to exhaust administrative remedies for failing to file grievances in reaching the decision to deny Defendant's Motion for Summary Judgment.  *See Baxley*, 508 F. Supp. 3d at 46-53.  Of course, such a detailed analysis is not required here as no discovery has been taken.

Nevertheless, the *Baxley* court reasoned that a court must look beyond written policies and consider whether the grievance procedure is a "dead end" that provides no relief at all; whether the procedure is "so opaque that it becomes, practically speaking, incapable of use"; or, as is the case at SRJ, whether administrators use "machination, misrepresentation, or intimidation" to "thwart" the inmates use of the grievance procedure.  *See id*. at 48 (citing *Ross v. Blake,* 136 S. Ct. 1850, 1859-60, 195 L. Ed. 2d 117 (2016));  *see also Germain v. Shearin*, 653 F. App'x 231, 232-33 (4th Cir. 2016) (citing *Ross*).

After reviewing the extensive evidence and arguments by the parties, this Court in *Baxley* concluded that, "[t]he Court is not persuaded by Defendant's argument that the Plaintiffs should, or even could, have complied with the grievance procedure laid out in the Inmate Handbook."  *See Baxley*, 508 F. Supp. at 46 (citing *Ross*, 136 S. Ct. at 1859 ("[w]hen rules are so confusing that no reasonable prisoner can use them, then they're no longer available")).

The Court in *Baxley* determined that the grievance procedure found in the West Virginia Department of Corrections Inmate Handbook was so obscure as to make it "unavailable."

Accordingly, Defendant Sorsaia's Motion to Dismiss for failure to exhaust administrative remedies must be denied as it has been determined that the grievance procedure is unavailable to West Virginia's inmates. Consequently, Defendant Sorsaia's request for summary judgment must also be denied.

### E. Venue

MOCC, where Plaintiff Sheppheard is housed is in Fayette County, within this Division of the Southern District.[3] Considering the Plaintiffs allege that constitutional violations are occurring in all correctional facilities in West Virginia, venue is proper in this Court. Therefore, Plaintiffs respectfully request that this Court not transfer this action.

### F. Plaintiffs Sufficiently State A Claim Upon Which Relief May Be Granted for Alleged Violations of the Eighth And Fourteenth Amendments.

The Eighth Amendment's Cruel and Unusual Punishment Clause governs constitutional claims brought by convicted inmates. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The Eighth Amendment is violated when prison officials, acting with "deliberate indifference," expose inmates to "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In cases seeking only injunctive relief, it is the risk itself that violates the Eighth Amendment; the prisoner need not await bodily injury before seeking relief. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition."). A prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837. In class actions challenging a prison system, "systemic deficiencies can provide the basis for a finding of deliberate indifference." *Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-04219-NKL, 2017 WL 3185155,

---

[3] MOCC is a prison located within the geographical region of this Division, as is the Southern Regional Jail, located in Beaver, West Virginia, as well as the Spadaro Juvenile Center in Mount Hope, West Virginia.

at *7 (W.D. Mo. July 26, 2017), aff'd, 910 F.3d 1030 (8th Cir. 2018) (quoting *Harris v. Thigpen*, 41 F.2d 1495, 1505 (11th Cir. 1991)).

The Eighth Amendment's prohibition against cruel and unusual punishments includes "'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016) (quoting Helling *v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). Convicted inmates are constitutionally guaranteed humane conditions of confinement, which encompasses adequate food, clothing, shelter, and medical care and jail officials are charged with the duty to ensure that these constitutional requirements are met. *Id*. Conditions that combine to produce the deprivation of a single, identifiable human need may be considered together. *Scarborough v. Austin*, 1992 U.S. App. LEXIS 16319 at *6 (4th Cir. 1992).

A two-prong test is used to determine whether an Eighth Amendment violation exists. The two-prong test consists of a subject and objective requirement. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). "First, the inmate must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury, or a substantial risk thereof." *Id*. (citations and internal quotation marks omitted). "Second, an inmate must show that the prison official had a sufficiently culpable state of mind, which, in this context, consists of deliberate indifference to inmate health or safety. *Id*. at 127-28 (citations and internal quotation marks omitted).The subjective prong requires actual knowledge by the official, which can be demonstrated by direct or circumstantial evidence. *Id*. at 128.

