IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| **THOMAS SHEPPHEARD**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:23-cv-530 |
| | ) | (Judge Berger) |
| | ) | |
| **JAMES C. JUSTICE, JR.,** | ) | |
| in his official capacity as Governor of the | ) | |
| State of West Virginia; and | ) | |
| **MARK SORSAIA**, in his official capacity | ) | |
| as the Cabinet Secretary of the West | ) | |
| Virginia Department of Homeland | ) | |
| Security, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**GOVERNOR JUSTICE'S REPLY
SUPPORTING HIS MOTION TO DISMISS**

In this case, Plaintiffs are attempting to oversee both the administration and public funding of all state correctional institutions in West Virginia by employing the power of the federal court as the ultimate superintendent. For many reasons, the claim alleged against the Governor in his official capacity is defective as a matter of law and must be dismissed.

*First*, Plaintiffs' claim is barred by state sovereign immunity (also called Eleventh Amendment immunity), as the *Ex parte Young* exception does not apply here. *Second*, Plaintiffs fail to establish standing—specifically, the elements of traceability and redressability. *Third and finally*, Plaintiffs fail to state a claim that the Governor has or is violating the Eighth Amendment because they have not plausibly alleged the subjective requirement of deliberate indifference. In fact, Plaintiffs have affirmatively pleaded precisely the opposite.

Each of Plaintiffs' responses to these arguments is without merit and will be addressed in turn. *See* ECF No. 18 (hereinafter, "Response"). Accordingly, the Governor's motion to dismiss should be granted.

## ARGUMENT

I. **Plaintiffs do not satisfy the *Ex parte Young* exception to state sovereign immunity.**

   A. **Plaintiffs fail to identify the required "specific connection" between the relief sought and the Governor's particular legal authority.**

Most fundamentally, Plaintiffs' claim does not satisfy the *Ex parte Young* exception to state sovereign immunity because the plaintiffs' complaint relies solely on the governor's general duty to enforce state law and general control and supervision over a state executive branch. *See Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). In response, Plaintiffs disclaim this (despite the Complaint, ¶ 11), pointing instead to two specific powers of the Governor, but neither can satisfy the demands of *Ex parte Young*.

*First*, Plaintiffs argue that because the Governor possesses the constitutional and statutory power to grant reprieves and pardons after conviction, a federal court order compelling him to address overcrowding would be effective since he can simply release inmates from state custody. Response at 7. This argument—which has been adopted by no federal court as far as undersigned counsel can tell—is without merit for several reasons.

To begin with, nowhere in Plaintiffs' complaint do they even mention the Governor's commutation or pardon powers, or its connection to satisfying the relief requested. Rather, it appears for the first time in their response briefing. Regardless, however, the Governor's pardon and commutation powers cannot provide a basis for the exercise of federal jurisdiction over him under the *Ex parte Young* exception because those powers are wholly discretionary. As *Ex parte*

*Young* itself instructs, federal courts lack the power to control discretionary actions of state officials:

> There is no doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty.

*Ex parte Young*, 209 U.S. 123, 158 (1908).

What's more, the U.S. Supreme Court has held a convicted prisoner has "no constitutional or inherent right . . . to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). It therefore follows that the Eighth Amendment does not confer a right on a prisoner to insist on the release of other prisoners before the expiration of their valid sentences.

Finally, the fact that Plaintiffs fail to present a single citation of any federal court exercising jurisdiction over a state governor under *Ex parte Young* to remedy alleged overcrowding based on the governor's pardon and commutation powers should give the Court great pause. Where this argument has been made, it was rejected for these reasons. *See Tishkof v. Fallin*, No. CIV-17-421-RAW-SPS, 2019 WL 1413754, at *6 (E.D. Okla. Mar. 28, 2019) (relying on *Ex parte Young* in concluding that the federal court cannot "control" Governor Fallin's pardon or commutation decisions to "ease overcrowding" in an Eighth Amendment case); *see also Burnett v. Fallin*, 785 F. App'x 546, 553 (10th Cir. 2019) (rejecting argument that Governor Fallin's decisions not to commute "more sentences and grant[] more requests for clemency" cannot support an Eighth Amendment violation based on overcrowding).

In any event, the prospect of relying on a state governor's discretionary pardon or commutation power to exercise the federal judicial power over the State to ease overcrowding raises serious federalism and separation of powers concerns, as well as the question of whether

the scope of the federal judicial power even includes the authority to order a State's governor to issue mass pardons or commutations.

*Second*, Plaintiffs argue they are also relying on the Governor's "specific power . . . for setting the budget for certain items, including corrections." Response at 9. But the Governor does not have the unilateral power to *set* the budget—only to *propose* a budget (or supplemental spending bills), which Plaintiffs at one point appear to acknowledge. *See* Response at 8. Plaintiffs do not dispute that the Governor cannot appropriate funds. Nor do they appear to defend their request that this Court order the Governor to appropriate funds himself. Rather, Plaintiffs only rely on the Governor's power to *propose* the appropriation of funds. But the act of *proposing* the spending of funds to the Legislature (all that the Governor can do in this regard) does not remedy the wrongs as alleged by Plaintiffs. According to Plaintiffs, it is the spending *itself* that that is required to remedy the alleged Eighth Amendment violations. And Plaintiffs do not contest that the Governor lacks the legal authority to appropriate funds. Therefore, this cannot be a basis for satisfying the *Ex parte Young* exception.

