IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| **THOMAS SHEPPHEARD**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:23-cv-530 |
| | ) | (Judge Berger) |
| **JAMES C. JUSTICE, JR.**, | ) | |
| in his official capacity as Governor of the | ) | |
| State of West Virginia; and | ) | |
| **MARK SORSAIA**, in his official capacity | ) | |
| as the Cabinet Secretary of the West | ) | |
| Virginia Department of Homeland | ) | |
| Security, | ) | |
| | ) | |
| **Defendants**. | ) | |

### THE GOVERNOR'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL GOVERNOR JUSTICE TO RESPOND FULLY AND ADEQUATELY TO DISCOVERY

At the very outset of discovery in this case, Plaintiffs served their extensive first set of discovery requests to Defendants Governor Justice and Secretary Sorsaia. Other than changing the names of the request recipients, where necessary, the requests are *identical*. In a good-faith effort to respond to discovery in an economical and efficient manner, notwithstanding the Governor's important constitutional objections to participation in this case, the Governor applied Plaintiffs' proposed ESI protocol to the Google Drive accounts for Governor@wv.gov and Brian.r.abraham@wv.gov, to capture any non-privileged communications or documents that would not be duplicative of the documents produced by Secretary Sorsaia. The remaining discovery can be obtained, and is being obtained (subject to reasonable objections) from Secretary Sorsaia. Accordingly, because Plaintiffs' requests are unreasonably cumulative and

1

duplicative of the requests sent to Secretary Sorsaia, and because the discovery can be obtained from Secretary Sorsaia in a less burdensome and less expensive manner, the Court should deny Plaintiffs' Motion to Compel.

## FACTUAL BACKGROUND

On August 8, 2023, Plaintiffs, Thomas Sheppheard, Tyler Randall, and Adam Perry, as next friend and guardian of J.P., initiated this lawsuit with a class-action complaint alleging unconstitutional conditions of confinement at West Virginia's correctional facilities. According to the Complaint, Plaintiff Sheppheard is a current inmate at Mount Olive Correctional Center ("MOCC"), Plaintiff Randall is an inmate at Southwestern Regional Jail ("SWRJ"), and J.P. is an inmate at Donald R. Kuhn Juvenile Center ("Kuhn").

Plaintiffs' allegations are limited to the specific institutions in which each is housed. Specifically, with respect to MOCC, Sheppheard alleges the following:

- Plaintiff Sheppheard has been given inadequate portions of food at MOCC;
- Plaintiff Sheppheard has only had access to showers with hot water, which resulted in blisters on his back;
- Plaintiff Sheppheard does not get regular access to new toothbrushes and toothpaste;
- Plaintiff Sheppheard does not have access to a law library at MOCC; and
- Plaintiff Sheppheard does not have recreational time at MOCC.

ECF No. 1 at ¶¶ 113-17. With respect to SWRJ, Randall alleges the following:

- Plaintiff Randall, while incarcerated at Southwestern, has been housed in overcrowded cells;
- Plaintiff Randall has observed inmates sleeping on the floor while at Southwestern;
- Plaintiff Randall has been exposed to mold while at Southwestern;
- Plaintiff Randall has been exposed to rodent feces while in his pod at Southwestern; and

- Plaintiff Randall has been given inadequate portions of food at Southwestern.

*Id.* at ¶¶ 136-40. And finally, with respect to Kuhn, J.P. alleges the following:

- J.[P.]¹ has been served undercooked food while at Kuhn;

- Plaintiff J.[P.] has not always had access to hot water since being incarcerated at Kuhn.

*Id.* at ¶¶ 159-60. Plaintiffs make no allegations of inmate death, violence, or inadequate medical care. Nor do Plaintiffs make any allegations regarding conditions of confinement at other institutions.

On November 6, 2023, Defendant Justice moved to dismiss the Complaint for three reasons. First, the Governor has sovereign immunity, and does not fall under the *Ex parte Young* exception. Second, Plaintiffs lack standing to sue the Governor because their alleged injuries are not traceable to the complained-of conduct by the Governor (allegedly failing to propose proper budgets to the Legislature), nor would they be redressed by the sought-after remedy. And finally, Plaintiffs have failed to state a claim upon which relief can be granted. *See* ECF No. 16. That motion remains pending.

