IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| **THOMAS SHEPPHEARD**, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 5:23-cv-530 |
| ) | (Judge Berger) |
| **JAMES C. JUSTICE, JR.**, ) | |
| in his official capacity as Governor of the ) | |
| State of West Virginia; and ) | |
| **MARK SORSAIA**, in his official capacity ) | |
| as the Cabinet Secretary of the West ) | |
| Virginia Department of Homeland ) | |
| Security, ) | |
| ) | |
| **Defendants.** ) | |

**THE GOVERNOR'S OPPOSITION TO PLAINTIFFS' MOTION TO DEEM
ADMITTED RESPONSES TO REQUESTS FOR ADMISSION**

At the very outset of discovery in this case, Plaintiffs propounded *131 requests for admission* to Secretary Sorsaia and the Governor. Nearly all of them are improper for a variety of reasons, and so the Governor explained his objections in detail. As explained below, Plaintiffs' voluminous requests all share common, but fundamental, problems, which make them objectionable and (in large measure) practically impossible to answer. The requests seek admissions regarding all 31 West Virginia correctional facilities for a span of seven years. Many seek legal conclusions. But overall, it is clear from the nature and sheer scope of these requests that Plaintiffs are improperly seeking to use these requests as discovery devices—rather than to limit discrete factual issues in advance of trial. Even still, the Governor admitted to those requests to the extent that he could, denied the remainder, and explained in detail the basis for his responses—as required by Rule 36(a)(4).

1

For these reasons and those that follow, Plaintiffs' Motion to Deem Admitted Governor Justice's Responses to Requests for Admission should be denied.

## BACKGROUND

On August 8, 2023, Plaintiffs, Thomas Sheppheard, Tyler Randall, and Adam Perry, as next friend and guardian of J.P., initiated this lawsuit with a class action complaint alleging unconstitutional conditions of confinement at West Virginia's correctional facilities. According to the Complaint, Plaintiff Sheppheard is a current inmate at Mount Olive Correctional Center ("MOCC"), Plaintiff Randall is an inmate at Southwestern Regional Jail ("SWRJ"), and J.P. is an inmate at Donald R. Kuhn Juvenile Center ("Kuhn"). The Governor moved to dismiss, *see* ECF No. 16, and that motion remains pending.

On January 25, 2024, Plaintiffs served *identical* discovery requests on both the Governor and Secretary Sorsaia. The Governor lodged three general objections to Plaintiffs' discovery requests. First, that the Governor is not a proper party to this lawsuit under the doctrine of state sovereign immunity and is therefore may not also be subject to discovery. Second, the Governor explained that the requests are unreasonably cumulative and duplicative. And third, the Governor objected to providing any information for facilities not named in the Complaint or regarding conditions of confinement not alleged in the Complaint. Though maintained here, those general objections are addressed in the Governor's simultaneously filed opposition to Plaintiffs' Motion to Compel.

Turning to Plaintiffs' requests for admission, those requests follow a general format. First, request that the Governor admit to a legal duty to provide a certain item or service ("Duty Requests"). For example, Request number 98 states: "Admit that the WVDOCR has a duty to ensure that all inmates at all West Virginia facilities have wholesome food." **Ex. A.** Second, they

request that the Governor admit that "in 2018, 2019, 2020, 2021, 2022, 2023, and 2024 the WVDOCR did not [provide that item or service] at all West Virginia correctional facilities" ("Violation Requests"). For example, Request number 99 states: "Admit that in 2018, 2019, 2020, 2021, 2022, 2023, and 2024, the WVDOCR did not ensure that all inmates at all West Virginia correctional facilities had wholesome food." *Id.*

On March 21, Plaintiffs sent a meet and confer letter to one counsel of record for the Governor, Michael Hissam. Plaintiffs did not include either of the two other attorneys of record on the letter or email transmitting the letter.[1] In that March 21 Letter, Plaintiffs provide that "as for the requests for admission that have been objected to for requesting an admission or denial of an allegation for multiple years (2018-2024), Defendant can treat each year as a separate Request for Admission and produce accordingly." **Ex. B at 2.** In other words, Plaintiffs have offered to allow the Governor to treat 82 separate requests as 574 individual requests. And if the Governor was to extend that logic to treat every Request for Admission of an allegation regarding all facilities as a separate request for each facility, then the 82 separate requests turn into 17,796 requests for admission.[2]

