# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

**THOMAS SHEPPHEARD,**
**TYLER RANDALL, and**
**ADAM PERRY, next friend and guardian of**
**Minor child J.P., on their own behalf**
**and on behalf of all others**
**similarly situated,**

       **Plaintiffs,**

**v.**
                                  **Civil Action No. 5:23-cv-00530**
                                  **Judge Irene C. Berger**

**JAMES C. JUSTICE JR., his official capacity**
**as Governor of the State of West Virginia, and**
**MARK SORSAIA, in his official capacity**
**as the Cabinet Secretary of the West Virginia**
**Department of Homeland Security,**

       **Defendants.**

### DEFENDANT MARK SORSAIA'S RESPONSE TO
### PLAINTIFFS' MOTION TO COMPEL DEFENDANT SORSAIA
### TO RESPOND FULLY AND ADEQUATELY TO DISCOVERY

**NOW COMES** Defendant Mark Sorsaia, in his official capacity as the Cabinet Secretary of the West Virginia Department of Homeland Security, by counsel, Natalie C. Schaefer, Caleb B. David, Kimberly M. Bandy, Shannon M. Rogers, and Shuman McCuskey Slicer PLLC, and submits this Response to "Plaintiffs' Motion to Compel Defendant Sorsaia to Respond Fully and Adequately to Discovery." (ECF No. 54).

## INTRODUCTION

Plaintiffs' Complaint seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Eighth and Fourteenth Amendments. (ECF No. 9 ¶1). Specifically, Plaintiffs allege that overcrowding, understaffing, and deferred maintenance at the three facilities where they are housed constitute deliberate indifference to Plaintiffs' health and safety. (ECF No.

1

9 ¶2). According to the Complaint, Plaintiff Sheppheard is incarcerated at Mt. Olive Correctional Complex ("MOCC"); Plaintiff Randall is incarcerated at Southwestern Regional Jail ("SWRJ"); and Plaintiff J.P. is incarcerated at Donald R. Kuhn Juvenile Center (DRK"). (ECF No. 9 ¶¶7-9). They allege that the action is brought on behalf of themselves and all others similarly situated. (ECF No. 9 ¶4). Plaintiffs seek extraordinarily broad-sweeping relief, asking this Court to direct the appropriation of 330 million dollars from West Virginia's budget surplus to the West Virginia Division of Corrections and Rehabilitation's correctional facilities "in order to make all of the necessary deferred maintenance repairs" and to hire and pay correctional staff. (ECF No. 9, Prayer for Relief at (e) and (f)). Plaintiffs further seek to "compel [Defendants] to implement and enforce policies, procedures, and practices" and to "compel them to make all necessary structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions." (ECF No. 9, Prayer for Relief at (c) and (d)).

In their Motion to Compel, Plaintiffs attempt to shift the focus of the case to other areas of inquiry that put an extraordinary burden on the Defendant and his agency. Ultimately, what the Complaint seeks is an extraordinary appropriation of state funds, which necessarily requires state legislative action yet exclusively within the province of the state sovereign.

The identified conditions of confinement at issue that are specific to MOCC, SWRJ, and DRK are extremely narrow and limited. These conditions are as follows: Thomas Sheppheard, an inmate at MOCC as of May 1, 2023 alleges "inadequate" portions of food, (ECF. No. 9 ¶113); access to showers with only hot water resulting in blisters on his back, (ECF. No. 9 ¶114); no "regular" access to new toothbrushes and toothpaste, (ECF. No. 9 ¶115); no access to a law library, (ECF. No. 9 ¶116); and no access to recreational time, (ECF No. 9 ¶115). J.P., a minor and resident at DRK alleges that he was served undercooked food and did not always have access to hot water,

(ECF. No. 9 ¶¶159-160). Finally, Tyler Randall, an inmate at SWRJ, alleges he was housed in "overcrowded" cells, (ECF. No. 9 ¶136); observed inmates sleeping on the floor while at SWRJ, (ECF. No. 9 ¶137); was exposed to mold while at SWRJ, (ECF. No. 9 ¶138); was exposed to rodent feces while in his pod at SWRJ, (ECF. No. 9 ¶139); and was given "inadequate" portions of food at SWRJ, (ECF. No. 9 ¶140).

