IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| THOMAS SHEPPHEARD, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 5:23-cv-530 |
| ) | (Judge Berger) |
| JAMES C. JUSTICE, JR., ) | |
| in his official capacity as Governor ) | |
| of the State of West Virginia; and ) | |
| MARK SORSAIA, in his official ) | |
| capacity as the Cabinet Secretary ) | |
| of the West Virginia Department of ) | |
| Homeland Security, ) | |
| ) | |
| Defendants. ) | |

## THE GOVERNOR'S MOTION TO BIFURCATE CLASS DISCOVERY

Purporting to represent all West Virginia inmates, Plaintiffs allege that the Governor's failure to call a special legislative session or to make certain budgetary recommendations constitutes deliberate indifference to their health and safety, and seek corresponding injunctive and declaratory relief.[1] At this stage in the proceedings, the State Defendants have engaged in significant and burdensome discovery to produce documents and communications regarding the three facilities at which Plaintiffs are housed—all of which, to be clear, is being borne by the taxpayers alone, not any insurance company. The discovery to date reveals the

---

[1] The Governor's motion to dismiss, which raises significant threshold legal issues— including sovereign immunity—was filed on November 6, 2023, and remains pending with the Court. *See* ECF 15 & 16.

conditions experienced by each named Plaintiff and will provide information as to the cause of those conditions.

The Governor now requests bifurcation of class discovery to slow the needless burn of taxpayer dollars. Federal Rule of Civil Procedure 23(b)(2), on which Plaintiffs will seek certification, requires Plaintiffs to show that the defendants acted the same with respect to all class members. By the very nature of Plaintiffs' class allegations, no class can proceed if Plaintiffs cannot show that they were subject to unconstitutional conditions of confinement caused by the Governor's budget proposals and general authority to "oversee[] and carry[] out various executive functions including, . . . corrections." ECF 1, ¶ 11. Accordingly, bifurcation of class discovery is appropriate to further the purpose of Rule 23(b)(2), to avoid costly and potentially unnecessary discovery, and to expedite these proceedings.

## BACKGROUND

In their putative class action complaint, Plaintiffs allege that the Governor and the Secretary Sorsaia have been deliberately indifferent to the allegedly unconstitutional conditions of confinement within West Virginia's prisons, jails, and juvenile facilities. Despite acknowledging that the Governor declared a state of emergency in 2022 to use the national guard to help alleviate staffing issues,[2] *id.* at

---

[2] That state of emergency has since been lifted due to increases in jail staff. *See* Press Release, Office of the Governor, *Gov. Justice Lifts State of Emergency for WV DCR Facilities, Thanks WV National Guard* (May 24, 2024) available at: https://tinyurl.com/h66fsj3n (last visited June 12, 2024).

¶¶33–35, that he has signed a bill to raise pay for correctional officers,[3] *id.* at ¶ 45, and that Governor Justice has sought to allocate $100 million to deferred maintenance in West Virginia's correctional facilities, *id.* at ¶ 86, Plaintiffs contend that the Eighth Amendment required Governor Justice to have spent more state budget surplus funds on corrections, *id.* at ¶¶ 77–87.

Plaintiffs have structured their complaint to allege unconstitutional conditions of confinement at three separate facilities—and on that basis, each plaintiff claims to represent all inmates at all other West Virginia facilities. Plaintiff Thomas Sheppheard, a current inmate at Mount Olive Correctional Center ("MOCC") claims to represent all West Virginia prison inmates. Plaintiff Tyler Randall, a former inmate at Southwestern Regional Jail ("SWRJ") (and current inmate at Salem Correctional Center), claims to represent all jail inmates in West Virginia. And Plaintiff Adam Perry, on behalf of minor J.P., an inmate at Donald R. Kuhn Juvenile Facility ("Kuhn"), claims to represent all juvenile inmates in West Virginia.

Each plaintiff has alleged separate purportedly unconstitutional conditions of confinement at their respective facilities. Sheppheard alleges that at MOCC,

- He has been given inadequate portions of food,
- He has only had access to showers with hot water, which resulted in blisters on his back,
- He does not get regular access to new toothbrushes and toothpaste,
- He does not have access to a law library, and

---

[3] The Governor has since signed another such pay raise in August 2023. *See* Press Release, Office of the Governor, *Gov. Justice Signs Bill to Increase Correctional Officer Salaries* (Aug. 14, 2023) available at: https://tinyurl.com/2upta7s8 (last visited June 12, 2024).

3

- He does not have recreational time.

ECF No. 9 ¶¶ 113–117. Mr. Randall alleges that while at SWRJ,

- He was housed in overcrowded cells,
- He observed inmates sleeping on the floor,
- He was exposed to mold,
- He was exposed to rodent feces while in his pod, and
- He was given inadequate portions of food.

