IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

THOMAS SHEPPHEARD,
TYLER RANDALL, and
ADAM PERRY, next friend and guardian
of Minor child J.P., on their own behalf
and on behalf of all others similarly situated,

     Plaintiffs,

v.                              **Case No.: 5:23-cv-00530**

JAMES C. JUSTICE,  his official capacity
as Governor of the State of West Virginia, and
MARK SORSAIA, in his official capacity as
The Cabinet Secretary of the West Virginia
Department of Homeland Security,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Plaintiffs' Motions to Compel, (ECF Nos. 53, 54); Plaintiffs' Motions to Deem Admitted Responses to Requests for Admission, (ECF Nos. 55, 56); and Defendant Sorsaia's Motion for Protective Order Regarding Amended Notices of Videotaped Deposition Duces Tecum, (ECF No. 84). Defendants have filed responses in opposition to the Motions to Compel and to Deem Requests for Admission Admitted, (ECF Nos. 70, 71, 72, 73); Plaintiffs have responded in opposition to the Motion for Protective Order, (ECF No. 117); and Defendant Sorsaia has replied to Plaintiffs' response, (ECF No. 119). The undersigned has reviewed all of the briefing and conducted two hearings related to the motions—one on May 31, 2024, and the other on June 20, 2024.

Counsel for the parties have met and conferred extensively to resolve as many of their discovery disputes as possible; their diligence is much appreciated by the Court. Having considered the written materials and the oral arguments of counsel, the Court **GRANTS**, in part, and **DENIES**, in part, the Motions to Compel, (ECF Nos. 53, 54); **DENIES** the Motions to Deem Requests for Admission Admitted, (ECF No. 55, 56); and **GRANTS** the Motion for Protective Order, (ECF No. 84), as set forth below.

## I. <u>Relevant Background Information</u>

This is a putative class action filed by Plaintiffs, who were inmates housed in facilities owned and operated by the West Virginia Division of Corrections and Rehabilitation ("DCR"). At all relevant times, Plaintiff Sheppheard was incarcerated in the Mount Olive Correctional Complex ("MOCC"); Plaintiff Randall was incarcerated in the Southwestern Regional Jail ("SWRJ"); and Plaintiff J.P. was incarcerated in the Donald R. Kuhn Juvenile Center ("KJC"). (ECF No. 9 at 2-3). Plaintiffs complain that West Virginia's correctional facilities—including its prisons, jails, and juvenile centers—have been chronically overcrowded, understaffed, and improperly maintained for more than a decade. (*Id.* at 4-5). As a result, West Virginia inmates have suffered inhumane conditions of confinement and deliberate indifference to their health and safety in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at 5-6). Plaintiffs sue Governor Jim Justice and Cabinet Secretary Mark Sorsaia in their official capacities, allegedly as the state officials with ultimate authority over the maintenance and operation of West Virginia's correctional facilities. Plaintiffs seek declaratory and prospective injunctive relief, as well as attorneys' fees. (*Id.* at 26-27).

On January 25, 2024, Plaintiffs served Defendants with nearly identical interrogatories, requests for production of documents, and requests for admission. (ECF

Nos. 33, 34, 53-3 at 1). Defendants responded to the discovery requests and admissions, but Plaintiffs found the answers to be insufficient. (ECF Nos. 45, 46, 53, 54, 55, 56). After some effort to resolve their discovery dispute, Plaintiffs filed the Motions currently before the Court. Defendant Sorsaia filed his motion after receiving deposition notices, which required the deponents to make a substantial document production in conjunction with their deposition appearances.

During the first discovery hearing, the parties explained their positions at length. (ECF No. 102). The undersigned made suggestions on how to resolve many of the issues and ordered counsel to meet and confer further. Counsel for the parties abided by the order and, after much work, compromised their positions and reached agreements concerning the majority of their differences. (ECF Nos. 121, 122). At the second hearing, the Court addressed the remaining unresolved issues. (ECF No. 123).

