# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

| | |
|---|---|
| THOMAS SHEPPHEARD, ) | |
| TYLER RANDALL, and ) | |
| ADAM PERRY, next friend ) | |
| and guardian of Minor child J.P., ) | |
| on their own behalf and on behalf ) | |
| of all others similarly situated, ) | |
|  ) | |
|     Plaintiffs, ) | |
|  ) | |
| v. ) | Civil Action No. 5:23-cv-00530 |
|  ) | (Judge Berger) |
| JAMES C. JUSTICE JR., ) | |
| in his official capacity as Governor of ) | |
| the State of West Virginia, and ) | |
| MARK SORSAIA, in his official ) | |
| capacity as the Cabinet Secretary ) | |
| of the West Virginia Department ) | |
| of Homeland Security, ) | |
|  ) | |
|     Defendants. ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE GOVERNOR'S MOTION TO BIFURCATE CLASS DISCOVERY

**COME NOW** Plaintiffs, by counsel, and file their *Response in Opposition to The Governor's Motion to Bifurcate Class Discovery*, stating as follows:

### I.    STATEMENT OF THE CASE

This is a class action suit filed against James C. Justice Jr. ("Governor Justice" or jointly "Defendants"), in his official capacity as Governor of the State of West Virginia, and Mark Sorsaia ("Defendant Sorsaia" or jointly "Defendants"), in his official capacity as the Cabinet Secretary of the West Virginia Department of Homeland Security ("WVDHS") seeking to remedy violations of the Eighth Amendment's prohibition against cruel and unusual punishment in West Virginia prisons, jails, and juvenile facilities.

Count I of the *Complaint* alleges *Eighth Amendment* violations in the prison system and seeks injunctive relief to remedy the unconstitutional conditions that Defendants have permitted to persist. Plaintiffs allege that Defendants violated their constitutional rights guaranteed under the *Eighth Amendment* by depriving them of basic human necessities, cruel and unusual punishment, and denying care for serious medical needs. *See, Complaint* ("*Compl.*") (Document 9) at ¶163. Defendants are alleged to have been "deliberately indifferent to the health, safety, and other basic needs of Plaintiffs (and all similarly situated inmates and former inmates)" and to have had "actual knowledge of such conditions and deliberately taking no action to remedy them in a timely or appropriate manner." *See id*. at ¶165.

Further, Plaintiffs allege that "[d]uring the time period at issue, it was clearly established that the serious deprivations of basic human needs at MOCC, Southwestern, and Kuhn and all other West Virginia correctional facilities, as described hereinabove, violated the Eighth Amendment to the United States Constitution." *See id*. at ¶167. Plaintiffs allege that as a result of the unconstitutional conduct of the Defendants, "Plaintiffs (and all similarly situated inmates and former inmates) are suffering a deprivation of their Constitutional rights." *See id*. at ¶168.

Governor Justice filed *The Governor's Motion to Bifurcate Class Discovery* (Document 116) ("*Motion to Bifurcate*") on June 12, 2024. The *Motion to Bifurcate* seeks "bifurcation and summary judgment on the issue of whether the three Plaintiffs can demonstrate 'sufficiently serious' conditions" of confinement. *See Motion to Bifurcate* at p. 116. Plaintiffs are timely filing their *Response in Opposition to The Governor's Motion to Bifurcate Class Discovery* ("*Response*") and respectfully request that this Court deny the *Motion to Bifurcate* in its entirety.

## II. STATEMENT OF FACTS

The Complaint alleges that Plaintiff Thomas Sheppheard, ("Plaintiff Sheppheard") was incarcerated at Mt. Olive Correctional Complex ("MOCC") in Fayette County; Plaintiff Tyler Randall, ("Plaintiff Randall") was incarcerated at Southwestern Regional Jail ("Southwestern") in Logan County; and, Plaintiff J.P., ("Plaintiff J.P."), a minor, is an inmate incarcerated at Donald R. Kuhn Juvenile Center ("Kuhn") in Boone County. *See* Complaint (Document 9) at ¶¶ 7-9.