Defendant Sorsaia relies solely on the allegations set forth by the Named Plaintiffs and ignores the allegations regarding the undisputed systemic constitutional deficiencies alleged, which affect all inmates by creating a substantial risk of harm to them. The State of West Virginia

18

is charged with ensuring that inmates are subjected to appropriate and humane conditions of confinement while housed in any West Virginia correctional facility. *See Compl.* [Doc 9] at ¶20. The State of West Virginia is charged with maintaining and operating its correctional facilities in a manner that meets the minimal civilized measure of life's necessities. *See id.* at ¶21.

On August 11, 2022, Governor Justice issued an Executive Order finding a state of Emergency existed with respect to the staffing levels of juvenile and adult facilities, which ." *See id.* at ¶33. Governor Justice recognized that "any shortage of correctional officers limits the ability to properly supervise the State's incarcerated individuals" and lack of proper supervision may present a danger to the incarcerated individuals and others. *See id.* at ¶34 recognized that excessive amounts of overtime are not conducive to safe working practices and environments. *See id.* at ¶42.

WVDCR Chief of Staff, Brad Douglas, worked in West Virginia's correctional system for a quarter century and testified recently that understaffing, overcrowding, and deferred maintenance all have an impact on safety. *See id.* at ¶30.  He admitted that the correctional officer shortage and overworked staff affects the security of the jails as the facilities depend on staff and security staff to operate them safely. *See id.* at ¶¶51-52.

Overcrowding makes a facility less safe, secure, and humane than it could be resulting in having two to three inmates in a cell and inmates sleeping in the day room of the facility. *See id.* at ¶¶59 and 61. Overcrowding in facilities also makes the maintenance situation worse. *See id.* at ¶62. Part of the deferred maintenance includes money needed for door locking control systems and doors and locks. *See id.* at ¶73. A state of disrepair of doors, locks, and door locking control systems can present a risk of harm to inmates as inmates need to be prevented from being able to access other inmates during lockdowns or at night when an inmate is sleeping. *See id.* at ¶74.

The Named Plaintiffs describe some of the unsafe conditions to which they have been exposed. These conditions include inadequate portions of food; undercooked food; showers with only hot water; lack of access to hot water; lack of hygiene items; lack of access to a law library; lack of recreational time; overcrowded cells; exposure to mold; and, exposure to rodent feces. *See id.* at ¶¶113-117; ¶¶137-140; and, ¶¶159-160. These complaints exist in the context of systemic, decades long known overcrowding, understaffing and overdue maintenance.

These conditions and other inhumane conditions exist system wide. While the allegations of the *Complaint* only set forth the conditions as to three individuals, one can reasonably infer that multiple inmates, former inmates, former employees, and current employees will provide additional evidence regarding the inhumane conditions in West Virginia's penal system.

When the challenge raised by a plaintiff is that system wide deficiencies create a substantial risk of harm to all prisoners, it is unnecessary for a court to "consider whether each of the individual Plaintiffs' claims result in a constitutional violation." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 55 (S.D. W. Va. 2020) (*citing*, *Brown v. Plata*, 563 U.S. 493, 505 n.3, 131 S. Ct. 1910, 179 L. Ed. 2d 969 (2011). Further, with respect to the subjective prong, Defendant Sorsaia claims to have been in office for only one week prior to the filing of this action. However, subjective intent can be demonstrated "if plaintiffs can establish that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" *Id*. at 56-57. Based upon the testimonies of former DHS and DCR officials, this is beyond doubt. In essence, Defendant Sorsaia wishes this Court to believe that he had no knowledge of the longstanding and pervasive overcrowding, understaffing, and deferred maintenance that has persisted in West Virginia's correctional system

20

for at least a decade. This contention is unsupportable; moreover, the contention creates a factual issue the resolution of which is inappropriate in this motion.