Critically, Plaintiffs present *no other* specific or direct power that would permit the exercise of federal court jurisdiction over the Governor under *Ex parte Young* in this Eighth Amendment conditions-of-confinement case. And, certainly, Plaintiffs make no attempt to say how the Governor has the legal authority to undertake the "number of remedies in their Complaint not related to specific appropriations," which they list on page 13 of the Response. There is a good reason why in most conditions-of-confinement cases, the plaintiffs name the officials directly in charge of the correctional facilities at which the allegedly unconstitutional conditions are occurring, whether that be a warden, superintendent, or sheriff. *See, e.g.*, *Jones v. Gusman*, 296 F.R.D. 416, 423 (E.D. La. 2013) (sheriff in charge of parish jails); *Goff v. Harper*,

59 F. Supp. 2d 910 (S.D. Iowa 1999) (prison wardens). That is because prison officials are the ones with the specific legal authority to remedy them. But here, Plaintiffs made the tactical decision to sue *only* the Governor and the Cabinet Secretary of the Department of Homeland Security.

Otherwise, Plaintiffs appear to mistake the Governor's arguments as seeking to dismiss or strike out particular remedies being sought by Plaintiffs in their complaint. Not so. Rather, the point is that the Court may only exercise the federal judicial power against the Governor in his official capacity if *Ex parte Young* is satisfied, and *that analysis requires* ascertaining the "requisite 'specific connection'" between the relief being sought and the sued official's particular legal authority. *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021). Here, for the reasons explained, that requisite specific connection is wholly absent. Accordingly, the Governor is entitled to state sovereign immunity and the claim against him must therefore be dismissed.

**B.     *Ex parte Young* cannot be used to directly order spending of state funds.**

*Ex parte Young* is not satisfied for another reason. The U.S. Supreme Court has made clear that "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury," which is what Plaintiffs expressly demand here. *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 256–57 (2011). Plaintiffs have no answer to this clear language from the Supreme Court's decision in *Stewart*.

Instead, Plaintiffs argue that the $330 million they specifically demand be spent from the state treasury to remedy the allegedly unconstitutional conditions is merely "ancillary" to the relief they are requesting. Response at 12. That characterization does not pass the straight-face test. In fact, the alleged lack of past public spending on corrections and demand for $330 million more is the central feature of the complaint—in short, it is the essence of the relief they are

seeking. As the Governor explained in his opening brief, where a plaintiff's request for relief "would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought," it is barred by state sovereign immunity. *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882–83 (7th Cir. 2012) (cleaned up). Plaintiffs' attempt to downplay their express demand for more public spending in response to the motions to dismiss lacks credibility.

Finally, Plaintiffs go on at length, discussing decisions from other courts in conditions of confinement cases. *See* Response at 14–16. It appears Plaintiffs are trying to persuade this Court that this case is no different than those others. However, the caselaw discussed is not relevant to the Governor's arguments because they do not discuss the application of state sovereign immunity and the *Ex parte Young* exception to a state's governor. That is the crux of the matter here.

## II. Plaintiffs lack standing.

For many of the same reasons that the *Ex parte Young* exception is not satisfied, Plaintiffs fail to establish standing. Specifically, Plaintiffs fail to demonstrate that their alleged ongoing injuries are fairly traceable to the Governor's particular conduct or would be redressed by a favorable ruling against the Governor specifically. On either basis, Plaintiffs lack standing.

**A. No traceability**. Plaintiffs fail to demonstrate traceability, as was their burden. In response, Plaintiffs incorporate by reference their response on the *Ex parte Young* issue, Response at 17, but at no point do Plaintiffs even mention traceability. That is, Plaintiffs make no effort to explain how the allegedly unconstitutional conditions of confinement *were caused by the Governor's particular conduct*. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (traceability is satisfied where there is "a causal connection between the injury and the

[defendant's] conduct complained of by the plaintiff."). That is fatal for their claim and another independent basis for dismissal.

Here, Plaintiffs must be able to demonstrate that the harm they allege was "*caused by the defendant*, as opposed to the 'independent action of some third party not before the court.'" *Id*. (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th Cir. 2005)) (emphasis added). Generously construed, Plaintiffs' argument that the Governor's allegedly insufficient past spending *proposals* caused the unconstitutional conditions cannot satisfy traceability. The Legislature—a third party not before the court—is required to appropriate public funds. So even if Plaintiffs are correct that a lack of money caused the allegedly unconstitutional conditions, the Governor alone (or with the Secretary) cannot be said to have caused those conditions due to the lack of actual, sufficient spending simply based on his power only to *propose* such spending to the Legislature.