On January 25, 2024, Plaintiffs served *identical* discovery requests on both the Governor and Secretary Sorsaia. Plaintiffs' extensive discovery requests seek specific information and documentation regarding all 31 West Virginia correctional facilities over the span of seven years.

I. **The Governor objects to Plaintiffs' discovery requests as a whole.**

Governor Justice lodged three general objections to Plaintiffs' discovery requests. First, sovereign immunity is an absolute bar on all legal proceedings against the Governor, including discovery. *See Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022); *see also Suarez Corp. Indus.*

---

¹ The Complaint alternatively refers to the Plaintiff housed at Kuhn as "J.P." and "J.R." To avoid confusion, Governor Justice will use the initials J.P.

3

*v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997). And because the Governor is entitled to sovereign immunity in this matter, he is not properly subject to discovery. Notwithstanding, and without waiving that objection, however, the Governor responded in good faith to Plaintiffs' discovery requests.

Second, because the requests sent to the Governor and Secretary Sorsaia were identical, the Governor objected that the requests are unreasonably cumulative and duplicative, in that the discovery can be obtained from—and has been requested from—another source that is more convenient and less burdensome (i.e., Secretary Sorsaia). Indeed, to respond to these requests, the Governor would have to ask Secretary Sorsaia to gather and provide the necessary documents. Notwithstanding this second objection, the Governor attempted, in good faith, to respond to the small portion of Plaintiffs' requests that may not produce documents duplicative of those produced by Secretary Sorsaia by running Plaintiffs' proposed ESI protocol against the Google Drive accounts for Governor@wv.gov and Brian.r.Abraham@wv.gov.

Finally, the Governor objected to providing any information for facilities not named in the Complaint. He further objected to providing information regarding conditions of confinement not alleged in the Complaint.

On March 21, Plaintiffs sent a meet and confer letter to one counsel of record for the Governor, Michael Hissam. Plaintiffs did not include either of the two other attorneys of record in this letter.[2] In their March 21 Letter, Plaintiffs asked the Governor to withdraw his general objections to the discovery requests and produce all responsive documents, arguing that

---

[2] Unfortunately, because he was in a weeklong trial starting March 18, the undersigned did not see Plaintiffs' March 21 letter, and so no response was provided. Upon learning of this oversight, the undersigned informed Plaintiffs' counsel of this fact and offered to further meet and confer on these issues. No response was received.

"Governor Justice controls the departments, and his appointments, who may have responsive documents." Ex. C at 1. With respect to the Governor's objections about the cumulative nature of the requests, Plaintiffs asserted that the Governor may have knowledge that Secretary Sorsaia does not have, and that he can defray any cost of production by producing documents electronically through a free website like Sharefile or Dropbox, or by using an external hard drive that Plaintiffs will provide.

A meet and confer call was scheduled for March 26, with Plaintiffs' counsel, all counsel for Governor Justice, and counsel for Secretary Sorsaia present. During that call (which Plaintiffs' counsel referred to as a "check the box exercise"), Plaintiffs' counsel declined to discuss with counsel for the Governor any specific requests or objections, despite requests to do so. Counsel for the Governor informed Plaintiffs' counsel that he would be supplementing the Governor's production with documents and a corresponding privilege log.

## II.  Specific Objections

In addition to making general objections to Plaintiffs' discovery requests, the Governor also responded with specific objections to each request.