A subsequent meet and confer call was scheduled for March 26, with Plaintiffs' counsel, all counsel for the Governor, and counsel for the Secretary present. During that call (which Plaintiffs' counsel referred to as a "check the box exercise"), Plaintiffs' counsel declined to discuss

---

[1] Unfortunately, because he was in a weeklong trial starting March 18, counsel missed Plaintiffs' March 21 letter, and so no response was provided. Upon learning of this oversight, the undersigned informed Plaintiffs' counsel of this fact and offered to further meet and confer on these issues. No response was received.

[2] That is, 82 requests, each regarding allegations over a seven year period, for 31 separate correctional facilities.

3

any specific objections made by the Governor, and declined to address any of the Governor's responses to Plaintiffs' requests for admission, despite request to do so.

## ARGUMENT

Federal Rule of Procedure 36(a)(4) governs responses to requests for admission. Under that rule, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Furthermore, any "grounds for objecting to a request must be stated." Fed. R. Civ. P. 36(a)(5).

**I. Because Plaintiffs' Duty Requests seek a legal conclusion, the Governor's partial admission, partial denial, and objections thereto are proper and justified.**

Requests for admission cannot properly seek admission of a legal duty. Under the Federal Rules of Civil Procedure, requests for admission are limited in scope to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36. Indeed, a "request involving a 'pure matter of law' i.e., a request for admissions of law unrelated to the facts of the case, is considered improper." *Reliance Ins. Co. v. Marathon LeTourneau Co.*, 152 F.R.D. 524, 525 n.2 (S.D.W. Va. 1994).

The issue in this case is whether the conditions of confinement at three West Virginia correctional facilities are sufficiently serious to constitute an Eighth Amendment violation—not whether DCR violated a particular legal duty. Indeed, the Supreme Court has instructed that mere negligence does not satisfy the deliberate indifference standard applied to conditions-of-confinement cases. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Additionally, courts have recognized that no condition of confinement results in a per se violation of the Eighth Amendment. *Id.* (comparing *Compare Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)

4

(outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with *Clay v. Miller*, 626 F. 2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day)). Instead, each alleged constitutional violation must satisfy a two-pronged objective and subjective test. *Id.*; *see also King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).

Nonetheless, Plaintiffs seek admissions regarding the scope of the legal duties owed by DCR to Plaintiffs. *See e.g.* Ex. A at ¶ 166 ("Admit that WVDOCR has a duty to provide each inmate . . . with living temperatures appropriate to the summer or winter comfort zones."). In negligence actions, the existence and scope of a legal duty is a matter of law for the court to decide. *See e.g.*, *Adkins v. Appalachian Power Co.*, No. 2:22-cv-399, 2023 WL 5510328, at *2 (S.D.W. Va. Aug. 25, 2023).

Each of Plaintiffs' Duty Requests seeks to have the Governor admit to the scope of the duty owed to inmates by DCR. In response to each of those requests, the Governor provided the following admission:

> "The Governor admits that the Eighth Amendment to the United States Constitution requires all prisoners to be free from cruel and unusual punishment. In all other respects, the request is denied because the request is vague and seeks a purely legal conclusion for which no response is available."

The Governor further objected to the requests on the basis that they were ambiguous and not limited to a singular relevant fact. Further, where necessary, the Governor objected to the use of ambiguous words or phrases. *See, e.g.,* Ex. A at ¶ 166 ("Denied because the request is overbroad, vague and ambiguous, and calls for a legal conclusion . . . The terms "appropriate for summer and winter" and "comfort zones" are vague, ambiguous, and subject to multiple interpretations and not subject to a simple denial or admission without clarification.").