Defendant Sorsaia filed a Motion to Dismiss based on Eleventh Amendment sovereign immunity; lack of standing; mootness; failure to exhaust administrative remedies; improper venue; failure to state a claim for constitutional violations; lack of jurisdiction over state appropriations/separate of powers; non-justiciable political question; and Tenth Amendment protections (which is pending). (ECF No. 12). Defendant also filed a Motion to Stay Discovery (which was denied). (ECF No. 20). On January 25, 2024, Plaintiffs served their First Interrogatories, Requests for Production, and Requests for Admission to Defendant Mark Sorsaia. (ECF No. 34). In anticipation of several discovery issues, defense counsel attempted to preempt discovery conflicts and conferred with Plaintiffs' counsel on February 20, 2024, regarding several discovery issues, including: (1) the production of certain records that must be designated as "restricted not for inmate viewing" and (2) the parameters of ESI protocol for Defendant Sorsaia to implement in responding to Request for Production Nos. 13-33. (Correspondence from Natalie C. Schaefer to Stephen P. New, February 20, 2024, **Exhibit A**). That same day, Plaintiffs' counsel responded, and refused to offer any counterproposal for guidance to be used in responding to ESI discovery. (February 20, 2024 email from Stephen P. New to Natalie C. Schaefer, **Exhibit B**).

On February 27, 2024, the parties stipulated that the Defendants had until March 15, 2024 to respond to the written discovery. (ECF No. 37). On March 15, 2024, Defendant Sorsaia served his responses to Plaintiffs' interrogatories, requests for production, and requests for admission.

(ECF No. 41, 42, 43). Over 15,000 pages of documents were produced. Based on Plaintiffs' counsel's refusal to coordinate on ESI protocol as requested in defense counsel's February 20, 2024, correspondence, and in order to prevent delay in responding to discovery, defense counsel applied its proposed ESI protocol and added several custodians to the protocol in an effort to promote discovery efforts.

On March 26, 2024, the parties, by counsel, met and conferred by telephone to discuss discovery. During this discussion, defense counsel stated that the proposed ESI protocol set forth in the February 20, 2024 correspondence had been applied and the results were being reviewed. The application of this ESI protocol resulted in approximately 170,000 emails and documents, which are being reviewed by multiple attorneys for responsiveness and privilege. It was not until the meet and confer conference (i.e., *after* Defendant Sorsaia responded to discovery) that Plaintiffs' counsel sent defense counsel a copy of ESI protocol that was attached to Defendant *Justice*'s Notice of Deposition and relayed that it should also be applied to their discovery requests to Defendant *Sorsaia* (**Exhibit C**, March 26, 2024 email from Emilee Wooldridge to all counsel). This ESI protocol was provided *after* Defendant Sorsaia made efforts to confer with Plaintiffs' counsel prior to responding to discovery, *after* Defendant Sorsaia responded to Plaintiffs' discovery requests, and *after* defense counsel applied the proposed, broad-sweeping ESI protocol and began reviewing the voluminous results.

On April 25, 2024, Defendant Sorsaia supplemented discovery, producing an additional 2,000 pages of documents. (ECF No. 69). Defendant Sorsaia continues to work diligently to review the results of its ESI protocol which resulted in over 170,000 documents.[1]

---

[1] There are currently six (6) attorneys reviewing this information in a good faith diligent effort to produce this information is a reasonable time frame.

In their Motion to Compel, Plaintiffs remain critical of this Defendant's responses only in broad strokes. Indeed, Plaintiffs only address Interrogatories No. 11 and 12, Interrogatory No. 8, Request For Production No. 14, Request for Production No. 31, Request for Production No. 21 and Request for Production No. 29, Request for Production No. 25, Request for Production No. 39, and Request for Production No. 54. Plaintiffs have, therefore, waived any argument regarding Secretary Sorsaia's responses to Interrogatory Numbers 1-10, and Request Nos. 1-7, 9, 10, 13, 15-20, 22-24, 26-28, 30-38, and 40-51.

## STANDARD OF REVIEW

Rule 26(b) of the Federal Rules of Civil Procedure provides the scope and limitations of permissible discovery:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense ***and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, ***the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit***. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> *(2) Limitations on Frequency and Extent.*
> . . .
>
> (C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> . . .
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b) (emphasis added).

"As quite simply stated '[S]ome threshold of showing of relevance must be made before parties are required to open wide the doors of discovery...' *Hofer v. Mack Trucks, Inc*., 981 F. 2d 377, 380 (8th Cir. 1992) which was before discovery became more restricted in 2000 with the

revision of FRCP 26 (b)(1)." *Sentry Select Ins. Co. v. Seatruck, Inc.*, 2010 U.S. Dist. LEXIS 151244, *4.