*Id.* at ¶¶ 136–140. And Mr. Perry alleges that while at Kuhn,

- J.P. was served undercooked food, and
- J.P. has not always had access to hot water.

*Id.* at ¶¶ 159–160. According to Plaintiffs, a common question of fact in this case is "whether inmates at [Plaintiff's representative facility] have been exposed to the horrific conditions *described hereinabove* and whether the deplorable conditions of the facility violate the minimal standards of decency required to pass Constitutional muster." *Id.* at ¶¶ 99, 122, 145 (emphasis added).

Citing to depositions taken in another case, Plaintiffs allege that "[o]vercrowding, understaffing, and deferred maintenance all have an impact on safety," and that the problems with overcrowding, understaffing, and deferred maintenance have existed for a significant amount of time. ECF No. 9 ¶ 30–32. According to Plaintiffs, the Governor's allegedly insufficient funding proposals and exercise of general supervisory authority have caused Eighth Amendment violations. Based on those allegations each Plaintiff asserts that he "has been subjected to the same constitutional violations as the result of the same policies

4

and/or lack of policies, same practices, and deprivations as the absent class members." ECF No. 9 at ¶¶ 102,125 & 148.

Based on their claims, Plaintiffs seek injunctive relief and declaratory judgment only. Specifically, Plaintiffs ask for a declaration "that Defendants' actions and/or inactions, as describe hereinabove, violate the Eighth and Fourteenth Amendments to the United States Constitution." ECF No. 9 at 26, ¶ b. As a result, Plaintiffs ask the Court to order the Governor and Secretary Sorsaia to: (1) make all necessary maintenance and repairs to alleviate the alleged unconstitutional conditions, (2) "spend state budget surplus funds (or submit bills, call for a special session, etc.) in order to make all necessary deferred maintenance repairs . . . in an amount not less than *270 million dollars*," and (3) "spend budget surplus funds to hire and pay the requisite number of correctional staff needed to appropriately staff the facilities, not less than 60 million dollars." *Id*. at 26 ¶¶ d-f (emphasis added).

## LEGAL STANDARD

Federal Rule of Procedure 42(b) governs bifurcation. Under Rule 42(b), a court may bifurcate claims or discovery "[f]or convenience, to avoid prejudice, or to expedite and economize." That decision rests squarely within the "broad discretion" of the district court. *Maher v Continental Gas. Co.*, 76 F.3d 535, 545 (4th Cir. 1996) (affirming bifurcation of claims and stay of discovery as to secondary claims); *In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993) (decisions on bifurcation reviewed for abuse of discretion).

When considering whether to bifurcate merits discovery and class discovery, courts generally consider four factors: "(1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery." *Akselrod v. MarketPro Homebuyers LLC*, No. CCB-20-2966, 2021 WL 100666, * 2 (D. Md. Jan. 12, 2021). If a "narrow, potentially dispositive issue exists," then discovery on—and resolution of—that issue promotes judicial economy and does not prejudice either party by allowing for the efficient resolution of claims. *See Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132, 2014 WL 413534 (D.N.J. Feb. 4, 2014).

## ARGUMENT

In this case, the Plaintiffs allege that the individual defendants acted uniformly to deny each member of the putative class his or her Eighth Amendment rights. To establish an Eighth Amendment violation—as it pertains to conditions of confinement—the plaintiff must meet two elements: (1) are the conditions complained of "sufficiently serious"? and (2) did the defendant act with "deliberate indifference" to those conditions? *Wilson v. Seiter*, 501 U.S. 294, 297–304 (1991). Both the objective prong and the subjective prong must be met—the failure of proof as to either is dispositive. *Id.*

Beginning with the first prong, the plaintiff must establish that the condition complained of is "sufficiently serious" to "result in the denial of 'the minimal

6

civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff may also establish that he is incarcerated under conditions that create "a substantial risk" of "serious or significant physical or emotional injury" caused by exposure to the challenged conditions. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

If it is concluded that the exposure is sufficiently serious, then the Plaintiff must also satisfy the deliberate indifference prong. To show deliberate indifference, the Plaintiff must demonstrate either that "the official knew of and disregarded an excessive risk to inmate health or safety," or that "the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and . . . drew that inference." *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 835; 837).

Here, to obtain class certification, Plaintiffs will need to establish the merits of their claim that the overcrowding, understaffing, and deferred maintenance alleged to be present at all facilities have denied them the "minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 834. This inquiry—which involves the conditions to which each Plaintiff was exposed at MOCC, SWRJ, and Kuhn—is prerequisite to the time and resource-consuming demands of establishing the Rule 23(a) requirements. If the named Plaintiffs cannot establish "sufficiently serious" conditions of confinement caused by overcrowding, understaffing, and deferred maintenance, as it pertains to themselves, then they do not have a claim to bring forward on behalf of a class.