## II.    **Motions to Compel**

### A.  *Governor Justice*

With respect to Defendant Justice's responses to discovery requests, Plaintiffs assert the following arguments in support of a motion to compel. Plaintiffs contend that Justice provided improper general objections to all of the requests; unilaterally limited his answers to the correctional facilities at which the Plaintiffs were housed despite this being a class action involving thirty-five correctional facilities in the State of West Virginia; and failed to fully respond to the requests on the ground that Defendant Sorsaia received the same discovery requests, making the requests to Justice cumulative. (ECF No. 53). Plaintiffs set forth specific grounds to compel Requests for Production of Documents Nos. 14, 15, 21, 25, 29, 31, 44, 45, 46, 54, and 76.

In response, Justice argues that Plaintiffs' requests to him are identical to the requests served on Sorsaia, and both state officials should not be compelled to produce the same documents and answer the same questions. (ECF No. 70). Justice asserts that the Court should limit the cumulative and duplicative requests as required by the Federal Rules of Civil Procedure. As Sorsaia is the official responsible for West Virginia's Department of Homeland Security, which oversees the DCR, Justice believes that Sorsaia is in the best position to respond to the discovery. Justice disagrees that his general objections are improper and claims that the requests are overly broad as they seek seven years' worth of information about thirty-five facilities, as well as numerous unconstitutional conditions of confinement that are not part of the allegations in the complaint. He adds that the specific requests for production addressed by Plaintiffs in their motion to compel have not been answered, because they uniformly seek information that is irrelevant to the claims and defenses in the case, making them disproportionate to the needs of the case.

### B. *Secretary Sorsaia*

Plaintiffs argue that Sorsaia improperly limited his responses to the three facilities at which the Plaintiffs are housed, although the complaint very clearly is a putative class action involving all thirty-five of West Virginia's correctional facilities. (ECF No. 54). Plaintiffs point out that these prison, jails, and juvenile centers are explicitly identified in the complaint, and the allegations concern the failure of the State as a whole to maintain and operate its correctional facilities in keeping with constitutional mandates. Plaintiffs complain that Sorsaia asserted unfounded and "boilerplate" objections. Plaintiffs set out specific grounds to compel complete answers to Interrogatory Nos. 11 and 12 and Requests for Production of Documents Nos. 8, 14, 21, 25, 29, 31, 39, and 54.

In response, Sorsaia contends that Plaintiffs specified certain alleged unconstitutional conditions of confinement experienced by them, and the case should be limited to those conditions. (ECF No. 72). Instead, Plaintiffs have posed broad, sweeping, requests about conditions and correctional facilities not included in the complaint. Sorsaia argues that these requests place an extraordinary burden on him and West Virginia's taxpayers and are not proportional to the needs of the case. According to Sorsaia, he applied a protocol to search for electronically stored information ("ESI") responsive to the requests—which he limited to the conditions and facilities addressed in the complaint—and that search returned 170,000 documents, which Sorsaia is reviewing for relevance and privilege. Sorsaia also responds to Plaintiffs' argument regarding the specific requests and interrogatories.

## III. <u>Requests for Admissions</u>

### A. *Governor Justice*

Plaintiffs complain that Justice attached paragraph-long objections and qualifiers to every response he made to requests for admission, and he failed to make a reasonable inquiry to support his answers, as required by Fed R. Civ. P. 26. (ECF No. 57). Plaintiffs provide examples of the objectionable responses, arguing that the requests were simple and direct and did not merit the long-winded objections and qualifiers. Plaintiffs argue that Justice's objections based upon overbreadth, vagueness, and ambiguity are simply "boilerplate" and thus improper. (*Id.* at 5).

Defendant Justice responds that the requests for admission all share the same fundamental problems, which made them virtually impossible to answer. (ECF No. 71). Specifically, the requests sought admissions applying to all thirty-five correctional facilities over a span of seven years. Justice contends that he tried to answer these

unwieldy and voluminous requests, but to do so required objections and qualifiers. After meeting and conferring, Plaintiffs made no corrections to the requests; instead, Plaintiffs suggested that Justice treat every year and each facility mentioned in the requests as a separate request for admission, requiring Justice to gather voluminous information and ballooning the number of requests from 82 to 17,796. (*Id.* at 3). Justice points out that many of the requests seek a legal conclusion without any accompanying factual context, and the remaining requests are so broadly written, they cannot be fairly answered. According to Justice, Plaintiffs attempt to circumvent the limitation on interrogatories by using requests for admission as a device to discover facts and evidence, rather than for their intended purpose, which is to narrow issues for trial.