Defendant Governor Justice is the duly elected Governor of the State of West Virginia and is sued in his official capacity. *See id.* at ¶¶10 and 14. Governor Justice is responsible for submitting a proposed budget for each fiscal year to the legislature for consideration pursuant to W. Va. Const. art. VI, § 51, as well as overseeing and carrying out various executive functions including, *inter alia*, corrections. *See id.* at ¶11.

The State of West Virginia is charged with ensuring that inmates are subjected to appropriate and humane conditions of confinement while housed in any correctional facility. *See id.* at ¶20. The State of West Virginia is similarly charged with maintaining and operating its correctional facilities in a manner that meets the minimal civilized measure of life's necessities, by providing, *inter alia*, beds and bedding for all inmates, appropriate food and access to drinking water, access to basic hygiene products, toilets, showers, and laundry, and providing living conditions free of mold, sink and toilet water, human waste or sewage, rats, insects, and other contaminants for all inmates housed therein. *See id.* at ¶21. The State of West Virginia is tasked by law with ensuring that all correctional facilities are free from the conditions of overcrowding, understaffing, and are properly maintained and it has failed in this regard for over a decade. *See id.* at ¶22. Correctional facilities and their staff are not permitted to act with deliberate indifference towards the health and safety of inmates. *See id.* at ¶26. Inmates also have a constitutional right to

be reasonably protected from the constant threat of violence and sexual assault while incarcerated. *See id.* at ¶27.

Despite the constitutional requirements, Defendants have subjected inmates housed at all the states correctional facilities and other such facilities throughout the state, including Plaintiffs, to inhumane living conditions, deprived them of basic human necessities, and acted with deliberate indifference towards their health and safety. *See id.* at ¶28.

On August 11, 2022, Governor Justice issued Executive Order 33. 5-22 finding that: "A state of Emergency exists in West Virginia as it pertains to the staffing levels of our juvenile and adult detention and correctional facilities." *See id.* at ¶33. Governor Justice recognized that "any shortage of correctional officers limits the ability to properly supervise the State's incarcerated individuals" and lack of proper supervision may present a danger to the incarcerated individuals and others. *See id.* at ¶34. The correctional officer shortage affects the security of the facilities and would have an impact on the safety of the facility. *See id.* at ¶¶51-52.

In 2022, the inmate population was overcrowded and the facilities were understaffed. *See id.* at ¶31. The overcrowding has been at least a decade in the making. *See id.* at ¶32. Overcrowding makes a facility less safe, secure, and humane than it could be. *See id.* at ¶59. Overcrowding results in having two to three inmates in a cell and inmates sleeping in the day room of the facility. *See id.* at ¶61. Overcrowding in facilities makes the maintenance situation worse. *See id.* at ¶62.

Paragraphs 63 through 76 set forth allegations regarding deferred maintenance, including allegations that Twenty-Seven Million Dollars is needed for door locking control systems and doors and locks in the jails only and some of the prisons and juvenile centers also need these items. *Id.* at ¶ 73 (citing, Exhibit 1, Douglas Depo., pp. 44-46). Additionally, Plaintiffs further alleged that the lack of locking mechanisms "can present a risk of harm to inmates as inmates need to be

4

prevented from being able to access other inmates during lockdowns or at night when an inmate is sleeping. *Id.* at ¶ 74 (citing, Exhibit 1, Douglas Depo., p. 46). An additional allegation is that "sufficient money is not being allocated to keep up with the deferred maintenance in the facilities." *Id.* at ¶ 76 (citing, Exhibit 1, Douglas Depo., p. 38).

Meetings between WVDHS and WVDCR officials and legislators, representatives from the Governor's office, of the Legislature, and State budget office officials have occurred wherein these individuals were informed that using part of the money from the budget surplus would greatly improve a lot of the issues. *See id.* at ¶77. These government officials would be presented with written proposals with options as to how to correct the overcrowding, understaffing, and deferred maintenance problems within the facilities. *See id.* at ¶78. The state is not lacking in funds to address the unconstitutional conditions at the facilities." *See id.* at ¶¶83-84.