Defendant Sorsaia again claims that he is not able to provide the relief requested; however, as Cabinet Secretary for the WVDHS, Defendant Sorsaia has the power to make policy changes that remedy the unconstitutional conditions of confinement that are alleged in this action.

### G. Plaintiffs Request Appropriate and Permissible Relief pursuant to 18 U.S.C. § 3626.

Defendant Sorsaia again crafts a sweeping argument directed toward securing a dismissal of the entire action. The argument begins by listing the relief sought by Plaintiffs in Paragraphs (c) through (f) of the Prayer for Relief. Next, Defendant describes the procedure for appropriations in West Virginia, which is an expansion on the allegations in Plaintiffs' *Complaint*. *See, Compl.* [Doc 9] at ¶¶ 11-13. Next, Defendant cites case law regarding the doctrine of separation of powers as set forth in the *West Virginia Constitution*. Finally, Defendant Sorsaia ties only the relief sought in Paragraphs (e) and (f) of the Prayer for Relief to his failing argument that a federal court ordering an executive to initiate specific appropriations, a legislature to pass the appropriations bill, and the governor to sign the bill violates the state separation of powers doctrine.

Defendant Sorsaia, however, never explains how an order requiring the executive to act within the scope of his authority and requiring a legislature to act within its scope of authority violates the separation of powers doctrine. One would have thought the PLRA would have been challenged on this basis prior to this case. Defendant may have an argument somewhere in there, but Plaintiffs cannot discern the nature of the argument. Additionally, as previously addressed in response to Defendant's *Eleventh Amendment*/sovereign immunity argument, a federal court is acting entirely within its jurisdiction and authority when it crafts appropriate relief under the PLRA.

### H. Plaintiffs' Complaint Presents Questions regarding Unconstitutional Conditions of Confinement.

Perhaps it is Defendant Sorsaia's newness to his position that causes him to be unable to see that Plaintiffs seek an injunction to remedy unconstitutional conditions of confinement. That is, Plaintiffs seek to be free from cruel and unusual punishment. Put another way, the unconstitutional violations (inhumane conditions of confinement) result from a combination of overcrowding, understaffing, and deferred maintenance. The Plaintiffs present a constitutional question, not a political question. As stated by the United States Supreme Court:

> Courts nevertheless must not shrink from their obligation to 'enforce the constitutional rights of all "persons," including prisoners.' *Cruz v. Beto*, 405 U.S. 319, 321, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam). Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.

> *Brown v. Plata*, 563 U.S. 493, 511, 131 S. Ct. 1910 (2011).

Granted, one of the ways that the inhumane conditions can begin to be alleviated is by the expenditure of funds to correct the deferred maintenance and attempt to increase the staffing. An expenditure of funds would only correct overcrowding if new facilities were constructed or through other means. Thus, the unconstitutional conditions need to be remedied, but the expenditure of funds does not constitute the entire solution.

Defendant relies upon the pronouncement of the United States Supreme Court in *Baker v. Carr* in support of his argument, which defines a political question is one where "a textually demonstrable constitutional commitment of the issue to a coordinate political department."[4] No question exists that this Court has the jurisdiction and power to determine whether the Plaintiffs are subject to inhumane conditions of confinement prohibited by the *Eighth Amendment*.

---

[4] All quotations are taken from the *Memorandum in Support* [Doc 13] at p. 22.

No "lack of judicially discoverable and manageable standards for resolving it" exists. *See*, 18 U.S.C. § 3626; *Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013); *v. Plata*, 563 U.S. 493, 131 S. Ct. 1910 (2011); *Goff v. Harper*, 59 F. Supp. 2d 910 (S.D. Iowa 1999). With respect to "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion," the State of West Virginia has already made a policy determination to permit the unconstitutional practices to continue, although some initial steps have been made toward addressing understaffing and deferred maintenance, approximately $235,000,000 remaining to be spent, at a minimum.

A political question exists also in circumstances wherein "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government" exists. Such circumstances do not exist in the case *sub judice*. *See*, *Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910 (2011) (citation omitted)  ("A court that invokes equity's power to remedy a constitutional violation by an injunction mandating systemic changes to an institution has the continuing duty and responsibility to assess the efficacy and consequences of its order."). Therefore, well-established precedent permits this court to determine constitutional violations, approve or fashion the remedies, and continue to monitor the implementation of the remedies.