**B. No redressability**. "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). But attempting to satisfy redressability becomes "problematic when third persons not party to the litigation must act in order for an injury to arise or be cured." *Id*. Here, for similar reasons they fail to show traceability, Plaintiffs do not meet their burden to show that their alleged injuries "will be redressed" by a decision ordering the Governor to merely *propose* supplemental appropriations. Only the Legislature can appropriate. To rely only on the Governor's power to *propose* appropriations is to base redressability only on speculation of future, hypothetical appropriations—but that is not sufficient. *See id*.

7

Plaintiffs again downplay or ignore the essential feature of their complaint and request for relief (alleged inadequate spending) and instead only address the issue of alleged overcrowding. And once again, Plaintiffs point only to the Governor's constitutional and statutory power to grant commutations and pardons. But because the Fourth Circuit looks to the *Ex parte Young* framework for determining redressability as against state officials, *see Disability Rights S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022), the same reasons that the (discretionary) commutation and pardon power do not suffice for overcoming state sovereign immunity show why redressability is also not satisfied. *See infra* Part I.A. Even in their quotation from the West Virginia Supreme Court of Appeals, Plaintiffs acknowledge that the Governor's power to pardon or parole is discretionary. *See* Response at 17 ("'the Governor *may* pardon, parole, transfer, [etc]…") (quoting *State ex rel. Dodrill v. Scott*, 352 S.E.2d 741, 745 (1986)) (emphasis added).

Otherwise, Plaintiffs try to rely on the Prison Litigation Reform Act of 1995 ("PLRA") to justify their position that their claim can be redressed by a favorable ruling against the Governor since that law permits, under narrow circumstances not shown here, the release of prisoners. Under the PLRA, a court may not grant any prospective relief unless the court finds that the relief is narrowly drawn, extends no further than necessary to correct the "violation of [a] Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." § 3626(a)(1)(A). In addition, the PLRA prohibits the issuance of a prisoner release order unless the court finds "by clear and convincing evidence that . . . crowding is the primary cause of the violation of a Federal right" and that "no other relief will remedy the violation of the Federal right." § 3626(a)(3)(E).

Here, Plaintiffs do not even attempt to show that they meet the criteria for a prison release order under 18 U.S.C. § 3626(a)(3), or even that the Governor is the proper defendant against whom such an order can lie. Regardless, however, release from prison is not an appropriate remedy in this action, which is brought under 42 U.S.C. §1983. Supreme Court precedent makes clear that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Lee v. Winston*, 717 F.2d 888, 892 (4th Cir. 1983) (noting that § 1983 "cannot be used to seek release from illegal physical confinement"); *Yagman v. Johns*, No. 5:08-HC-2103-D, 2009 WL 6669325, at *3 (E.D.N.C. Feb. 12, 2009) ("Release from confinement is not a remedy available for an Eighth Amendment deliberate-indifference claim." (citing *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005))) aff'd, 328 Fed. App'x. 280 (4th Cir. 2009); *Howard v. W. Virginia Div. of Corr.*, No. 2:13-CV-11006, 2016 WL 1173152, at *7 & n.4 (S.D.W. Va. Mar. 22, 2016) (Johnston, J.) (same).

### III.     Plaintiffs fail to state a claim against the Governor.

As explained in the Governor's opening memorandum, Plaintiffs fail to state a claim for relief against the Governor because the Governor has not been deliberately indifferent to the conditions in our State's correctional institutions. In fact, *Plaintiffs' own complaint* demonstrates the Governor has for years focused his time and energy seeking to address the alleged risks to health and safety in those facilities. Therefore, Plaintiffs have wholly failed to plausibly allege the subjective element of an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994).

In response, Plaintiffs argue that the Governor is seeking to have this Court "decide a factual issue." Response at 18. That is simply false. The question on Rule 12(b)(6) review is the sufficiency of the allegations. And here, the Governor has argued that based on Plaintiffs' own factual allegations, which must be taken as true, Plaintiffs themselves have not plausibly alleged the subjective element of their Eighth Amendment claim. In fact, taking their well-pleaded factual allegations as true, Plaintiffs have plausibly demonstrated exactly the opposite: that the Governor has been consistently and affirmatively focused over many years of his administration on fixing the alleged risks to health and safety in state correctional institutions. Nowhere do Plaintiffs in their response actually address this argument or their own factual allegations that affirmatively demonstrate the Governor's substantial efforts to improve conditions in these facilities. Based on a straightforward application of Rule 12(b)(6), Plaintiffs' Eighth Amendment claim against the Governor must be dismissed.

## CONCLUSION

In addition to the foregoing reasons that warrant dismissal, but to avoid needless repetition, the Governor joins by reference the arguments in reply advanced by Secretary Sorsaia supporting his motion to dismiss. *See* ECF 22, at 7–19. Accordingly, the Governor's motion to dismiss should be granted with prejudice.

**James C. Justice, II, Governor,**

**By Counsel:**

/s/ Michael B. Hissam
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339

681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for James C. Justice, II, Governor, in his official capacity*

11