### A. Interrogatories

Plaintiffs served twelve identical interrogatories on Secretary Sorsaia and Governor Justice. Each interrogatory seeks detailed and specific information regarding each of West Virginia's 31 correctional facilities for a span of seven years. For example, Interrogatory No. 5 seeks "the number of portable beds or 'boats' available at each correctional facility in 2018, 2019, 2020, 2021, 2022, 2023, and 2024." Ex. A at 4. Interrogatories No. 6 and 7 seek the number of grievances filed at each facility in 2018, 2019, 2020, 2021, 2022, 2023, and 2024, the outcome of each grievance, and how many of those were denied or appealed. *Id.*

The Governor objected to each of these interrogatories as unreasonably cumulative of the interrogatories sent to Secretary Sorsaia, and referred Plaintiffs to Secretary Sorsaia's responses. Subject to his own objection to limit responses to the facilities, inmates, and conditions of confinement mentioned in the Complaint, Secretary Sorsaia responded to each interrogatory with the requested information. Ex. B at 2-8.

### B. Requests for Production

Plaintiffs also propounded 79 identical requests for production on the Governor and Secretary Sorsaia. Those requests sought the following general categories of documents: (1) DCR policies and procedures; (2) grievances filed by any inmate relating to 38 separate topics from 2021; (3) maintenance logs and documentation; (4) document retention/destruction logs; (5) internal and external communications from January 1, 2021, regarding a wide range of subjects; (6) inspection documents, audits, and environmental testing documents; (7) contracts or agreements with third party vendors; (8) various types of count sheets; and (9) various types of incident reports.

Because almost all documents requested in Plaintiffs' Requests for Production are maintained by, DHS and/or DCR, the Governor objected to these requests as being unreasonably cumulative of those sent to Secretary Sorsaia. Notwithstanding that objection, and recognizing that responsive communications may exist that do not include a member of DHS or DCR, the Governor ran Plaintiffs' proposed ESI Protocol, Ex. D, against the Google Drive accounts for Governor@wv.gov and Brian.r.Abraham@wv.gov, and produced responsive documents and a corresponding privilege log.[3]

---

[3] That production was completed on March 25, 2024, and a corresponding privilege log was produced.

Finally, the Governor also objected to several requests that—along with seeking cumulative information—sought information that was irrelevant to any claim or defense and disproportionate to the needs of the case. Specifically, the Governor made this objection in response to the requests at issue in Plaintiffs' Motion to Compel: Requests for Production Nos. 14, 31, and 76, which seek communications and Critical Incident Reports regarding inmate deaths; Requests for Production Nos. 15 and 25, which seek communications regarding CARES Act and other federal funding; Requests for Production Nos. 21, 29, 44, 45, and 46, which seek communications regarding document disposal, and certain request forms related to the same; and finally, Request for Production No. 54, which seeks employee grievance forms.

## ARGUMENT

### I. This action against—and thus discovery from—the Governor is barred by sovereign immunity.

In our constitutional system, States "retain a residuary and inviolable sovereignty," *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245 (James Madison)), which is confirmed by the Eleventh Amendment, *id.* at 728–29. The doctrine of state sovereign immunity recognizes that "it is neither becoming nor convenient . . . that the course of [a State's] public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests." *Ex parte Ayers*, 123 U.S. 443, 505 (1887).

To give full force to state sovereignty, sovereign immunity serves as immunity from "suit," not just from liability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005). States, in other words, "cannot be subjected to *legal proceedings* at law or in equity without their consent." *The Siren*, 74 U.S. (7 Wall.) 152, 154 (1868) (emphasis added). A "suit" is against the sovereign "if the judgment sought would expend itself

7

on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, *or to compel it to act.*" *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (emphasis added). Where sovereign immunity applies, it applies to the totality of a suit, *which includes discovery*. *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022); *see also Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) (recognizing that when the defense of sovereign immunity is properly invoked, the bar is "absolute").

In this case, the Governor is entitled to state sovereign immunity so that he may not be subject to the burdens of litigation, including discovery. Plaintiffs sued the Governor only in his official capacity, meaning that this suit is effectively against the State, thereby implicating state sovereign immunity. There has been no abrogation of sovereign immunity by Congress or waiver by the State, nor can the Governor be sued under the *Ex parte Young* exception. *See Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021).[4] For that reason alone, Plaintiffs' Motion to Compel should be denied.