In other words, the Governor's responses to the so-called Duty Requests complies with Rule 36 and his objections to the requests are proper. Because this matter is not admitted, Rule 36(a)(4) governs. Under that rule, if good faith requires a party to qualify its admission, the party must specify the portion it admits and deny the rest, and to state in detail why a party is making any denial. Here, the Governor admitted the requirements of the Eighth Amendment and denied the remainder of the request. As a basis for his denial, he explained that the request calls for a legal conclusion, which is not permitted under Rule 36; and (where appropriate) specified language that was vague and ambiguous such that admission was impossible. Because the Governor's responses complied with Rule 36, and because the stated bases for his denials were proper, the Court should deny Plaintiffs' motion to deem those responses admitted.

II. **Because Plaintiffs' Violation Duties are not limited to a particular, relevant event—making admission impossible without significant clarification—the Governor's denials and objections thereto are proper and should be sustained.**

Courts in the Southern District have repeatedly recognized that "request[s] for admission [are] not a discovery device." *Erie Ins. Property & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D.W. Va. 2010). Their purpose "is to narrow the issues for trial, not uncover new information." *Watkins v. Lincare, Inc.*, No. 3:22-cv-109, 2023 WL 5490181, at *3 (S.D.W. Va. Aug. 24, 2023). That is why the requesting party must propound simple, direct, and straightforward requests that are possible to answer with a simple "admit" or "deny" without explanation. *See Susko v. City of Weirton*, No. Civ. A. 5:09-CV-1, 2010 WL 1881933, at *3 (N.D. W. Va. May 7, 2010); *see also Booth Oil Site Admin. Gro. v. Safety-Kleen Corporation*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000) ("Ambiguous and vague requests which cannot be fairly answered will not be enforced.").

Interrogatories—unlike requests for admission—are the proper device through which a party may "ascertain[] facts and procure[] evidence or secure[] information as to where pertinent evidence exists." *Erie*, 272 F.R.D. at 183 (citing *Wright & Miller*). Interrogatories, however, are limited in number. Requests for admission cannot be used to circumvent that limit. *See Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 206 (6th Cir. 1986) (finding 2,082 requests for admission an abuse of the discovery process and "an improper attempt to circumvent the local district court rule which limited the number of interrogatories to thirty.").

Each of Plaintiffs' Violation Requests seek—within each single request—admissions regarding various alleged violations at each correctional facility over the course of seven years. In response to each of those requests, the Governor responded: "Denied because the request is overbroad, vague and ambiguous, and seeks a legal conclusion." The Governor further responded that "[r]equests regarding the conditions of confinement of all inmates at all facilities for seven years are not limited to a single, relevant fact or subject to simple admission or denial without clarification." Finally, where appropriate, the Governor objected to the use of vague and ambiguous words and phrases.

Each of Plaintiffs' Violation Requests is an inappropriate attempt to use a request for admission as an interrogatory. That is clear because the requests for admission do not focus on discrete violations alleged by Plaintiffs (i.e., the facts at issue), but rather ask the Governor to admit to a wide range of alleged violations spanning seven years and 31 facilities. As a result, they are objectionable and were properly denied.

Even taking Plaintiffs' offer to allow the Governor to treat any request spanning multiple years (2018-2024) as separate requests for each year, the requests are still not properly limited to a single, relevant fact. Each request would require significant clarification to answer. For

example, (and setting aside the vagueness and ambiguity of the request), admitting that "in 2018 WVDOCR did not provide all inmates with wholesome food" would require–at minimum—a clarification as to the number of inmates who did not get "wholesome food," the location of each inmate not provided with "wholesome food," the date range that they were not provided with "wholesome food," and the food they were provided.