On such a motion, if the moving party has made a "prima facie showing of discoverability," the resisting nonmovant has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Id.*, *citing Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). Additionally, "[d]istrict courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Id.* at **8-9 (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Ceresini*, 2022 U.S. Dist. LEXIS 37958, *9 (quoting Fed. R. Civ. P. 26(b)(1)). A discovery request is relevant if it "bears on, [or] reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)). However, discovery "like all matters of procedure, has ultimate and necessary boundaries." *Id.* (citing *Gilmore v. Jones*, 2021 U.S. Dist. LEXIS 4382, 2021 WL 68684, *3 (W.D. Va. Jan. 8, 2021)). "Courts must limit the frequency or extent of proposed discovery if it is 'outside the scope permitted by Rule 26(b)(1).'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)) (emphasis added).

"Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 U.S. Dist. LEXIS at *9 (citing *Va.*

*Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019)). These factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. at **9-10 (quoting Fed. R. Civ. P. 26(b)(1)).

To date, significant agency resources have been devoted to the task of responding to numerous requests for production of documents. This Defendant (specifically, dozens of WVDCR employees) should not be compelled to expend additional resources responding to irrelevant, disproportional requests that exceed the scope of permissible discovery, have little or no relevance to the issues, and are overly broad in scope. The factors to be considered regarding proportionality include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ceresini*, 2022 U.S. Dist. LEXIS at **9-10 (quoting Fed. R. Civ. P. 26(b)(1)).

These factors do not give Plaintiffs free rein to issue burdensome discovery requests that are not proportional to the issues in the case. The burden and expense of the proposed discovery outweighs any benefit. Additionally, these discovery requests are not important to resolving the issues in the case because they seek information and documents unrelated to alleged conditions of confinement identified in the Complaint.

## **LEGAL ANALYSIS**

### A. **Interrogatory Nos. 11 and 12 Have Been Supplemented For All Facilities.**

These Interrogatories asked Defendant Sorsaia to provide the dollar amount of deferred maintenance for West Virginia's correctional facilities and the status of staffing vacancies in West

Virginia's correctional facilities. Although Defendant's objections are sound, defense counsel confirmed with agency employees that responsive information for all facilities is fairly ascertainable and available and therefore these responses have been supplemented (ECF No. 69).

**B. Interrogatory No. 8 and Requests for Production Nos. 14 and 31 Seek Information that is Not Discoverable.**

Interrogatory No. 8 and Requests for Production Nos. 14 and 31 seek information related to inmate deaths at all correctional facilities state-wide. Perhaps recognizing the requests seek information that is irrelevant and disproportional to the case, Plaintiffs assert in their Motion to Compel that "[i]ntuitively, death can be and has been a result of many of these issues." (ECF No. 54 at p. 7). For a myriad of reasons, the Plaintiffs' Motion to Compel this information should be denied. The discovery requests and objections to Interrogatory No. 8 and Request for Production Nos. 14 and 31 are as follows:

**8. State the total number of inmate deaths at all West Virginia correctional facilities in 2018, 2019, 2020, 2021, 2022, 2023, and 2024.**

**<u>Answer</u>: Objection, the scope of the request referring or relating to all West Virginia correctional facilities is irrelevant, overly broad, and not reasonably proportional to the allegations contained in the Complaint which specify certain alleged conditions of confinement complained of by the named Plaintiffs at three specific facilities. See *Doe v. Cabell Cty. Bd. of Educ*., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). There is no allegation of an inmate death in the instant matter. Notwithstanding and without waiving this objection, and in an effort to respond to the portion of the request that might not be objectionable, see below:**

|       | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|-------|------|------|------|------|------|------|------|
| SWRJ  | 0    | 0    | 2    | 2    | 4    | 2    | 0 (through Feb 29) |
| MOCC  | 23   | 10   | 27   | 17   | 16   | 11   | 2 (through Feb 29) |
| DRK   | 0    | 0    | 0    | 0    | 0    | 0    | 0 (through Feb 29) |

**14. All internal communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS/WVDOCR referring or relating to inmate deaths at each correctional facility.**