I. **The questions of whether the conditions alleged by Plaintiffs are "sufficiently serious" is a dispositive issue distinct from class certification.**

Prior to establishing that a defendant acted with deliberate indifference to a particular condition, the plaintiff must establish the existence of that condition. Here, Plaintiffs complain broadly of overcrowding, understaffing, and deferred maintenance, which do not—without more—satisfy the first prong of the Eighth Amendment inquiry. *C.f. Rhodes v. Chapman*, 452 U.S. at 347–48. To that end, each Plaintiff here asserts specific conditions of confinement that they contend are "sufficiently serious" to be considered a "denial of the minimal civilized measures of life's necessities"— that is, exposure to mold and rodents, water temperature issues, adequacy of food, sleeping on floor, access to hygiene products, and law library access. These allegations are specific to each named Plaintiff—and are different among each. Thus, Plaintiffs must show that the complained-of conditions are not only "sufficiently serious," but also caused by the generalized alleged conditions of overcrowding, understaffing, and deferred maintenance.

Not only is the inquiry into the conditions of confinement experienced by Plaintiffs, and whether they were caused by overcrowding, understaffing, or deferred maintenance, distinct from class certification—it is, in fact, *a prerequisite* for class certification. A Rule 23(b)(2) class cannot move forward if the defendants did not act (or refuse to act) "on grounds that apply generally to the class." If the conditions experienced by Plaintiffs were not caused by overcrowding, understaffing, or deferred maintenance, then the Defendants did not act on grounds that apply generally to the putative class.

8

Establishing that Plaintiffs experienced conditions of confinement "sufficiently serious" to give rise to a deliberate indifference claim would not be materially aided by class discovery, which would largely involve conditions of confinement *at other facilities*. For the same reason, establishing that the conditions experienced by Plaintiffs Sheppheard, Randall, and Perry were caused by understaffing, overcrowding and deferred maintenance is *also distinct* from class discovery. Accordingly, the discovery can be appropriately bifurcated without overlapping with class certification.[4]

## II. Bifurcating discovery will allow the litigation to proceed efficiently, will improve judicial economy, and will not prejudice either party.

Defendants have already engaged in a significant amount of discovery as it pertains to the three facilities named in the Complaint—all paid for by the taxpayers. Indeed, the vast majority of the document discovery regarding the named facilities is complete.[5] Secretary Sorsaia has produced nearly 20,000 pages of discovery regarding the Plaintiffs and each named facility. That discovery consists of the grievance files of each named Plaintiff, grievance logs from all named facilities from 2018 to present, health and safety inspection reports for each facility, monthly reports, and work orders from each facility. Secretary Sorsaia has further

---

[4] Given the existing deadline to serve written discovery, the Governor served class discovery on Plaintiffs. The responses are due July 5, 2024. Should the Court grant this motion to bifurcate, the Governor agrees to defer Plaintiffs' responses until the period for class discovery, if any, begins.

[5] There is an outstanding motion to compel discovery as to certain discrete issues on which the Magistrate Judge is expected to rule after a hearing on June 20, 2024.

9

agreed to produce maintenance logs and special operations reports. This is more than sufficient to establish whether Plaintiffs have suffered from "sufficiently serious" conditions of confinement, and whether those conditions are caused by overcrowding, understaffing and deferred maintenance.

At this stage, producing discovery *for the entire correctional system* will result in significant delays in this litigation, not to mention the inordinate, additional costs on the taxpayers.[6] *Plaintiffs are seeking the production of documents concerning every potentially serious condition of confinement at all facilities.* Judge Eifert has already signaled that the scope and volume of discovery is too large for either party to reasonably expect to carry out. To that end, she has suggested that the parties produce discovery from a *sample* of facilities regarding a narrower set of complained-of conditions. The parties have been unable to agree to a narrowed set of conditions about which discovery should proceed. The State Defendants believe that discovery should concern only the conditions of confinement asserted in the complaint, while Plaintiffs seek information regarding conditions and incidents never mentioned or contemplated in the complaint, like inmate deaths, overdoses, and inadequate medical care.[7]

---

[6] Plaintiffs have stated their intention to move for a 120-day extension of the deadlines in the current Scheduling Order.