### B. Secretary Sorsaia

Plaintiffs lodge the same complaints against the answers supplied by Defendant Sorsaia as against Defendant Justice. (ECF No. 58). Plaintiffs claim that Sorsaia denied most, if not all, of the requests for admission and included boilerplate objections and qualifiers. Once again, Plaintiffs assert that the requests are "simple and direct," making them easy to answer if Sorsaia would just perform the mandatory reasonable inquiry. Plaintiffs specifically object to Sorsaia's habit of denying requests "as characterized." Plaintiffs argue that this qualifier is not adequately explained, rendering it a boilerplate response.

In opposition, Sorsaia alleges that many of the requests seek purely legal conclusions, which are improper. (ECF No. 73). Many of the other requests, in Sorsaia's view, seek admissions of broad generalizations and ambiguous statements. Despite the overwhelming breadth and scope of the requests for admission, Sorsaia contends that he has responded to each request, providing appropriate objections and admitting or

denying portions of the request to the extent possible. Sorsaia additionally argues that Plaintiffs only complain in their motion about four individual responses, yet ask to have all 131 requests admitted. Sorsaia asserts that Plaintiffs' failure to raise specific concerns about the remaining responses constitutes a waiver of any argument Plaintiffs have relating to the other 127 requests.

## IV.    Motion for Protective Order

In the Motion for Protective Order, Defendant Sorsaia objects to a document production list attached to Plaintiffs' notice to take his deposition and their notice to take the deposition of William Marshall, Commissioner of the DCR. Sorsaia indicates that the documents included on the list are the same ones already requested and produced pursuant to Requests for Production of Documents; thus, forcing Sorsaia and Marshall to engage in significant duplicative, cumulative, and unnecessary discovery. (ECF No. 85). Sorsaia notes that district courts are required under Fed. R. Civ. P. 26(b)(2)(C) to issue a protective order when discovery requests are unreasonably cumulative or duplicative, and further, courts must issue orders as necessary to protect a deponent from annoyance, embarrassment, oppression, or undue burden or expense.

In response, Plaintiffs argue that the motion is moot, because the depositions have been cancelled, and the parties have agreed on many issues that will narrow the scope of discovery and modify Plaintiffs' needs. (ECF No. 117). Plaintiffs add that they do not expect the witnesses to reproduce documents that have already been provided, but want the witnesses to confirm, under oath, that the previous productions are complete.

Sorsaia disagrees that the motion is moot, because new notices will issue in the future. (ECF No. 119). Sorsaia wants the Court to determine whether Marshall has an obligation to attest to the completeness of the prior document productions. In addition,

Sorsaia wants a ruling from the Court regarding the propriety of any document request attached to the notices of deposition.

## V.   Discussion

### A. Discovery Requests

#### 1. Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states, in relevant part:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." *Id.*

Even when seeking relevant information, however, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and

consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment. "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at \*3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2023 WL 8629147, at \*2 (S.D.W. Va. Dec. 13, 2023); *McEvoy v. Diversified Energy Co. Plc*, No. 5:22CV171, 2023 WL 6192769, at \*1 (N.D.W. Va. May 15, 2023); *Fine v. Bowl Am., Inc.*, No. CV SAG-21-1967, 2023 WL 8479250, at \*2 (D. Md. Dec. 7, 2023); *Perez v. Huneycutt*, No. 5:22-CV-00120-MR, 2023 WL 8813553, at \*2 (W.D.N.C. Dec. 20, 2023); *Doe v. Mast*, No. 3:22CV00049, 2023 WL 8481049, at \*2 (W.D. Va. Dec. 7, 2023); *United States v. White*, No. 2:23-CV-00001-BO, 2023 WL 8451744, at \*7 (E.D.N.C. Dec. 6, 2023). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### 2. General Objections and Cumulative Requests

Plaintiffs complain that Defendants asserted improper general and boilerplate

objections. Courts in this circuit disfavor general objections. *See, e.g., Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W. Va. 2010) ("general objections to discovery, without more, do not satisfy the burden of the responding party ... because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. East Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Mancia v. Mayflower Textile Services Co.*, 253 F.R.D. 354, 358–59 (D. Md. 2008) (court disapproves of a general objection asserted "to the extent" that it applies). By raising non-particularized objections, Defendants run the risk of waiving any valid objections that may exist. *Id.* at 359; *see also Mezu v. Morgan State University*, 269 F.R.D. 565, 573 (D. Md. 2010).