These unconstitutional conditions of confinement, along with the excessive risk of serious harm they engender, were permitted to continue and these unconstitutional actions continue to this day despite adequate funds available to correct the constitutional violations.[1]

### III.     LAW AND ARGUMENT

#### A. Legal Standards

Governor Justice seeks an unprecedented and untenable bifurcation of the issue of whether the unconstitutional conditions of confinement alleged by the Plaintiffs are "sufficiently serious" and the result of overcrowding, understaffing, and deferred maintenance. Governor Justice filed his *Motion to Bifurcate* almost ten months after the *Complaint* was filed and after a substantial amount of discovery has been completed.

---

[1] Thus, the $1.8 billion dollar surplus can be inferred to have resulted, in part, from the deliberated indifference to the unconstitutional conditions of confinement by Governor Justice. *See id.* at ¶84.

While Governor Justice correctly sets forth the law cited in *Akselrod*, the case itself is factually inapposite as the plaintiff's claim was brought under the Telephone Consumer Protection Act ("TCPA"). *Akselrod v. Marketpro Homebuyers LLC*, No. CCB-20-2966, 2021 U.S. Dist. LEXIS 5253, *1 (D. Md. Jan. 11, 2021)[2]. Class discovery was stayed and discovery was permitted regarding the capabilities of the system used to make the calls, that is, whether it was an automatic dialing system and whether the calls qualified as telephone solicitations under the TCPA. *Id*. at *2. The straightforward issues in that case have no relationship to the complex issues in the case *sub judice*. The inquiry herein does not involve determine the technological capability of a telephone system, which is a straightforward inquiry, or the content of a message, another straightforward inquiry.

The citation to *Maher* regarding "secondary claims" is also unavailing, as the secondary claim in that case was against an insurer under the Unfair Claim Settlement Practices Act of West Virginia and the primary claim was a negligence action. *Maher v. Cont'l Cas. Co.*, 76 F.3d 535, 544 (4th Cir. 1996). The Supreme Court of Appeals of West Virginia explicitly required that the two claims be bifurcated if they were brought in the same civil action. *Id*. (citation omitted).

In contract, bifurcation of class discovery and merit discovery is disfavored. In fact,

> [I]n the context of class action litigation, bifurcating merits and class discovery is particularly disfavored, in view of the Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes*, which is rooted in the premise that the class certification analysis under Rule 23 '"generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."'
>
> *Wesley v. Samsung Elecs. Am., Inc*., Civil Action No. 20-18629-JMV-AME, 2022 U.S. Dist. LEXIS 129432, *5 (D.N.J. July 21, 2022)(unpublished)(citing, *Singh v. Lenovo (United States) Inc.*, Civ. No. CCB-20-1082, 2021 U.S. Dist. LEXIS 73837, 2021 WL 1516032, at *1 (D.Md. Apr. 16, 2021) (quoting *Wal-Mart Stores, Inc. v.*

---

[2] *Physicians Healthsource, Inc. v. Janssen Pharm., Inc*., Civil Action No. 12-2132 (FLW), 2014 U.S. Dist. LEXIS 13523 (D.N.J. Feb. 4, 2014) is also a case brought under the TCPA and inapplicable to the analysis of this proposed class action.

*Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)); See also, *Singh*, at **2-3 (collecting cases).

The United States District Court for the District of South Carolina state that "'bifurcation of discovery is the exception, rather than rule, and it is clear that in most instances, regular—that is, unbifurcated—discovery is more efficient.'" *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, *3 (D.S.C. Feb. 24, 2021)(quoting, *Cent. Transp. Int'l, Inc. v. Gen. Electric Co.*, No. 3:08CV136-C, 2008 U.S. Dist. LEXIS 103456, 2008 WL 4457707, at *3 (W.D.N.C. Sept. 30, 2008)(also citing, *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F.Supp.2d 451, 461 (D. Md. 2005) (bifurcation of discovery 'would not further judicial economy')).