Of course, "an unusual need for unquestioning adherence to a political decision already made" or the "potentiality of embarrassment from multifarious pronouncements by various departments on one question" are not applicable in this case nor does Defendant argue that they are applicable.

Additionally, Defendant seems to believe that Plaintiffs seek to have the Legislature pass specific laws addressing the prison system. In fact, Plaintiffs seek to have the internal policies of WVDRC modified to the extent necessary to remedy constitutional violations. At this early stage,

Plaintiffs cannot, and are not required to, address each specific policy that may need to be changed. Perhaps a policy change could be made that if an inmate does not have access to hot water or only has access to hot water in their designated area, then an accommodation should be made to provide the inmate with water of an appropriate temperature for health and hygiene purposes. Perhaps a policy should be instituted that upon formation of a "gang" in prison, the "gang" members should be transferred to separate facilities as soon as possible. Perhaps if the laundry service in a prison is inadequate, provision could be made for the utilization of an outside laundry service so that the inmates have clean and dry clothes for their health and hygiene. Perhaps temporary health care workers could be called in to assist on an as-needed basis in the event of a widespread illness or an unusual influx of inmates. The Constitution requires Plaintiffs and putative class be treated as humans and provided basic human necessities for their safety, health, and hygiene. No political questions exist here; just questions of basic human rights.

## I. The Tenth Amendment does not Bar the Instant Action.

Defendant Sorsaia again argues that Plaintiffs' *Complaint* seeks solely to have this Court require that appropriations be made by the West Virginia State Legislature. While Plaintiffs appreciate the legal tome regarding the Tenth Amendment, the Plaintiffs' claims arise under the *Eighth Amendment*, which is made applicable to the State of West Virginia by the *Fourteenth Amendment. Estelle v. Gamble*, 429 U.S. 97, 101, 97 S. Ct. 285, 289 (1976) (citation omitted). Thus, the power to engage in cruel and unusual punishment is not reserved to the State of West Virginia. Without providing a legal tome, federal courts have the jurisdiction and power to provide remedies for violations of the Federal Constitution. *See*, 18 U.S.C. § 3626; *Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013); *v. Plata*, 563 U.S. 493, 131 S. Ct. 1910 (2011); *Goff v. Harper*, 59 F. Supp. 2d 910 (S.D. Iowa 1999).

To the extent that Defendant Sorsaia claims that this Court cannot order the State of West Virginia to make appropriates, again, this is not the gravamen of Plaintiffs' *Complaint*. Plaintiffs seek to enjoin constitutional violations. Thus, Plaintiffs' *Complaint* sufficiently states a claim upon which relief can be granted regardless of whether or not that relief includes appropriations.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that *Defendant Sorsaia's Motion to Dismiss Complaint* be denied.

**PLAINTIFFS,**
**By Counsel**

_____s/ Stephen P. New_____
Stephen P. New (WVSB 7756)
Emilee B. Wooldridge (WVSB 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762

robertdunlapesq@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

THOMAS SHEPPHEARD,                    )
TYLER RANDALL, and                    )
ADAM PERRY, next friend               )
and guardian of Minor child J.P.,     )
on their own behalf and on behalf     )
of all others similarly situated,     )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )          Civil Action No. 5:23-cv-00530
                                      )          (Judge Berger)
JAMES C. JUSTICE JR.,                 )
in his official capacity as Governor of )
the State of West Virginia, and       )
MARK SORSAIA, in his official         )
capacity as the Cabinet Secretary     )
of the West Virginia Department       )
of Homeland Security,                 )
                                      )
        Defendants.                   )
_____ )

## CERTIFICATE OF SERVICE

Undersigned counsel for Plaintiffs hereby certifies that a true and correct copy of the foregoing *Plaintiffs' Response in Opposition to Defendant Sorsaia's Motion to Dismiss Complaint* was filed with the clerk on November 14, 2023 via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

/s/ Stephen P. New
Stephen P. New (WVSB No. 7756)