II. **These requests are unreasonably cumulative of the requests sent to Secretary Sorsaia, and thus not proportional to the needs of the case.**

"Rule 26(b)(2)(C) *requires* that discovery not be unreasonably cumulative; duplicative; obtainable from another source that is less expensive, less burdensome and more convenient; outside the scope of Rule 26(b)(1); or could have already been obtained by the party seeking it, who had ample opportunity to do so." *Black v. W. Va. State Police*, No. 3:22-cv-203, 2023 WL 4834948 at *6 (S.D.W. Va. Jul. 27, 2023). Rule 26(b)(2)(c) also mandates that "all permissive discovery . . . be measured against the yardstick of proportionality." *Id.* (finding proposed

---

[4] Governor Justice further incorporates by reference his sovereign immunity arguments in support of his motion to dismiss. *See* ECF No. 16.

deposition topics unreasonably cumulative where the records at issue were already provided during discovery).

Here, Plaintiffs have sent *identical* discovery requests to the Governor and Secretary Sorsaia. The Secretary and his counsel are currently sifting through over 170,000 responsive documents, and have already produced thousands of pages of responsive documents. The documents produced by Secretary Sorsaia are those documents that are regularly maintained by DCR and DHS.

Plaintiffs' only argument that these requests are not unreasonably cumulative is that because Governor Justice has been in office longer than Secretary Sorsaia, he may have "knowledge as the Governor in order to respond to the requests with information in his 'possession, custody, or control.'" *See* ECF No. 53 at 5. And instead of providing any reason why compelling the Governor to reproduce responsive documents collected and produced by Secretary Sorsaia is reasonable or proportional, Plaintiffs simply argue that the Governor is "also a proper party to receive these requests," and so should be required to do so. *Id.* at 5. Finally, Plaintiffs attempt to downplay the numerous costs involved in document review and production by offering to provide an external hard drive with which to produce the documents. The Governor addresses each argument in turn.

First, Plaintiffs' Interrogatories seek information that must be gathered through a review of documents maintained by DHS and DCR, not the Governor. The facts sought by the interrogatories do not change based on the person answering the question. For example, the average number of permanent or portable beds in each facility[5] is not information the Governor would have by virtue of being Governor. Instead, that information is tracked by, and maintained

---

[5] Interrogatories Nos. 4 and 5.

9

at, each facility. Indeed, for any party to answer how many permanent and portable beds are available in each facility would require a review of those documents. Similarly, the Governor does not have any unique or additional information about the number of inmate grievances, or their outcomes, that Secretary Sorsaia would not have, or be able to gain from a review of the documents.

Second, Plaintiffs contend that because the Governor oversees all departments of the State and all of his appointees, he has access to all documents requested. But Plaintiffs' argument indicates exactly why Plaintiffs' requests are duplicative and unreasonable. The Governor does not maintain the operational records of each prison facility, or of DCR itself. Functionally, the most efficient way for the Governor to gather the documents requested by Plaintiffs, is to ask Secretary Sorsaia. In essence, Plaintiffs ask this Court to order the Governor to get responsive materials from Secretary Sorsaia, then for each party to conduct its own privilege and confidentiality review, and finally for each party to produce *the exact same set of documents* to Plaintiffs. After all, the vast majority of documents requested by Plaintiffs are maintained by either DHS or DCR.

Instead of reproducing the same documents produced by Secretary Sorsaia—and requiring the taxpayers to pay for an identical (and intensive) document-review process—the Governor made a good-faith effort to produce documents that would not be captured by Secretary Sorsaia's collection process. With that goal in mind, the Governor ran Plaintiffs' ESI protocol—as proposed—through the accounts for Governor@wv.gov and Brian.R.Abraham@wv.gov. The Governor has produced all documents captured by that search, along with a detailed privilege log.

Finally, Plaintiffs contend that there is "little to no expense involved" in producing documents. That assertion is simply not true. Even producing the documents on a hard drive paid for by Plaintiffs, as Counsel offers, does not eliminate the expense that comes from counsel gathering and reviewing the documents. As Secretary Sorsaia has made clear, there were more than 170,000 documents gathered in response to Plaintiffs' requests. Reviewing that volume of documents for relevancy, responsiveness, and privilege is a monumental undertaking that requires several attorneys working all day, every day, for several weeks.