What is more, many of the purported duties and alleged violations contained within both the Duty and Violation Requests are vague and ambiguous. Indeed, many of Plaintiffs' requests are embellished with undefinable and capacious modifiers—rendering the requests practically impossible to admit or deny. For example:

- Requests No. 80/81 - "humane conditions of confinement"
- Requests No. 82/83 – "adequate food"
- Requests No. 83/84 – "clean water"
- Requests No. 86/87 – "sanitary environment"
- Requests No. 88/89 – "adequate medical care"
- Requests No. 94/95 – "clean, healthful, and sanitary" conditions
- Requests No. 96/97 – "applicable health laws and rules"
- Requests No. 98/99 – "wholesome food"
- Requests No. 100/101 – "sufficient amounts of food"
- Requests No. 102/103 – "adequate nutrition"
- Requests No. 106/107 – "sufficient amounts of drinking water"
- Requests No. 112/113 – "clean bedding"
- Requests No. 114/115 – "sufficient bedding"
- Requests No. 116/117 – "clean clothing"
- Requests No. 118/119 – "sufficient clothing"
- Requests No. 120/121 – "adequate amounts of clothing"
- Requests No. 152/153 – "working water basin"
- Requests No. 154/155 – "hot and cold water"
- Requests No. 156/157 – "all applicable codes"
- Requests No. 158/159 – "operable and sanitary condition"
- Requests No. 160/161 – "hot and cold running water"
- Requests No. 162/163 – "clean, dry, and free of hazardous substances"
- Requests No. 164/165 – "water temperatures" that are "thematically controlled"
- Requests No. 166/167 – "summer or winter comfort zones"
- Requests No. 169;171 – "no hot or no cold water"
- Requests No. 183 – "inadequate food"
- Requests No. 184 – "cut, reduced, or 'thinned' food"

- Requests No. 185 – "spoiled, rotten, or undercooked"
- Requests No. 186 – "dirty or unsanitary food trays"
- Requests No. 189 – "appropriate medical care"
- Requests No. 197/198 – "adequate exercise time"
- Requests No. 201/202 – "acceptable levels of cleanliness and sanitation"

Despite the Governor's objections to those terms, Plaintiffs have made no attempt to define these ambiguous words or clarify their requests. Plaintiffs' offer to allow the Governor to respond to each Violation Request as if it was a separate request for each year does not solve the issue. For example, to address request No. 183 regarding "inadequate food," (and ignoring the fact that the request is not limited to a single, relevant fact), the Governor would have to first define what "inadequate food" means—a definition with which Plaintiffs would surely disagree.

The four requests that Plaintiffs chose to address in their Motion to Deem Responses Admitted illustrate the point. Plaintiffs' chosen exemplars seek admissions that "from January 1, 2018 to the present, West Virginia correctional facilities have never" (1) "been tested for black or other toxic mold," (2) "had professional mold remediation performed," (3) "been tested for bacteria or other contaminates in the air," (4) "had water tested for bacteria or other contaminates." ECF No. 57 at 3-4. As an initial matter, the terms "professional mold remediation," "other toxic mold," "bacteria," and "other contaminates" are all vague and ambiguous terms that do not lend themselves to a simple yes or no answer. Moreover, the 7-year time frame and the applicability to each facility renders any answer impossible without clarification as to what type of testing, when the testing was conducted, whether remedial measures were taken, and if so, what was done. Such a question is better suited to discovery—not to requests for admission which, again, are meant simply to narrow factual issues for trial.[3]

---

[3] Plaintiffs have only made arguments with respect to Requests for Admission Numbers 203, 204, 205, and 206. Furthermore, Plaintiffs have not provided any specific issue with the Governor's response to the remaining requests for admission. Thus, any arguments regarding Requests for

## **CONCLUSION**

The Governor's objections to Plaintiffs' requests for admission are well-founded and thus should be sustained. Accordingly, Plaintiffs' motion to deem them admitted must be denied.

**James C. Justice, II, Governor,**

**By Counsel:**

/s/ Michael B. Hissam
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for James C. Justice, II, Governor, in his official capacity*

---

Admission Numbers 80-202 and 207-211 are waived. *See McBurney v. Young*, 667 F.3d 454, 470 (4th Cir. 2012), aff'd, 569 U.S. 221, 133 S. Ct. 1709, 185 L. Ed. 2d 758 (2013); *see also Atrium Corporate Capital Ltd. v. Williams*, No. 9:22-cv-3427, at *2 n. 3 (D.S.C. Nov. 30, 2023) (applying *McBurney* to arguments made for the first time in party's reply brief).