**Response: Objection, the scope of the request referring or relating to all West Virginia correctional facilities is overly broad and not reasonably proportional to the allegations contained in the Complaint which specify certain alleged conditions of confinement complained of by the named Plaintiffs at three specific facilities. See *Doe v. Cabell Cty. Bd. of Educ*., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). This request seeks information that is not discoverable and is not relevant to any party's claim or defense and proportional to the needs of the case and therefore, is beyond Rule 26 of the Federal Rules of Civil Procedure. There is no allegation of or related to an inmate death in the instant matter. For the same reason, this request seeks information that is disproportionate to the issues in this case. Specifically, this case alleges certain conditions of confinement at MOCC, SWRJ, and DRK, namely, food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation related in any way to inmate deaths in WVDCR facilities.**

**31. All external communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS and any employee, agent, or representative of the West Virginia Legislature referring or relating to inmate deaths at West Virginia's correctional facilities.**

**Response: Objection, the scope of the request referring or relating to all West Virginia correctional facilities is overly broad and not reasonably proportional to the allegations contained in the Complaint which specify certain alleged conditions of confinement complained of by the named Plaintiffs at three specific facilities. See *Doe v. Cabell Cty. Bd. of Educ.*, No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). This request seeks information that is not relevant to any party's claim or defense nor is it proportional to the needs of the case and therefore, is beyond Rule 26 of the Federal Rules of Civil Procedure. There is no allegation of an inmate death in the instant matter. For the same reason, this request seeks information that is disproportionate to the issues in this case. Specifically, this case alleges certain conditions of confinement at MOCC, SWRJ, and DRK, namely, food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation related in any way to inmate deaths in WVDCR facilities.**

Under the 2015 amendments to Rule 26(b)(1), "[t]he question is no longer whether the discovery sought is 'reasonably calculated to lead to the discovery of admissible evidence;' rather, the inquiry is whether the discovery is 'relevant to any party's claim or defense and proportional to the needs of the case.'" *Doe v. Cabell Cty. Bd. of Educ.*, 2022 U.S. Dist. LEXIS 16887, 2022 WL 288193 (citing *BrickStreet Mut. Ins. Co. v. Chartis Cas. Co.*, No. 5:19-CV-00212, 2020 U.S. Dist. LEXIS 71879, 2020 WL 1965580, at *3 (S.D.W. Va. Apr. 23, 2020)). Though in the context of social media discovery, this Court has held that ". . .discovery requests . . . 'must be relevant to a claim or defense, proportional to the needs of the case, and not unreasonably cumulative, duplicative, or designed to embarrass or harass.'" Courts do not typically 'endorse an extremely broad request for all . . . content' because 'ordering a party to permit access to or produce complete copies of his [or her] [data] [...] would permit his [or her] opponent ***to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable***.'" *Doe* at *9-10, (internal citations omitted) (emphasis added).

Like the breadth of the requests at issue in *Doe*, the instant requests cast too wide a net, particularly because the Plaintiffs already have significant records, documents, and deposition testimony regarding inmate deaths, as referenced in the Complaint.

In *Ceresini v. Gonzales*, the District Court found that, although the information sought to be obtained from a particular discovery request had some relevance, the request was still not proportional. *Id.*, 2022 U.S. Dist. LEXIS 37958 at *13 (N.D.W.V. March 3, 2022). In *Ceresini*, a discovery request by plaintiff sought a list of claimants with last known addresses or the first document in the claims file for each claimant. *Id.* The court found that, while information derived from claims may bear some relevance to the case at hand, the information sought was not proportional to the burden of time and expense imposed on the defendant in responding to the

request. *Id*. This Court should reach the same conclusion here with respect to Plaintiffs' requests related to inmate deaths. Discovery regarding inmate deaths across all facilities is not relevant to the allegations of this matter because there is ***no*** allegation of death caused by the complained-of conditions.

Moreover, the scope of the requests referring or relating to all West Virginia correctional facilities is irrelevant, overly broad, and not reasonably proportional to the allegations contained in the Complaint which specify certain conditions of confinement complained of by the named Plaintiffs at three specific facilities. Specifically, while asserting a purported class action on behalf of all inmates at all facilities statewide, the only ***facts*** alleged in the Complaint involve food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. (ECF No. 9 at ¶113-117; ¶136-140; ¶159-160). Contrary to Plaintiffs' Motion to Compel, there is absolutely ***no*** allegation in the instant case regarding lack of access to medical care leading to death. Indeed, the Complaint simply refers back only to the specific conditions described above.[2]