[7] Plaintiffs' attempts to seek discovery on a wide range of issues divorced from any allegation in the complaint cannot be tied to either the merits of their claims of to the purposes of class certification. Plaintiffs have alleged that living conditions—exposure to mold and rodents, inadequate food, lack of access to hygiene products, water temperature in the showers, and law library access—are unconstitutional and caused by overcrowding, understaffing, and deferred

Allowing bifurcation and summary judgment on the issue of whether the three Plaintiffs can demonstrate "sufficiently serious" conditions will require Plaintiffs to focus and narrow the issues and scope of their claims. If Plaintiffs can succeed in showing that they were subjected to "sufficiently serious" conditions of confinement, then class discovery will be similarly narrowed to those conditions that were found to be unconstitutional. Such additional focus will allow class certification and class discovery to proceed more efficiently, and a class can be certified or denied more expediently. On the other hand, if Plaintiffs cannot make the requisite showing, then the case will be over.

It is well-recognized that "class actions involve the potential for 'hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims.'" *Physicians Healthsource*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2024) (quoting *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013)). Indeed, those costs, which are disproportionately borne by the defendants can be "enormous." *Id.* Here, the State has already expended significant taxpayer dollars to respond to discovery regarding only the named plaintiffs and the three named facilities. Requiring the gathering,

---

maintenance. Discovery relevant to those claims (and to class certification) would require Plaintiffs to explore the alleged conditions at other facilities. Instead, Plaintiffs seek information about, inter alia, overdoses, medical care, and inmate deaths. Such requests can only be seen as a fishing expedition to either generate additional claims or to identify individual clients. Allowing Plaintiffs here to proceed with the practically unlimited discovery they seek would signal to any person looking to sue their correctional facility that the mere allegation of *any* unconstitutional condition of confinement along with a simple assertion of class membership is sufficient to open all files at all correctional facilities.

11

review, and production of documents from even a sample of six more facilities (as contemplated by Judge Eifert) would result in considerable additional costs on the taxpayers.

On the other hand, the discovery that has already been produced pertains directly to the narrow, dispositive question that would be the subject of bifurcation: whether the named Plaintiffs experienced sufficiently serious conditions of confinement while at MOCC, SWRJ, and Kuhn, and whether those conditions were caused by overcrowding, understaffing, and deferred maintenance.

Because this issue is dispositive, and discovery on it is substantially complete, Plaintiffs would not be prejudiced by bifurcation. Despite the fact that Plaintiffs are the ones requesting these hundreds of thousands of pages of documents, they too will incur significant costs in reviewing and briefing such documents. Briefing of the proposed narrow, dispositive issue will help Plaintiffs narrow down the issues on which they would need to seek class discovery—if successful. Class discovery would thus proceed expeditiously. Even if Plaintiffs do not agree that such narrowing and bifurcation would benefit them, they surely would not be prejudiced by it. If the case can be resolved early, quickly, and inexpensively, the Court can and should make such early determination procedures available.

### III. Rule 23(b)(2) lends itself to bifurcation of merits and class discovery by requiring plaintiffs to demonstrate—for class certification—that the defendants acted with respect to the class as a whole.

The rules governing class certification dictate the sequence and needs of discovery in a putative class action. For example, under Rule 23(b)(3)—which

governs certification of classes seeking money damages—a court must focus primarily on issues that merge merits and procedure, such as the superiority of the class mechanism for resolving claims and the predominance of common issues. Unsurprisingly, in such cases, courts often allow class and merits discovery to proceed simultaneously.

Critically, cases under Rule 23(b)(2)—like this one, which governs certification of classes seeking injunctive relief only—are different. Such classes can be certified only if the Plaintiff establishes that defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). If the Plaintiff fails to make such a showing, then the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), which demand significant resources in discovery, are of no moment. In this way—focusing first on the defendant's allegedly unlawful conduct—Rule 23(b)(2) expressly puts the substantive horse before the procedural cart.

Considering the efficiency-oriented purpose of Rule 42, this case, which seek class certification pursuant to Rule 23(b)(2), cries out for bifurcated discovery—particularly given the heavy burdens on the public fisc. Plaintiffs here seek a declaration that the Governor's budgeting proposals and general supervision with respect to the correctional system caused unconstitutional conditions of confinement for all West Virginia inmates. That declaration would require a determination that the conditions of confinement that Plaintiffs complain of are "sufficiently serious"

*and* that they are caused by understaffing, overcrowding, or deferred maintenance. Those are precisely the questions on which discovery has already proceeded, and which can be adequately briefed and determined without resorting to class discovery regarding numerosity, commonality, typicality, and adequacy of representation. Bifurcation in this instance thus serves the purposes of Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, the Governor's motion to bifurcate class discovery should be granted.

                                **James C. Justice, II, Governor,
By Counsel:**

/s/ Michael B. Hissam
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for James C. Justice, II, Governor, in his official capacity*