Justice asserts three general objections: (1) he is not a proper party to the lawsuit; (2) the discovery requests are unreasonably cumulative and duplicative because the exact same set was served on Sorsaia, and Sorsaia is the proper official to answer the requests; and (3) he should not have to provide information about all correctional facilities when the three plaintiffs have identified their own facilities and only those facilities are at issue. While Justice identifies these objections as "general" because they apply to every discovery request, the only **inappropriate** objection is the one based upon him not being a proper party to the case. *See Hager,* 267 F.R.D. at 492 (holding that general objections are compliant when they are accompanied by specific grounds which allow the Court to evaluate the merits of the objections and assess whether the request was proper). Until the Court determines that Justice is not a proper party, he is a party to the lawsuit

governed by the discovery scheduling order and rules of civil procedure. Therefore, he is obligated to participate in discovery like any other party. Accordingly, the Court **GRANTS** Plaintiffs' motion to strike general objection number 1 in Justice's responses, but **DENIES** the motion to strike the other two general objections. These objections very plainly express the specific basis for their inclusion and, from that standpoint, they are not merely boilerplate.

Sorsaia also objected based on the breadth of the requests in that they included every correctional facility and a multitude of conditions of confinement that were not discussed in the complaint. (ECF No. 54-2 1-2). He further objected to numerous requests for admission that he perceived as asking for pure legal opinions. Finally, he refuses to produce documents that are protected from disclosure by statute or "are not approved for inmate viewing." Although Sorsaia lodged these objections to all of the discovery requests, he reiterated them, when applicable, in his answers to individual discovery requests. Consequently, the undersigned does not find them improper (albeit somewhat duplicative) and **DENIES** any request to strike them.

With respect to boilerplate objections, Plaintiffs contend that both Defendants objected to nearly every discovery request on the grounds that they were overly broad, unduly burdensome, and disproportional to the needs of the case. Plaintiffs assert that these objections are improper because Defendants did not explain the factual basis for the objections and did not support them with affidavits or other evidence. A review of the objections shows that most of them are based upon the overbreadth of the requests on their face—for example, requests that ask for ***all*** internal communications regarding ***any*** investigation of any correctional facility for ***any reason***. Defendants explain that they consider a request which seeks "all" information about every correctional facility in West

11

Virginia to be facially overly broad and burdensome, because only MOCC, SWRJ, and KJC are the facilities at issue and only the allegedly unconstitutional conditions of confinement identified by Plaintiffs are relevant to the claims and defenses in the case.

As earlier stated, typically, a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. An exception to that general rule is when the discovery request is overly broad on its face. *See e.g.*, *Green v. Jones*, No. 7:21CV00165, 2022 WL 4109514, at *1 (W.D. Va. Sept. 8, 2022) ("Where a discovery request is overly broad or unduly burdensome on its face, the proponent of discovery bears the burden of establishing its relevance.") (internal markings and citations omitted); *Wellen v. Farce,* No. C/A 2:16-cv-00414-DCN, 2018 WL 11474062, at *9 (D.S.C. Sept. 5, 2018) ("As previously noted, mere objections to discovery requests on the grounds that the requests are unduly burdensome or overbroad, without more, are insufficient. However, such is not the case when a discovery request is overly broad on its face.") (citations omitted); *Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 WL 676208, at *5 (N.D.W. Va. Mar. 1, 2007) (explaining that, while a party opposing discovery normally has the burden of showing why the discovery is inappropriate, the burden shifts where the request is overly broad and unduly burdensome on its face.).

As explained below, the undersigned agrees that the discovery requests, for the most part, are overly broad because they seek information about all facilities and a litany of unconstitutional conditions of confinement, including many not experienced by Plaintiffs. More importantly, they are disproportional to the current needs of the case. Consequently, the Court **DENIES** Plaintiffs' motion to overrule the overly broad, unduly burdensome, and disproportional objections except as specifically indicated.