Governor Justice is stretching his cited precedent further than sound reasoning allows. Generic references to general principles in dissimilar cases do not provide the requisite support for Governor Justice's burden to demonstrate that bifurcation is warranted.

> **B. The determination of whether the conditions alleged by Plaintiffs are "sufficiently serious" is not a dispositive issue distinct from class certification. Plaintiffs seek Declaratory and Injunctive Relief Applicable to All Punitive Class Members rendering Bifurcation Inappropriate.**

Plaintiffs seek certification of a class for declaratory and injunctive relief pursuant to *Federal Rule of Civil Procedure 23(b)(2)*, wherein class certification is warranted if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Governor Justice's argument is based upon an overly narrow interpretation of the *Complaint*. Governor Justice frames the issue as whether "'the conditions complained of "sufficiently serious.'" *Motion to Bifurcate* at p. 6. The Fourth Circuit has articulated the proper inquiry as whether a plaintiff can establish "a serious deprivation of his rights in the form of a

7

serious or significant physical or emotional injury, **or a substantial risk thereof**." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). (citations and internal quotation marks omitted) (**emphasis added**). In cases seeking only injunctive relief, it is the risk itself that violates the Eighth Amendment; the prisoner need not await bodily injury before seeking relief. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition."). Moreover, a prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. 825, 837.

The Plaintiffs specifically alleged the conditions that they experienced. Other allegations in the *Complaint* allege additional "sufficiently serious" conditions which have a substantial risk of resulting in harm to the Plaintiffs. The overcrowding, understaffing, and deferred maintenance create a substantial risk of harm to the Plaintiffs' health and safety and these have been persistent issues within West Virginia's correctional system for at least a decade. Former WVDCR Chief of Staff Brad Douglas testified in the *Rose* case that overcrowding contributes to the safety and security of the facility, and an implied risk of harm to inmates. Douglas also agreed that overcrowding makes a facility less safe, secure, and humane than it could be. Relevant Deposition Transcript Portions are attached as <u>Exhibit A</u>. [Douglas Transcript, 136-137]. Former SRJ Superintendent Michael Francis stated, "You know, when you start having overcrowding it affects everything in the facility. There's nothing that it does not effect." [Francis, 25]. Francis also agreed that overcrowding poses a risk of harm or safety concern for inmates, and stated ". . . when you get that many people put in a confined space -- because let's be honest. They're not even -- there not even doing well in society. So when you put them there all together, it's still not going to work out very well. They have tendencies. They have behaviors, and those behaviors come out. And if

you start cramming more people -- it's kind of like putting 310 people in a pod that was only designed really to house 120. You got problems because, now, you're having to put three or four in a cell." [Francis, 126-127]. WVDHS Deputy Cabinet Secretary Rob Cunningham agreed that the overcrowding of facilities overcrowding can have an effect on maintenance of those facilities, and stated, "The more something is used the more it is going to deteriorate. . . Just like if you buy a car and you drive it, the tires are going to wear out." [Cunningham, 77-78].

Further, Former WVDCR Chief of Staff Douglas testified that the $28 million dollars needed for doors, locks, and locking mechanisms is not the kind of thing that has sprung up on the State of West Virginia overnight, and perhaps even longer than five to ten years. [Douglas, 161]. Former WVDHS Cabinet Secretary Jeff Sandy testified that there was approximately $200 million in deferred maintenance in January of 2017 and that figure had been there for many years. [Sandy, 28-29]. Former WVDCR Commissioner Jividen agreed that the deferred maintenance had been a problem at least a decade in the making. [Jividen 169-170].