### III. The Governor should not be compelled to produce documents that are irrelevant to Plaintiffs' claims and disproportionate to the needs of the case.

Rule 26(b)(1) designates the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Committee Notes to the Rules offer three examples of information that "suitably focused" would be the type of information relevant to the parties' claims or defenses: "[1] other incidents of the same type, or involving the same product; [2] information about organizational arrangements or filing systems; and [3] information that could be used to impeach a likely witness." Fed. R. Civ. P. 26, Committee Notes, 2015 Amendment.

In the context of litigation claiming Eighth Amendment violations, the scope of discovery is generally tied to the nature of the violation claimed. *See e.g. Poindexter v. West Virginia Regional Jail Auth./DOC*, No. 3:18-cv-1151, 2020 WL 5578414 (S.D.W. Va. Sept. 17, 2020) (permitting limited discovery of excessive force grievances where plaintiffs claimed excessive force). In other words, where a request relates to a claim or complaint that has not been made, it seeks irrelevant information. *See Doe v. Cabell County Bd. of Educ.*, No. 3:21-cv-31, 2022 WL 288193, at *4 (S.D.W. Va. Jan. 31, 2022). Allowing broad, unfocused, discovery "would permit [plaintiff's] opponent to cast too wide a net and sanction an inquiry into scores of quasi-personal

11

information that would be irrelevant and non-discoverable." *Id.* (quoting *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-cv-4480, 2016 WL 3188007, at *6 (S.D.W. Va. Nov. 23, 2016)). For that reason, the *Doe* court limited the requested discovery to social-media content that references the plaintiff specifically, or is related to his claim for disability discrimination and damages of severe bodily harm and emotional distress. *Id.*

Similarly, in *Moses Enterprises v. Lexington Ins. Co.*, a matter involving the allegedly improper denial of an insurance claim, the Court limited the scope of Rule 30(b)(6) depositions in both time and subject matter. No. 3:19-cv-4777, 2021 WL 329210, at *7 (S.D.W. Va. Feb. 1, 2021). Finding that "it would pose an undue burden and expense on Defendants to prepare a witness" for deposition on the broad matters proposed, the Court limited the deposition scope to practices at that company concerning the specific type of insurance policy at issue for five years prior to the lawsuit. *Id.*

The issue here is the standard to prove an Eighth Amendment claim. To succeed on an Eighth Amendment claim involving conditions of confinement, plaintiffs must satisfy a two-pronged objective and subjective test. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Specifically, they must show that the violation is "sufficiently serious." *Id.* That is, that the alleged violation is "extreme" to the point that it causes "a serious or significant physical or emotional injury," or poses "a substantial risk of such serious harm." *Id*. Second, the inmate must demonstrate that the defendant "knew of and disregarded an excessive risk to inmate health or safety." *Id.* (cleaned up). Evidence regarding alleged incidents not involving the conditions of confinement asserted in the Complaint are irrelevant to Plaintiffs' claims.

### A. Discovery responses should be limited to the facilities mentioned in the Complaint.

The Governor lodged one final general objection to Plaintiffs requests: that Plaintiffs' requests were overbroad in that they sought information regarding facilities about which no claims had been made. Although plaintiffs purport to represent classes of prison inmates, jail inmates, and juvenile facility inmates, the Complaint only discusses conditions of confinement at three facilities: MOCC, SWRJ, and Kuhn. Plaintiffs have not alleged any unconstitutional conditions of confinement at other facilities—nor could they, as Plaintiffs do not allege that they were incarcerated at or have any knowledge of the conditions at other facilities.

Allowing discovery about other West Virginia facilities simply allows Plaintiffs to conduct a fishing expedition to garner new potential claims—not to support the claims they have already made. For that reason, information and documentation regarding conditions of confinement at facilities other than MOCC, SWRJ, and Kuhn are irrelevant to Plaintiffs' claims and disproportionate to the needs of the case. The Court should deny Plaintiffs' motion to compel discovery regarding facilities other than MOCC, SWRJ, and Kuhn.