Defendant Sorsaia objects on the grounds that the requests seek information not relevant to any party's claim or defense nor is it proportional to the needs of the case and therefore, is beyond Rule 26 of the Federal Rules of Civil Procedure. It is overbroad and unduly burdensome because the scope of the inquiries is not limited in any reasonable manner. For example, the only factual allegations in the Complaint relate to MOCC, SWRJ, and DRK. Despite the legitimate bases for objecting, the Defendant nevertheless responded to Interrogatory No. 8 for these three

---

[2] Plaintiffs' Complaint alleges that "Defendants were deliberately indifferent to the health, safety, and other basic needs of Plaintiffs (and all similarly situated inmates), ***as described hereinabove***, by having actual knowledge of ***such conditions*** and deliberately taking no action to remedy them in a timely or appropriate manner." (ECF No. 9 at ¶165).

facilities. The requested information is not in any way relevant to conditions of confinement. For example, deaths from natural conditions would arguably be responsive to Plaintiffs' requests despite the limited nature of the facts alleged by Plaintiffs. To illustrate this point, a hypothetical inmate death due to natural causes at Salem Correctional Center and Jail, while not in any way related to Plaintiffs' Complaint, is information sought by Plaintiffs in these requests.

Additionally, the requests, while limited to January 1, 2021 to the present, do not limit the *scope* of the requests, i.e., the dates of death, cause of deaths, etc. Therefore, these requests are overly broad and not proportional to the issues raised in the case, which concern conditions of confinement allegedly occurring in April 2022 to the present at SWRJ, May 1, 2023 at MOCC, and May 31, 2023 to the present at DRK. Those alleged conditions of confinement identified in the Complaint are wholly unrelated to these requests regarding inmate deaths statewide. The burden on the Defendant (and more specifically, the manpower and resources of state employees) to produce the requested documentation far exceeds any potential relevance.

Additionally, there are concerns about adequate protections of non-relevant discovery sought by Plaintiffs due to a suspected previous violation of this Court's Protective Order in another matter which is being relied upon by Plaintiffs, making the scope of discovery all that more important. This Court in *Rose, et al. v. Jividen, et al.*; 5:22-cv-405, cited by Plaintiffs in their Motion, entered a Protective Order on April 19, 2023 (ECF No. 189) ordering that "[n]o party or attorney or other person subject to this Protective Order shall ***distribute, transmit, or otherwise divulge any document or other material which is marked "CONFIDENTIAL," or the contents thereof***, except in accordance with this Protective Order. . . ." (*Rose*, ECF No. 189) (emphasis added). Despite this clear mandate in the *Rose* Protective Order, a confidential report produced in the *Rose* case was referenced and *quoted* in the Complaint filed in a separate case, in direct

12

violation of this Court's Protective Order. (*Wriston v. Sandy, et al.,* 5:24-cv-00097, ECF No. 1, ¶140). This disclosure was an astonishing violation of this Court's Protective Order and was also violative of W. Va. Code § 15A-4-8a because such information is prohibited from disclosure absent a court order. Thus, in light of the disproportionality of the requested information to the conditions of confinement alleged in *this* case, coupled with another risk of disclosure of confidential and protected information (indeed, the same information requested herein), Plaintiffs' Motion to Compel should be denied.

**C. Requests for Production Nos. 21 and 29 Seek Information That is Not Discoverable.**

Requests for Production Nos. 21 and 29 seek information related to communications regarding "shredding, burning, deleting, or destroying of documents, records, videos, photographs, or other evidence at any correctional facility:"

> **21. All internal communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS/WVDOCR referring or relating to the shredding, burning, deleting, or destroying of documents, records, videos, photographs, or other evidence at any correctional facility.**
>
> **Response: Objection, the scope of the request referring or relating to all West Virginia correctional facilities is overly broad and not reasonably proportional to the allegations contained in the Complaint which specify certain alleged conditions of confinement complained of by the named Plaintiffs at three specific facilities. See Doe v. Cabell Cty. Bd. of Educ., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). This request seeks information that is not relevant to any party's claim or defense nor is it proportional to the needs of the case and therefore, is beyond Rule 26 of the Federal Rules of Civil Procedure. There is no allegation that evidence has been shredded, burned, deleted, or destroyed in this case. For the same reason, this request seeks information that is disproportionate to the issues in this case. Specifically, this case alleges certain conditions of confinement at MOCC, SWRJ, and DRK, namely, food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation related in any way to destruction of evidence by WVDCR facilities.**