Next, the Court considers the "cumulative and duplicative" nature of serving identical sets of discovery on Defendants. Plaintiffs do not seek money damages in this case and do not claim individual liability on the part of the defendants; rather, Plaintiffs request declaratory and prospective injunctive relief. Defendants have been sued only in their official capacities pursuant to the *Ex parte Young* exception to sovereign immunity. *See Doyle v. Hogan,* 1 F.4th 249, 254 (4th Cir. 2021) (*Ex parte Young* allows a suit against a state officer to enjoin him from enforcing an state unconstitutional act, as long as the officer sued has "some connection with the enforcement of the act.") (quoting *Ex parte Young,* 290 U.S. 123, 157 (1908)). The United States Court of Appeals for the Fourth Circuit has concluded that the Governor of a state cannot be enjoined under *Ex parte Young* simply because the Governor has "general authority" over the state's affairs. *Id.* at 255. Rather, the proper party is the state official with direct enforcement authority over the act in question. *Id.* Justice contends that Sorsaia is the Cabinet Secretary for the Department of Homeland Security, which oversees the DCR, making Sorsaia "the more appropriate party" to supply the information requested. Sorsaia does not dispute this contention. The undesigned agrees that both state officials should not be compelled to answer the same discovery requests or provide the same documents, as that is duplicative discovery; particularly, in a class action seeking only declaratory and prospective injunctive relief. Accordingly, the Court **DENIES** Plaintiffs' motion to compel Justice to provide the same answers and produce the same documents as those given by Sorsaia. Instead, Justice may adopt those answers as his own. Justice has already agreed to provide his own ESI in addition to the information provided by Sorsaia. (*See, e.g.* ECF No. 70-1 at 10). Therefore, to the extent Justice has responsive information not known to, or in the possession of Sorsaia, that information should be supplied to Plaintiffs as part

of Justice's ESI search.

### 3. Adequacy of Defendants' Responses

As stated, this is a putative class action in which Plaintiffs request the certification of three classes: (1) Class A includes all inmates housed at MOCC and other West Virginia prisons; (2) Class B includes all inmates housed at SWRJ and the State's other regional jails; and (3) Class C includes all minor inmates housed at KJC and the other West Virginia juvenile detention centers. The concept of proportionality is difficult in a putative class action, because class actions are, for the most part, document and witness-heavy. However, if class certification is denied, the claims and defenses that remain usually involve much less documentation and witness testimony. Therefore, tension exists between the plaintiffs' right to obtain enough information through pre-certification discovery to establish the prerequisites for class certification and the defendant's right to limit discovery to specific plaintiffs and their complaints. Recognizing this tension, courts have placed some limitations on discovery in putative class actions. *Deakin v. Magellan Health, Inc.,* 340 F.R.D. 424, 432 (D.N.M. Feb. 1, 2022). One approach taken by courts is to use "sampling." *See, e.g., Seabron v. Am. Family Mut. Ins. Co.,* 862 F. Supp. 2d 1149, 1166 (D. Colo. 2012) (allowing discovery on a sample of claims from potential class members); *Solo v. UPS Co.,* No. 14-12719, 2017 WL 85832, at *4 (E.D. Mich. Jan. 10, 2017) (ordering parties to meet and confer and determine a "mutually agreeable methodology for obtaining a sampling"). This approach allows the plaintiffs "a realistic opportunity to meet the requirements of class certification" while at the same time limiting pre-certification discovery to "what is necessary to permit the Court to make an informed decision on class certification." *Miner v. Gov't Payment Serv., Inc.,* 2017 WL 3909508, *4 (N.D. Ill. 2017). As courts have broad discretion in their resolution of discovery

disputes, *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation and internal markings omitted), the undersigned finds that using sampling to limit some of the discovery requests will assist in achieving proportionality.

As previously indicated, counsel for the parties met and conferred after the first discovery hearing and reached an agreement on most of the discovery disputes. Counsels' work resulted in two versions of a Joint Stipulation Regarding Certain Discovery Issues. (ECF Nos. 121-1, 121-4). Using the Joint Stipulation found at ECF No. 121-1, the parties agree to paragraphs 1, 2, 3, 6, 8, 9, 10, and 11. The remaining paragraphs are in dispute, or outline continuing discovery issues. Therefore, the Court **GRANTS**, in part, and **DENIES**, in part, the Motions to Compel and **ORDERS** the parties to file within **seven days** a joint stipulation containing the paragraphs to which they have agreed, as set forth above.