In response to the obvious effects of understaffing, Former WVDCR Chief of Staff Douglas stated, "Those facilities depend on staff and security staff to operate them -- operate them safely. Lack of that staff or shortage of that staff or overworked staff could, would have an impact on the safety of the facility." Douglas gave the example of not having enough officers to cover posts and having a post be unmanned. [Douglas, 55-57]. WVDHS Former Cabinet Secretary Sandy acknowledged that understaffing creates a safety issues for inmates. [Sandy, 60]. In discussing the effect of understaffing, Michael Francis testified, "It's horrible. Because what happens is, that affects overtime. So when you start making officers work more overtime than that is going to cause problems and it is what it is. You know, that is taxing on a family. Then they don't want to do their job. They don't want to do it effectively. It affects how everything runs. When you start getting

short staffed . . . " [Francis,33-34]. WVDCR Corporate Representative Marvin Plumley stated, "In any correctional facility when that [staffing] number starts to drop, it affects operations of all areas throughout the facility or it has the potential to." He further clarified, it affects maintenance and food service. [Plumley 30-31].

The overcrowding, understaffing, and deferred maintenance create a substantial risk of harm to the Plaintiffs' health and safety and they do not have to wait until they suffer the harm before seeking relief. *Complaint* at ¶¶ 28, 51-52, 59, 74.

Moreover, if a prisoner in a prison conditions lawsuit secures a ruling that a prison policy violates the Constitution, the court-ordered injunctive relief will necessarily apply to all other inmates." 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.34 (5th ed. 2020 update); see also Wright & Miller, 7A Fed. Prac. & Proc. § 1776.1 (3d ed. 2020 update) (noting that (b)(2) classes are frequently used to enforce the ADA). Therefore, if Plaintiffs prevail and the unconstitutional conditions are remedied, not only will Plaintiffs not the harms alleged and the substantial risk of the additional harms alleged, but also all the other putative class members will not suffer the harms alleged.

The Fourth Circuit Court of Appeals has recognized these principles:

On the Objective Prong, the district court concluded the physical injuries actually suffered by Appellant 'do[] not qualify as . . . significant . . . for purposes of a constitutional claim.' J.A. 256. This conclusion is incomplete. By focusing only on the injury Appellant actually suffered, the court erred by ignoring the <u>risk of harm</u> posed by depriving someone of a mattress for over four months. We have made clear that a prisoner can satisfy the objective prong of an Eighth Amendment claim by showing this 'substantial risk of . . . serious harm. '*Hakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); see also *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *De'Lonta*, 708 F.3d at 525; cf. *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) ('We have great difficulty agreeing that prison authorities . . . may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.). Therefore, on remand, the district court should complete the analysis and consider the risk of harm posed to Appellant.

*Putney v. Likin*, 656 F. App'x 632, 637 (4th Cir. 2016) (footnote omitted).

See also, *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011) (per curiam) (unpublished)(citation omitted)("We have held that, in the context of a conditions-of-confinement claim, a prisoner must either 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' <u>or</u> 'demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions.'").

Governor Justice's attempts to narrow the issues down to a pinprick are based upon faulty premises, which are neither factually nor legally substantiated. The overcrowding, understaffing, and deferred maintenance create an excessive risk of serious physical harm in West Virginia's correctional facilities. Governor Justice's myopic reading of the *Complaint* cannot justify his request for bifurcation.

## C. **Bifurcating discovery will not allow the litigation to proceed efficiently, will not improve judicial economy, and will severely prejudice the Plaintiffs.**

Governor Justice's argument regarding the alleged virtues of bifurcation also fly in the fact of the *Dukes* case. "Not only is the inquiry into the conditions of confinement experienced by Plaintiffs, and whether they were caused by overcrowding, understaffing, or deferred maintenance, distinct from class certification—it is, in fact, a prerequisite for class certification." *Motion to Bifurcate* at p. 8. Governor Justice's justification is the reason that district courts are consistently opposed to bifurcation. The consideration of class certification is intertwined with the merits of the case. Governor Justice cannot bifurcate his way around this precedent. In fact, he cites no case wherein bifurcation occurred in a case alleging unconstitutional conditions of confinement. Not one case.