### B. Requests for Production Nos. 14, 31, and 76

These requests seek documentation and communications involving inmate deaths at all correctional facilities. Specifically,

- **Request No. 14** seeks "[a]ll internal communications (including but not limited to, letters, memos, notes, e- mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS/WVDOCR referring or relating to inmate deaths at each correctional facility;"

- **Request No. 31** seeks "[a]ll external communications (including but not limited to, letters, memos, notes, e- mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS and any employee, agent, or representative of the West Virginia Legislature referring or relating to inmate deaths at West Virginia's correctional facilities;" and

13

- **Request No. 76** seeks "[a]ll Critical Incidents Involving Death records from January 1, 2021 to the present referring or relating to all subject correctional facilities (*See* WVDOCR Policy Directive 105.08)."

The Governor objected to each request on the grounds that they are unreasonably cumulative of the requests sent to Secretary Sorsaia. The Governor also objected because the requests are overly broad in that the requests "essentially ask for all communications between any and all employees of WVDHS." Finally, and most important, the Governor objected to these requests because they seek information that is irrelevant to Plaintiffs' claims, and is disproportionate to the needs of the case.

Plaintiffs' claims of unconstitutional conditions involve the adequacy of food portions, hygiene products, recreational time, hot water, and law library access at MOCC; the adequacy of food portions and hot water, mold and rodent feces, and overcrowded cells at SWRJ; and the adequacy of food and hot water at Kuhn. Plaintiffs make no claim related to inmate deaths, nor any claim that the conditions at any of the facilities have caused inmate deaths—or even near deaths. Thus, critical incident death records, and communications regarding inmate deaths are not relevant to Plaintiffs' claims. Nor is gathering and sharing such information proportional to the needs of the case.

To prove their one claim, Plaintiffs must show that the conditions alleged rise to the level of unconstitutionality. That is, that the conditions alleged either caused significant physical or emotional injury, or that they pose a substantial risk of significant physical or emotional injury. The scope of discovery should thus be limited to the information needed to prove those claims: that is information regarding the adequacy of food, cleanliness of pods, access to hot water, and hygiene products, law library access, recreation time, and overcrowded cells. If any of those conditions resulted in inmate death or serious physical or emotional injury, the discovery will make that clear.

### C. Requests for Production Nos. 15 and 25

These requests seek communications regarding CARES Act and other federal funding. Specifically:

- **Request No. 15** seeks "[a]ll internal communications (including but not limited to, letters, memos, notes, e- mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS/WVDOCR referring or relating to the receipt of Federal Funds, including but not limited to, CARES Act funding (or other federal funding) requested by, requested for, or allocated to the WVDOCR."

- **Request No. 25** seeks "[a]ll documents and external communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the State or any State Agency (including, but not limited to, the WVDOCR and WVDOHS) and/or the Federal Government, referring or Relating to CARES Act funding (or other federal funding) requested by, requested for, or allocated to the WVDOCR."

The Governor objected to these claims on the basis that the requests are cumulative of those sent to Secretary Sorsaia, and that they are overly broad and unduly burdensome because they essentially ask the Governor "to collect and review the emails and phone records of all employees of a state department." In addition, the Governor objected because the requests seek information that is not relevant to Plaintiffs' claims and is disproportionate to the needs of the case. And finally, the Governor objected because such information would be protected by the deliberative process privilege, attorney/client privilege, and the work product doctrine.

Plaintiffs' allegations against the Governor center on the assertion that he did not *propose* budgets to the legislature sufficient to cover costs of repairing correctional facilities. In essence—and ignoring the initial fact that the Governor lacks the constitutional authority to set the state's budget—Plaintiffs claim that because the State has a budget surplus, the Governor should have spent that money on prison maintenance. To support that allegation, Plaintiffs allege that "West Virginia ended the 2023 fiscal year with a $1.8 billion dollar surplus," that

15

$1,165,478,000 of the surplus has been appropriated, that none of that was designated toward maintenance of correctional facilities, and that "[a]pproximately $454 million of the surplus remains unappropriated." ECF No. 1 at ¶¶ 84-86.