**29. All external communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the WVDOHS and any employee, agent, or representative of the State or any State Agency (including, but not limited to, the WVDOCR) referring or relating to the shredding, burning, deleting, or destroying of documents, records, videos, photographs, or other evidence at West Virginia correctional facilities.**

**Response: Objection. This request seeks information that is not relevant to any party's claim or defense nor is it proportional to the needs of the case and therefore, is beyond Rule 26 of the Federal Rules of Civil Procedure. See Doe v. Cabell Cty. Bd. of Educ., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). There is no allegation that evidence has been shredded, burned, deleted, or destroyed in this case. For the same reason, this request seeks information that is disproportionate to the issues in this case. Specifically, this case alleges certain conditions of confinement at MOCC, SWRJ, and DRK, namely, food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation related in any way to destruction of evidence by WVDCR facilities.**

In their Motion to Compel, Plaintiffs lay out an entire record from the *Rose* matter related to the destruction of certain emails and cell phones. It is clear from the Motion to Compel that Plaintiffs already have all evidence they seek related to any failure to preserve information. Indeed, the allegation regarding destruction of records predates the filing of this case. It is improper to attempt to impute conduct of former employees to the current Secretary. Regardless, and perhaps most importantly, unlike the *Rose* case, ***there was no preservation request in this case***.

Plaintiffs' Motion attempts to seize upon this Court's Order and Proposed Findings and Recommendation in the *Rose* case: ". . . defendants destroyed evidence subsequent to the initial filing of the Complaint in this action. Those defendants destroyed evidence willfully with the intent to defeat the Plaintiff's ability to prevail in the pending civil action." (ECF No. 54 p. 8). The fact that all of this alleged misconduct occurred ***after*** the filing of the *Rose* Complaint and involves the *Rose* litigation underscores the fact that this is a fishing expedition. Any "communications" necessarily would include any and all attorney client communications related to the *Rose* case.

14

Any responsive information would necessarily be protected by the work product doctrine and/or the attorney client privilege.

The Plaintiffs' Complaint in this case is crafted around the injunctive request for the appropriation of hundreds of millions of dollars to address alleged overcrowding, understaffing, and deferred maintenance state-wide. At the same time, while making mere conclusory allegations that constitutional violations are widespread, Plaintiffs plead facts relating only to isolated incidents with respect to *three* individuals at *three* facilities. There is no nexus between shredded, burned, deleted, or destroyed information and the allegations in this case. To the contrary, it appears that Plaintiffs (or at least, Plaintiffs' counsel) have access to all nonprivileged evidence regarding any destruction of evidence. Entire litigation ensued in the *Rose* case specifically addressing this very issue. Requiring this Defendant to engage in identical discovery is disproportional, punitive, and soundly irrelevant to any claim or defense of the case.

### D.  Request No. 25 Seeks Information That Is Not Discoverable.

Request No. 25 seeks records related to "CARES Act funding (or other federal funding) requested by, requested for, or allocated to the WVDCR:"

> **25. All documents and external communications (including but not limited to, letters, memos, notes, e-mail, text messages, faxes, etc.) from January 1, 2021 to the present between or among you or any employee, agent, or representative of the State or any State Agency (including, but not limited to, the WVDOCR and WVDOHS) and/or the Federal Government, referring or relating to CARES Act funding (or other federal funding) requested by, requested for, or allocated to the WVDOCR.**
>
> **Response: Objection, the scope of the request referring or relating to all West Virginia correctional facilities is overly broad and not reasonably proportional to the allegations contained in the Complaint which specify certain alleged conditions of confinement complained of by the named Plaintiffs at three specific facilities. See Doe v. Cabell Cty. Bd. of Educ., No. 3:21-cv-00031, 2022 U.S. Dist. LEXIS 16887, at \*9 (S.D. W. Va. Jan. 31, 2022). This request seeks information that is not relevant to any party's claim or defense nor is it proportional to the needs of the case and therefore, is beyond Rule 26 of the**

**Federal Rules of Civil Procedure. This request seeks information that is disproportionate to the issues in this case. Specifically, this case alleges certain conditions of confinement at MOCC, SWRJ, and DRK, namely, food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation related in any way to CARES Act funding.**

This Defendant (by his predecessor) and other high-ranking officials already produced evidence in the *Rose* case that is expressly relied upon in the Complaint. Specifically, Plaintiffs allege that:

> [o]ccasionally, specific allocations for specific projects occasionally are made. The jails are funded through several funding streams. The largest funding stream is the operational fund that comes in from the per diem from the counties. Other funding streams include revenue from things like commissary, inmate telephones and other such sources. Additional funding for maintenance of the jails in the approximate amount of Seventeen Million Dollars became available in 2022 from bond reserve fund that became available since the bonds were paid off.