Now addressing the matters in dispute, the undersigned finds and **ORDERS** as follows:

### a. Document Production Related to Five "Big Topics"

Plaintiffs have identified five categories of "harm" they allege resulted from the unconstitutional overcrowding, understaffing, and delayed maintenance allegedly present at every correctional facility in the State of West Virginia. Those five "big topics" include inmate deaths, beatings/assaults, overdoses, food-related issues, and inadequate/delayed medical care. Plaintiffs seek any and all documents pertaining to these topics. Defendants argue that a request for "any and all" documents is too broad. Defendants propose that the document production be limited to critical incident reports and CID investigation reports from the nine selected facilities pertaining to the five topics.

The undersigned agrees with Defendants. This documentation should provide most of the information sought by Plaintiffs; particularly, in the pre-certification stage of the litigation.

The parties also disagree as to how the production should occur. Defendants argue that many of the reports involving the five big topics will document incidents that were not the result of overcrowding, understaffing, or delayed maintenance, and are therefore irrelevant. Because these reports are private, Defendants want to sift through the reports for relevancy and redact personal identifiers of the involved inmates before producing any of them to Plaintiffs. Plaintiffs object to this process on the ground that the DCR has not been honest or forthcoming in the past. Plaintiffs' counsel advised the Court that, because of the DCR's prior actions, another Magistrate Judge in this District ordered in similar litigation that counsel for all of the parties be present for a review of all of the reports touching on the topics at issue, and Plaintiffs' counsel could then flag reports he wanted Defendants to produce. After much discussion the Court **ORDERS** that the following process will be used in producing the reports. Defendant Sorsaia will collect all of the critical incident reports and CID investigation reports concerning any of the five big topics and will redact from each report the involved inmate's personal identifiers before showing the reports to Plaintiffs' counsel. Counsel for the parties shall meet and review the reports together. Plaintiffs' counsel shall flag the reports he believes are relevant. Sorsaia's counsel will produce to Plaintiffs copies of the flagged reports, unless Sorsaia disagrees with Plaintiffs that one or more reports are relevant. In that event, Sorsaia shall produce the reports that he agrees are relevant and, if the parties cannot agree on any report after meeting and conferring, shall file a Motion for Protective Order asking that the Court determine the relevancy. Because this is a somewhat arduous and time-consuming

process, Defendant Sorsaia shall have up to **sixty days** to collect and redact **all** of the responsive reports. However, Defendant Sorsaia shall begin to collect and redact the reports immediately, and the parties shall engage in their record reviews on a rolling basis. Grievance reports are being supplied separately.

### b. Documents Pertaining to Food and Inadequate/Delayed Medical Care

Plaintiffs want any and all documents relating to these topics. Defendants argue that this request is overly broad and burdensome. Defendants are supplying grievances from the nine selected facilities, and ask that the only other documents produced be the specific reports identified by Plaintiffs from the DCR's medical and food vendors, which reports were provided to the DCR during the identified time frame. The undersigned agrees with Defendants that this additional documentation suffices for these topics. Therefore, the Court **ORDERS** that the document production on these topics be limited to the critical incident reports, CID reports, grievances as agreed upon by the parties, and the reports identified by Plaintiffs that the DCR's medical and food vendors are required to supply to the DCR.

### c. ESI Relating to Robert Cunningham, Brad Douglas, Paul Simmons, and Betty Slack

The parties have spent a great deal of time negotiating an ESI protocol. At one point, Plaintiffs and Defendants agreed that the ESI protocol would be limited to three terms and their derivatives to be run on the files of the following records custodians: Betsy Jividen, Jeff Sandy, William Marshall, Mark Sorsaia, and the nine superintendents at the identified facilities. After making this agreement, Plaintiffs added four more custodians: Robert Cunningham, Brad Douglas, Paul Simmons, and Betty Slack. Defendants argue that this violates the agreement and is not proportional to the needs of

the case. Again, the undersigned agrees with Defendants. At this stage of the litigation, the Court must balance the need for Plaintiffs to collect sufficient information to meet class certification requirements against the expense and burden to Defendants involved in providing the voluminous discovery requested. Applying the proportionality analysis, the undersigned finds that limiting the ESI protocol to the thirteen individuals originally agreed upon by the parties meets the current needs of the case. Therefore, the Court **ORDERS** that the ESI protocols may be limited to those thirteen custodians.