The issue of discovery has been extensively discussed in hearings before The Honorable Cheryl A. Eifert, Magistrate Judge. The parties agreed to discovery with respect to nine facilities. *Transcript of Hearing Held on June 20, 2024* at p. 9.[3] With respect to the five conditions subject to discovery, Magistrate Eifert advised the Defendants as follows: "That's why I disagree with 5 the defendants when they say he shouldn't be allowed to look at beatings or deaths because I think those can be the substantial risk of harm that these things [overcrowding, understaffing, and deferred maintenance] can cause." *Id*. at p. 13. The other three harms are overdoses, medical care, and inadequate food. *Id*. at p. 13 and 29.

Therefore, despite the in-depth wide-ranging discovery described by Governor Justice, the discovery is limited to nine facilities regarding three harms, and limited to critical incident reports and the CID investigation reports for a period of three years.[4] *Id*. at 11, 28.

Other courts have considered the benefit of judicial economy in bifurcation and found it lacking. See *Section A*. herein. Not only will judicial economy not be served, Plaintiffs will be severely prejudiced. Plaintiffs alleged in detail the existence of and risks resulting from overcrowding, understaffing, and deferred maintenance. Plaintiffs cannot be prevented from discovery regarding the narrowed-down list and limited only to the harms they specified that they suffered. Plaintiffs allege that unconstitutional conditions of confinement exist and due process requires that they be given a fair opportunity to discover relevant information regarding the harms caused by the three conditions. Governor Justice believes that he should be entitled to file a motion

---

[3] Plaintiffs will provide the transcript to the Court, if necessary. Plaintiffs are not attaching the Transcript as an exhibit as there is a Redacted Transcript Deadline set for 7/25/2024 and Release of Transcript Restriction set for 9/23/2024.

[4] Defendants' strong resistance to the request and its scope leads one to wonder exactly how many of these types of reports exist.

to summary judgment after having denied the Plaintiffs relevant discovery. This is the epitome of a due process violation.

### D. Rule 23(b)(2) does not lend itself to bifurcation of merits and class discovery by requiring plaintiffs to demonstrate—for class certification—that the defendants acted with respect to the class as a whole.

Governor Justice did not cite one legal authority to support his proposition that class actions seeking injunctive relief lend themselves to bifurcation of merits and class discovery. Indeed, precedent from the United States Supreme Court directly contradicts the Governor's argument as has been demonstrated *ad nauseam* for Governor Justice's benefit.

Governor Justice repeatedly complains about the expenditure of "taxpayer dollars." Had those taxpayer dollars been spent addressing the unconstitutional conditions previously, this litigation would not exist.

Furthermore, the statement that seeking information regarding "overdoses, medical care, and inmate deaths [. . .] can only be seen as a fishing expedition to either generate additional claims or to identify individual clients." *Motion to Bifurcate* at pp. 10-11, n. 7. One does not have to go on a fishing expedition (unless one is shooting fish in a barrel) to find claims or clients. A search the internet of legal research cites or the district court's docket or on-line articles will tell the sad tale of the deplorable state of correctional facilities in the State of West Virginia.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court **DENY** *The Governor's Motion to Bifurcate Class Discovery*.

PLAINTIFFS,

By Counsel

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)

13

Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| **THOMAS SHEPPHEARD,** | ) | |
| **TYLER RANDALL, and** | ) | |
| **ADAM PERRY, next friend** | ) | |
| and guardian of Minor child J.P., | ) | |
| on their own behalf and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:23-cv-00530** |
| | ) | **(Judge Berger)** |
| **JAMES C. JUSTICE JR.,** | ) | |
| in his official capacity as Governor of | ) | |
| the State of West Virginia, and | ) | |
| **MARK SORSAIA, in his official** | ) | |
| capacity as the Cabinet Secretary | ) | |
| of the West Virginia Department | ) | |
| of Homeland Security, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

Undersigned counsel for Plaintiffs does hereby certify that the foregoing *Plaintiffs' Response in Opposition to Governor Justice's Motion for Bifurcation of Class Discovery was* filed with the clerk on June 26, 2024 via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)