As a remedy, Plaintiffs ask the Court to order the Governor to (1) "[s]pend state budget surplus funds (or submit bills, call for special sessions, etc.) in order to make all of the necessary deferred maintenance repairs required at all West Virginia correctional facilities in an amount not less than 270 million dollars;" and (2) "[s]pend state budget surplus funds to hire and pay the requisite number of correctional staff needed to appropriately staff the facilities, not less than 60 million dollars." ECF No. 1, at Prayer for Relief ¶¶ e,f.

Plaintiffs do not once mention CARES Act funding, or other federal funds. Plaintiffs contend through their motion to compel that the general "funding for West Virginia correctional facilities is one of the main issues of the case." But Plaintiffs' allegations are simply that there is an unallocated budget surplus that was not, but should have been, spent on correctional facilities. Plaintiffs cannot now expand their Complaint to ask about other funding sources for correctional facilities with no allegation that those funds were not received, not allocated, or not spent as they should have been. Accordingly, Plaintiffs' requests are irrelevant to their claims and disproportionate to the needs of the case.

Finally, communications regarding the Governor's decisions with respect to the budget are protected by the deliberative process privilege. Any discussion among the Governor's office, or between the Governor's office and any agency, regarding how to spend (or recommend the spending of) any federal funding allocated to West Virginia is both predecisional *and* deliberative. Through this extraordinary request, Plaintiffs seek communications regarding the discretionary decisionmaking process of a State's chief executive.

D. **Requests for Production Nos. 21, 29, 44, 45, and 46.**

These requests seek communications regarding document disposal, and certain request forms related to the same. The Governor objected to these requests on the basis that they are cumulative of the requests sent to Secretary Sorsaia, unduly burdensome, and irrelevant to Plaintiffs' claims or defenses, and disproportionate to the needs of the case. Plaintiffs have made no claims that documents have been improperly disposed of in this case, nor has there been any such showing.

Instead, Plaintiffs refer the court to the discovery issues that occurred in *Rose v. Sandy* in which certain email accounts were not maintained properly and there were allegations that the Southern Regional Jail had destroyed grievance forms. Here, neither Sorsaia nor the Governor have claimed that documents cannot be produced because email accounts were deleted—and the impropriety in the *Rose* matter, filed in 2022, cannot be imputed onto this matter, filed in August 2023. The retirements and subsequent deletion of email accounts in *Rose* occurred in 2022 and prior. Nor can the alleged destruction of grievance forms at one facility be imputed onto other facilities—from which grievance forms have already been produced. Moreover, the grievance forms and documents that were allegedly destroyed by SRJ were ultimately located. Without any showing of improper document retention, Plaintiffs cannot demonstrate that this request is either relevant or proportional to the needs of the case.

E. **Request for Production No. 54**

This request seeks employee grievances pertaining to overcrowding, staffing, and maintenance. The Governor objected to this request on the basis that it is unreasonably cumulative of the requests sent to Secretary Sorsaia, and that the requests seek information that is irrelevant to the claims and disproportionate to the needs of the case. As an initial matter, employee grievances at prisons and jails are not documents that are elevated to the Governor's

17

desk. Those documents, and the issues therein, are maintained and addressed by DHS and DCR. On April 25, Secretary Sorsaia supplemented his discovery responses to indicate that "there have been no employee grievances regarding overcrowding, staffing, and maintenance for the requested time frame for SWRJ, MOCC, or [Kuhn]." Ex. F at 10.

## Conclusion

Because the Plaintiffs' request to have the Governor reproduce all documents already produced and yet to be produced by Secretary Sorsaia is unreasonably cumulative, because Secretary Sorsaia is the more logical party from whom to request those documents, and because the Governor has made a good-faith effort to produce to Plaintiff those documents that may not be cumulative (i.e. communications involving Governor@wv.gov and Brian.r.Abraham@wv.gov), Plaintiffs' Motion to Compel should be denied.

**James C. Justice, II, Governor,
By Counsel:**

/s/ Michael B. Hissam
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for James C. Justice, II, Governor, in his official capacity*