(ECF No. 9 at ¶68-70).

Discovery related to any federal funding and what/how federal fundings are allocated is grossly overbroad. Candidly, how or why certain funding was allocated is irrelevant to the question of whether there are any constitutional violations. State spending is a wholly state sovereign appropriations issue and has no bearing on whether any of Plaintiffs' constitutional rights were violated. Permitting discovery in federal court into all federal funding sources and how such funding is allocated is a clear violation of the sovereignty of the State of West Virginia. Plaintiffs' requested discovery not only exceeds the scope of the federal judicial power as set forth more fully in this Defendant's Motion to Dismiss (ECF No. 12), but it does so by directly encroaching on one of the primary interests served by state sovereign immunity—protection of the public fisc. As this Court previously commented:

> Although the Constitution establishes a National Government with broad, often plenary authority over matters within its recognized competence, the founding document '***specifically recognizes the States as sovereign entities***.'" *Alden v.*

*Maine*, 527 U.S. 706, 715, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999)(quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71 n.15, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996)). Upon ratification of the Constitution, the States thus enjoyed "'a residuary and inviolable sovereignty.'" *Alden*, 527 U.S. at 715 (quoting The Federalist No. 39, at 245 (James Madison)).

This understanding of the states' role in the early years of the Republic perhaps explains the Nation's "profound shock" following the Supreme Court's 1793 decision in *Chisholm v. Georgia*, 2 U.S. 419, 2 Dall. 419, 1 L. Ed. 440 (1793). *Chisholm* held that Article III of the Constitution authorized a private citizen of another State to sue the State of Georgia without its consent. Congress and the States responded swiftly with the Eleventh Amendment.

The [11th] Amendment provides in pertinent part that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." *Id*. Despite its text, the Amendment has been construed also to prevent citizens from bringing federal claims in a federal court against their own states. *See Hans v. Louisiana*, 134 U.S. 1, 14-15, 33 L. Ed. 842, 10 S. Ct. 504 (1890).

The Amendment ***is much more than a constitutional prohibition to prevent a drawdown of a state fisc via federal litigation***. Our Court of Appeals recently observed that "Inherent in [our] federal structure is the mutual, reciprocating respect for the state and federal sovereigns, and forcing one sovereign to appear against its will in the courts of another violates this respect." *Litman v. George Mason University*, 186 F.3d 544, 549 (4th Cir. 1999)(emphasis added)(noting the Amendments serves not only the purpose of avoiding raids on the state treasury, but also "'the indignity of subjecting a State to the coercive process of [federal] judicial tribunals at the instance of private parties.'")(quoted authority omitted).

*Strawser v. Lawton*, No. 2:00-0073, 2001 U.S. Dist. LEXIS 11274, *8-10 (S.D. W. Va. Jan. 3, 2001) (emphasis added).

Discovery related to state funding, budgeting, or appropriations is not proportional to the allegations in Plaintiffs' Complaint, which only allege inadequate conditions of confinement related to food quality/quantity, water temperature, mold, recreation time, law library access, periodic overcrowded cells, rodent feces, and access to hygiene products. There is no allegation in the Complaint regarding CARES Act funding or any other federal funding. The only issue in the Complaint related to funding is the request that the West Virginia Legislature appropriate millions

of dollars to corrections. Moreover, communications regarding executive decisions with respect to the budget are protected by the deliberative process privilege. Any discussion between the executive and its agency heads regarding how to spend any federal funding allocated to West Virginia is both pre-decisional and deliberative. Plaintiffs seek communications regarding the discretionary decision-making process of a State's executive branch. State sovereignty, coupled with the overbroad and irrelevant nature of the request for any documents related to all sources of federal funding warrant the Court to deny Plaintiffs' Motion to Compel.