### d. Requests for Production Nos. 15 and 25 and Discovery Regarding Funding; Depositions of Justice and Abraham

These issues are currently being briefed and will be addressed separately.

### e. Requests for Production Nos. 21, 29, 44, 45, and 46 and Discovery Regarding Spoliation of Evidence

These requests have to do with the storing, shredding, burning, deleting, or destroying of documents. There has been no showing, or even an articulated concern pertinent to the discovery *in this case*, to merit additional discovery about the management of documents and evidence. If Plaintiffs have some factual basis to believe that material information is missing, then that should be presented to the Court and parties. Until then, the Court finds that these discovery requests are premature and disproportional to the needs of the case. Therefore, Plaintiffs' motion to compel additional responses is **DENIED** at this time.

### f. Request for Production No. 39

This request asks for "all communications" supporting Defendants' denial of any of the requests for admission served by Plaintiffs. This request is obsolete given the problems identified with the requests for admission. Moreover, it is not proportional to the needs of the case. Because of the sheer volume of information that is tangentially

relevant in this case, some narrowing of the universe of documents must occur in order for discovery to progress and ultimately conclude in a timely fashion. The parties have taken steps to limit the boundaries of discovery; this broad discovery request likewise requires reasonable restrictions. Accordingly, Plaintiffs motion to compel an additional response is **DENIED**.

### B. Requests for Admission

#### 1. Standard of Review

Rule 36 of the Federal Rules of Civil Procedure allows a party to serve on another party written requests to admit the truth of any matters within the scope of Rule 26(b)(1) relating to (A) "facts, the application of law to fact, or opinions about either;" and (B) "the genuineness of any described documents." Fed. R. Civ. P. 36(a). When responding to a request for admission, the answering party must either admit the request, or specifically deny it, or state in detail why the requests cannot be specifically admitted or denied. The answering party may, when good faith requires, qualify the answer or deny only part of it. *Id.* When that is done, the answering party must specify any part admitted, any part denied, and any part qualified. Lack of knowledge or information may be a reason for not admitting or denying a request, but should only be claimed after the answering party has made a reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it admit or deny the request. *Id.* A party may object to a request for admission, stating the ground for the objection, but may not object solely on the ground that the request presents a genuine issue for trial.

The requesting party may move the court to determine the sufficiency of an answer or objection. *Id.* If the court does not find the answer or objection sufficient, it must order that an answer be served. If the court finds that the answer does not comply with the rule,

it may deem the matter admitted or order the answering party to serve an amended answer. The court may also allow an answering party to withdraw or amend an answer "if it would promote the presentation of the merits of the action" and if the court concludes that the requesting party would not be prejudiced. Fed. R. Civ. P. 36(b). According to the Advisory Committee, the purpose of requests for admission are to "facilitate proof with respect to issues that cannot be eliminated from the case," and "to narrow issues by eliminating those than can be." Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment. However, as the District Court explained in *CDS Fam. Tr. v. Martin*:

> In short, requests for admission are intended to streamline trials by "obviating the need to adduce testimony and documents as to matters that are not really in controversy." *US v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009). They are not, therefore, intended as a weapon to short cut the need for a party to prove the central issues of a case simply by relying on an opponent's untimeliness, inattention, or, in the case of *pro se* litigants such as the Martins, unfamiliarity with civil procedure. Moreover, Rule 36 explicitly limits itself to "admissions regarding purely factual matters or the application of law to facts, but not matters of law." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed. Appx. 169, 172 (4th Cir. 2005).