### E. Request No. 39 Has Been Answered and Thus Should Not Be Subject to Motion to Compel.

Request No. 39 seeks all communications that support a denial of any request for admission. Contrary to Plaintiffs' Motion, a privilege log has been produced. Furthermore, electronic communications resulting from the protocol proposed by defense counsel are still being reviewed. As explained in Defendant Sorsaia's discovery responses, more than 170,000 electronic documents are being reviewed by multiple attorneys for responsiveness and privilege. Upon completion,  responsive and non-privileged information will be supplemented.

### F. Request No. 54 Has Been Supplemented.

Request No. 54 has been supplemented with a comprehensive response for all facilities. There are no responsive grievances.

### G. All Remaining Objections Are Waived.

The Local Rules of Civil Procedures state:

(c) Motions to Compel. *A motion to compel* disclosure or discovery *must be accompanied by a statement setting forth verbatim each discovery request* or disclosure requirement *and any response thereto to which an exception is taken*. In addition, the movant may include a statement of the grounds and pertinent authorities relied upon and shall file such a statement if requested by the court. If the discovery request or disclosure requirement is ignored, the movant need only file a motion to compel without setting forth verbatim the discovery request or

disclosure requirement. ***Motions to compel or other motions in aid of discovery not filed within 30 days after the discovery response or disclosure requirement was due are waived,*** and in no event provide an excuse, good cause or reason to delay trial or modify the scheduling order. The 30-day deadline may be extended by court order for good cause shown, or by stipulation of the parties, so long as the extension does not interfere with the scheduling order. Any such stipulation must be filed pursuant to LR Civ P 11.2.

S.D. W.V. LR Civ P 37.1. Because Plaintiffs have not filed a Motion to Compel regarding any further specific discovery requests, such objections are waived.

**WHEREFORE**, Defendant Sorsaia requests that Plaintiffs' Motion to Compel be denied, and for such other and further relief as the Court may direct.

**MARK SORSAIA,**
**By Counsel**

*/s/ Caleb B. David*
Natalie C. Schaefer, Esquire (WVSB #9103)
Caleb B. David, Esquire (WVSB #12732)
Kimberly M. Bandy, Esquire (WVSB #10081)
Shannon M. Rogers, Esquire (WVSC #13920)
***Counsel for Mark Sorsaia***
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953
Charleston, WV  25339
(304) 345-1400; (304) 343-1826 (fax)
nschaefer@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com
srogers@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**THOMAS SHEPPHEARD,**
**TYLER RANDALL, and**
**ADAM PERRY, next friend and guardian of**
**Minor child J.P., on their own behalf**
**and on behalf of all others**
**similarly situated,**

       **Plaintiffs,**

**v.**                                          **Civil Action No. 5:23-cv-00530**
                                                  **Judge Irene C. Berger**

**JAMES C. JUSTICE JR., his official capacity**
**as Governor of the State of West Virginia, and**
**MARK SORSAIA, in his official capacity**
**as the Cabinet Secretary of the West Virginia**
**Department of Homeland Security,**

       **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant Mark Sorsaia, do hereby certify that on the 26th day of April, 2024, a true and exact copy of **"DEFENDANT MARK SORSAIA'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT SORSAIA TO RESPOND FULLY AND ADEQUATELY TO DISCOVERY"** was filed via CM/ECF system which will send notification to the following:

Stephen P. New
Emilee B. Wooldridge
Stephen New & Associates
***Counsel for Plaintiff s***
430 Harper Park Drive
Beckley, WV 25801
steve@newlawoffice.com

Timothy Lupardus
The Lupardus Law Office
***Counsel for Plaintiffs***
275 Bearhole Road
Pineville, WV 24874
office@luparduslaw.com

1

Zachary Whitten
The Whitten Law Office
***Counsel for Plaintiffs***
P.O. Box 753
Pineville, WV 24874
zwhittenlaw@gmail.com

Robert Dunlap
Robert Dunlap & Associates
***Counsel for Plaintiffs***
208 Main Street
Beckley, WV 25801
rdunlapesq@gmail.com

Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
***Counsel for Defendant Justice***
P.O. Box 3983
Charleston, WV 25339
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

/s/ *Caleb B. David*
Natalie C. Schaefer, Esquire (WVSB #9103)
Caleb B. David, Esquire (WVSB #12732)
Kimberly M. Bandy, Esquire (WVSB #10081)
Shannon M. Rogers, Esquire (WVSC #13920)
***Counsel for Mark Sorsaia***
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953
Charleston, WV  25339
(304) 345-1400; (304) 343-1826 (fax)
nschaefer@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com
srogers@shumanlaw.com

2