*CDS Fam. Tr. v. Martin*, No. 1:15-CV-02584-JMC, 2019 WL 2477358, at *2 (D. Md. June 13, 2019). It is not always easy to distinguish between a request seeking the application of facts to law and one seeking a legal conclusion. *Gross v. Guzman*, No. 11-23028-CIV, 2013 WL 12091159, at *10 (S.D. Fla. Jan. 25, 2013) ("Admittedly, the distinction between a request that impermissibly seeks the admission of an issue requiring the application of the law to the facts of a case and a request that impermissibly seeks the admission of a pure issue of law is not easy to draw.") (internal markings and citation omitted). Generally, if the request calls for a legal conclusion, even when applied to the operative facts in the case, it is improper; particularly, when the facts are in dispute. *Lakehead Pipe Line Co. v. Amer. Home Assur. Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997) ("Of course,

requests for admission are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'") (quoting *Kosta v. Connolly*, 709 F. Supp. 592, 594 (E.D. Pa. 1989)). Similarly, a request that asks for a pure opinion of law, devoid of relevant facts, is improper. *Id.* (finding improper Defendants' attempt to "have the Plaintiff ratify what are, in essence, the legal conclusions that the Defendants have attached to the operative facts of the case.").

### 2. Discussion

As the Court explained at the discovery hearings, the requests for admission posed by Plaintiffs contain numerous requests for legal opinions independent of any factual context. While Fed. R. Civ. P. 36 allows requests about facts and law applied to facts, it does not permit requests about the law standing alone. Moreover, many of the remaining requests for admission were so broadly worded, without reference to any specific event, that they were facially inappropriate. Because of the breadth of the requests, Defendants acted within the rule to state objections, qualifiers, and partial admissions and denials. The purpose of Rule 36 is to narrow the issues and resolve straightforward evidentiary matters to streamline dispositive motions and trial. These requests for admission did not achieve that goal. Therefore, the Court **DENIES** Plaintiffs' Motions to Deem Admitted Defendants' Responses to Requests for Admission, (ECF Nos. 55, 56).

### C. *Motion for Protective Order*

### 1. Standard of Review

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). However, simply because information is discoverable under Federal Rule of Civil Procedure 26(b)(1) "does not

mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). Federal Rule of Civil Procedure 26(b)(2)(C) requires the court, with or without a motion, to limit the frequency and extent of discovery when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (3) the party seeking the discovery has already had ample opportunity to collect the requested information; or (4) the proposed discovery "is outside the scope permitted by Rule 26(b)(1)". Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010)).

In addition, under Federal Rule of Civil Procedure 26(c), the court may restrict or prohibit discovery when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. An order under Rule 26(c) issues upon a showing of good cause made in relation to a motion asserted by the person or party opposing the discovery. The moving party carries the burden of demonstrating the need for protection. To prevail on the grounds of burdensomeness, oppression, or breadth, the opposing party must do more to carry its burden than simply make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice*, 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan.

2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

Under Rules 26(b)(2)(C) and 26(c), "the court has broad authority to limit discovery and prescribe alternative discovery mechanisms," *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009); in other words, to determine "when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F.Supp.2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Nevertheless, protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

### 2. Discussion

Plaintiffs' document requests, attached to the deposition notices of Sorsaia and Marshall, request materials already produced in discovery. Plaintiffs clarify that they are not interested in receiving duplicate documentation. They simply want to make sure that all relevant information has been supplied by Defendants. Given the agreements and orders pertaining to discovery, the undersigned finds the document requests to be cumulative and duplicative, and Plaintiffs have already had ample opportunity to collect the requested information. Therefore, the Court **GRANTS** the Motion for Protective

Order under Fed. R. Civ. P. 26(b)(2)(C)(i), (ii). As discussed at the hearing, Plaintiffs may ask Sorsaia if he believes the document production made pursuant to requests for production of documents is substantially complete, but Marshall is not a defendant and has no responsibility, or personal knowledge, to comment on the thoroughness and completeness of Defendants' discovery responses. Therefore, that question is not appropriate for a non-party fact witness.

Wherefore, for the reasons stated, , the Court **GRANTS**, in part, and **DENIES**, in part, the Motions to Compel, (ECF Nos. 53, 54); **DENIES** the Motions to Deem Requests for Admission Admitted, (ECF No. 55, 56); and **GRANTS** the Motion for Protective Order, (ECF No. 84).

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

**ENTERED:** June 25, 2024

Cheryl A. Eifert
United States Magistrate Judge