IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| **THOMAS SHEPPHEARD**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:23-cv-530 |
| | ) | (Judge Berger) |
| **JAMES C. JUSTICE, JR.**, | ) | |
| in his official capacity as Governor of the | ) | |
| State of West Virginia; and | ) | |
| **MARK SORSAIA**, in his official capacity | ) | |
| as the Cabinet Secretary of the West | ) | |
| Virginia Department of Homeland | ) | |
| Security, | ) | |
| | ) | |
| Defendants. | ) | |

**THE GOVERNOR'S REPLY IN SUPPORT OF HIS RENEWED
MOTION FOR PROTECTIVE ORDER**

Plaintiffs have fallen far short of their burden to demonstrate the extraordinary circumstances necessary to force the deposition of the Governor of the State of West Virginia.[1] At their requested deposition, Plaintiffs' counsel intends to interrogate the Governor about his discretionary policy decisions and the exercise of his state constitutional prerogatives. Such information is both publicly accessible and available from other sources and is plainly irrelevant to Plaintiffs' conditions of confinement claims, or otherwise simply not discoverable under the deliberative process (or executive) privilege. Considerations of federalism, separation of powers, and state sovereign immunity stand firmly against a federal court compelling the deposition of a governor of a sovereign state about his policy decisions.

---

[1] Plaintiffs concede that the same standards that apply to the question of the Governor's deposition "are applicable to [Chief of Staff] Abraham." ECF No. 127 at 5 n.1.

1

Plaintiffs' response only confirms the impropriety of their attempt to depose the Governor and COS Abraham, and of Plaintiffs' requests for communications regarding CARES Act funding. *See* ECF No. 127 ("Response").

*First*, Plaintiffs do not dispute any of the highly improper lines of questioning Plaintiffs' counsel stated he intends to pursue with the Governor. *See* ECF No 127 at 13–14. (In fact, Plaintiffs *substantiate* their mischievous intent, indicating they will demand the Governor explain his funding decisions from the discretionary Civil Contingent Fund, including on "items . . . such as baseball and racecars."). Nor do Plaintiffs deny that they must satisfy the demanding three-part standard of "extraordinary circumstances" to depose the Governor, which they admit requires showing bad faith. *Id.* at 9. But for reasons explained below, they do not satisfy it.

*Second*, Plaintiffs change their theory of liability by arguing that their claim of deliberate indifference is based on the Governor's failure to spend money on corrections from his discretionary Civil Contingent Fund. Yet Plaintiffs' complaint is *silent* on the Governor's Civil Contingent Fund—there are *no allegations* of its appropriated amount much less any alleged misuse. It appears for the first time in the Response to the Governor's first Motion for Protective Order, without any factual support, and this Court should not credit the say-so of Plaintiffs' counsel in a brief to order the deposition of the Governor. Regardless, the Governor's discretionary funding decisions with respect to money in the Civil Contingent Fund are hardly a permissible basis to "call the Governor 'on the carpet,' or at least compel him to work in a committee-like atmosphere with the court in order to solve prison problems." *Deukmejian v. Superior Court*, 143 Cal. App. 3d 632, 635 (Ct. App. 1983).

*Third*, Plaintiffs' chief justification for the deposition is that the Governor has provided so-called "incongruous" statements or information concerning his knowledge of historical

conditions in the state's correctional facilities. Plaintiffs point to no legal authority to support such a sweeping position. Even if true (which it is not), any alleged "incongruity" between public statements and actions by the State's chief executive on a matter of public policy is hardly indicative of bad faith misconduct or extraordinary circumstances warranting the deposition of the Governor. If alleged "incongruity" between a public official's statements and his actions is sufficient to compel a high-ranking public official into the deposition chair, then all manner of government officials would be swamped with demands for deposition. That is not the law.

On top of such deposition testimony, Plaintiffs seek communications regarding CARES Act funding and "other federal funding." Even though the complaint makes no mention of CARES Act funding, and certainly no allegation of the misuse thereof, Plaintiffs now assert that such communications are relevant to show that funding was simply available to, but not spent on, the correctional system. But federal funding generally, and the CARES Act specifically, comes with certain requirements as to how must be spent. Thus, such funds were not, as Plaintiffs allege "available" to be spent however the Plaintiffs think they should have been spent. Moreover, to the extent any federal funds were available for discretionary spending, communications regarding such discretionary spending decisions would be protected under the deliberative process privilege.

The motion for a protective order should be granted in full, and Plaintiffs' motion to compel production of communications regarding CARES Act funding should be denied.

## ARGUMENT

**I.     Plaintiffs fail to demonstrate the presence of extraordinary circumstances to justify the deposition of the Governor.**

Plaintiffs do not dispute the elements of the three-part test to establish the "extraordinary circumstances" required to depose a high-ranking government official. As noted, the requesting

3

party must (1) make a showing of bad faith or misconduct; (2) demonstrate that the information sought is essential to the case; *and* (3) establish that the information sought cannot be obtained in any other way. *See In re Dept. of Educ.*, 25 F.4th 692, 702 (9th Cir. 2022). Unless the requesting party can clearly establish all three elements, a court may not compel the deposition of a high-ranking government official. Plaintiffs fall far short of satisfying this demanding test.

1. **Plaintiffs have not made any showing of bad faith or misconduct.**

As the Governor explained in his motion, Plaintiffs have offered no explanation beyond conclusory allegations in their complaint that the Governor engaged in bad faith or misconduct. They have simply asserted that that their allegations of Eighth Amendment violations are *in and of themselves* sufficient to satisfy the bad faith prong. *See* ECF No. 127 at 9 (arguing that "Plaintiffs' allegations of misconduct arise from *the failure to remedy the unconstitutional conditions*") (emphasis added). That is insufficient. Plaintiffs' logic is circular and otherwise makes no attempt to account for the critical distinction between evidence of bad faith or misconduct with the deliberate indifference standard that applies to Plaintiffs' Eighth Amendment claim.

"A showing of bad faith is a threshold issue to justifying taking a cabinet secretary's deposition." *In re U.S. Dep't of Educ. (DeVos)*, 25 F.4th 692, 702 (9th Cir. 2022). Despite Plaintiffs' attempt to conflate the standards, they are markedly different. The Supreme Court has made that much clear. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result."); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

Bad faith or misconduct, on the other hand, "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity" and it "contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Pritt*, 77 F. Supp. 2d 743, 747 (S.D.W. Va. 1999) (quoting Black's Law Dictionary 139 (6th ed. 1990)). Indeed, compelling the deposition of a high-ranking government official requires a showing of bad faith "because when the agency has been dishonest, further judicial scrutiny is justified and, in fact, necessary to effectuate judicial review." *Dep't of Educ. (DeVos)*, 25 F.4th at 702.

What is more, in the Fourth Circuit, the extraordinary circumstances test requires *more than allegations* made in a complaint. It instead requires a "clear showing" of misconduct. *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (1991). In other words, such an inquiry must be evidence-based, and go beyond the simple decision not to perform a discretionary task. *See In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) (no misconduct in making discretionary decisions "absent a showing of contrary provisions of law or contract"); *see also Matter of Nielsen*, No. 4:23-mc-80280-KAW, 2024 WL 979947 (N.D. Cal. Jan. 24. 2024) (allowing 25-question written deposition of former U.S. Secretary of Homeland Security based upon an "evidence-based finding of bad faith.").[2] And the Fourth Circuit has been consistent: there is "no clear misconduct" in the failure to perform a discretionary act. *In re McCarthy*, 636 Fed. App'x 142, 144–45 (4th Cir. 2015).

---

[2] The written deposition ordered in *Matter of Nielsen* has been stayed pending appeal to the Ninth Circuit. *See Nielsen v. United States Dist. Ct. for N.D. Cal.*, No. 24-867. That appeal was heard on June 5, but no opinion has issued. Regardless of the Ninth Circuit's decision in *Nielsen*, Plaintiffs' reliance on that lower court's decision is misplaced. First, the court based its decision to allow the deposition of Secretary Nielsen on evidence that went *well beyond* the allegations in the Complaint. Specifically, the court singled out an internal memorandum indicating that "family separation was a policy goal of the Zero Tolerance Policy, rather than an unfortunate byproduct," as claimed by the Secretary. *Matter of Nielsen*, 2024 WL 979947 at *5. Such intent, the Magistrate Court found, showed bad faith and misconduct. Plaintiffs here have presented *no evidence* to support their claim of misconduct or bad faith on the part of the Governor.

Plaintiffs attempt to wring some misconduct out of alleged inconsistencies between public statements made by the Governor and allegations in Plaintiffs' complaint. Specifically, Plaintiffs point to a news story quoting public comments made by the Governor about inconsistent reports of conditions of confinement at the Southern Regional Jail. In those comments, the Governor highlights the need—after one investigation reported no issues—for a second, more in-depth investigation into allegations regarding conditions of confinement in the regional jails. Plaintiffs contrast the Governor's statements to deposition testimony from DHS and DCR heads stating that they provided the Governor's Office with proposals to fix "overcrowding, understaffing, and deferred maintenance problems within the facilities." ECF No. 127 at 11. But the Governor's statements and the deposition testimony are not contradictory. The Governor's knowledge of requests for funding by DCR and DHS officials does not inform his knowledge as to the specific conditions at any particular jail, prison, or juvenile facility.

Even if these statements were inconsistent (and they are not), Plaintiffs still fail to make any "clear showing" that the Governor acted with bad faith in carrying out his discretionary functions. Nor can they. At bottom, Plaintiffs' argument rests on the assertion that the Governor exercised policymaking discretion in a manner with which Plaintiffs disapprove (that is, he funded one project over another). But as noted, the Fourth Circuit has already made clear that failure to perform a discretionary act is not misconduct. *McCarthy*, 636 Fed. App'x at 144–45.

Plaintiffs have not made any clear showing—by plausible allegation or otherwise—of any bad faith or misconduct by the Governor. The threshold question of bad faith has thus been answered in the negative, and the motion for a protective order can be granted for this reason alone.

### 2. The Governor's testimony is not necessary.

Turning to the second element—necessity—the party seeking to depose a high-ranking government official must show that he has information that is "absolutely needed for a case" before the court can "allow a deposition to disrupt the normal governmental balance of powers." *In re Dept. of Educ.*, 25 F.4th at 703. As Judge Aboulhosn once put it, when the high-ranking government official does not have information "essential to the case," the deposition will not be compelled. *Blankenship v. Fox News Network, LLC*, No. 2:19-cv-236, 2020 WL 7234270 at *1 (S.D.W. Va. Dec. 8, 2020). Plaintiffs do not dispute this legal standard.

Instead, Plaintiffs argue that the Governor's testimony is necessary because he makes "spending decisions out of the Civil Contingent Funds" and that those decisions "did not address the unconstitutional conditions" in the state's correctional facilities. ECF No. 127 at 14. But Plaintiffs miss the point. The *spending decisions* are matters of public record. The *mental processes* of the Governor that led to those decisions, on the other hand, are not only irrelevant to Plaintiffs' claims of unconstitutional conditions of confinement, but they are also completely non-discoverable under the deliberative process (or executive) privilege. So even if that information was tangentially relevant, it is hardly "necessary" or "essential" to the Eighth Amendment claim brought by Plaintiffs—which, again, seeks only prospective relief to address existing correctional conditions. Despite Plaintiffs' aims, a federal court is not the proper venue to convene as an inquisition committee to examine the retrospective and discretionary policy decisionmaking process of state officials over corrections. *See Deukmejian v. Superior Court*, 143 Cal. App. 3d 632, 634, 191 Cal. Rptr. 905 (1983) (issuing writ of mandamus to prevent deposition of the Governor of California where the "inquiry would focus upon executive policies, not upon prison conditions").

And finally, Plaintiffs make the sweeping assertion that, "[i]n circumstances wherein a government official is involved in a decision-making process that is alleged to have resulted in a violation of constitutional rights, the testimony of that government official is necessary." ECF No. 127 at 15. So stated, that proposition appears to be made up from whole-cloth, with no support in the law—including in the single *Blagojevich* order cited. *See id.*[3] Nor could it be correct. If so, the Governor or any manner of other high-ranking state or federal officials (including federal judges) would be subject to deposition for their decisionmaking processes on grounds of "necessity" simply because a plaintiff alleged a constitutional violation against them—which, as this Court knows, occurs in nearly every civil rights case filed in federal court. That cannot be, and is not, the law. *See e.g. Coleman v. Schwarzenegger*, No. CIV S-90-0520, 2008 WL 4300437 (E.D. Cal. Sept. 15, 2008) (denying deposition of Governor of California where Plaintiffs alleged Eighth Amendment violations).[4]

### 3. Plaintiffs fail to show that any relevant information sought from the Governor cannot be obtained elsewhere.

The third "extraordinary circumstances" factor requires a plaintiff to show that the information sought from the high-ranking government official cannot be obtained elsewhere. In

---

[3] Additionally, Plaintiffs' reliance on *Blagojevich*—an unpublished, district court order out of the Seventh Circuit—is inappropriate. The *Blagojevich* court allowed the deposition of the former Illinois governor because he "possessed relevant information, such that requiring him to sit for deposition would be reasonable." No. 05-3156, 2007 WL 951921 (C.D. Ill. Mar. 28, 2007). That is not the standard to depose a high-ranking government official in the Fourth—or any other—Circuit. *See Franklin Sav. Ass'n*, 922 F.2d 209 (4th Cir. 1991) (requiring extraordinary circumstances); *see also In re McCarthy*, 636 Fed. App'z 142, 144-45 (4th Cir.) (issuing writ of mandamus to block deposition of the EPA Administrator regarding her failure to perform a discretionary function because no misconduct had been shown); *In re Dept. of Educ.*, 25 F.4th 692, 702 (9th Cir. 2022) (collecting cases).

[4] Plaintiffs claim that the issues in *Coleman* are distinct from the issues here. ECF No. 127 at 15. But the issue of whether overcrowding in the prisons has caused unconstitutional conditions of confinement (the issue presented in *Coleman*) is *precisely* the issue here. Plaintiffs allege that West Virginia prisons are overcrowded, understaffed, and have deferred maintenance, and that those conditions have unconstitutional conditions of confinement. As in *Coleman*, the Governor's deposition is not necessary to establish those facts.

only the "rarest of cases" can the deposition of a high ranking official be ordered where the same information is available from an alternate source. *In re F.D.I.C.*, 58 F.3d at 1062. Importantly, to establish the third factor, the requesting party must show "what efforts have been made to determine whether the information is otherwise available and the extent to which their efforts failed to uncover such information." *Coleman*, 2008 WL 4300437, at *4. If the requesting party has not attempted to discover the information from other sources, then it cannot show the necessity of deposing a high-ranking government official. *In re Dept. of Educ.*, 25 F.4th at 704 (collecting cases). Again, Plaintiffs do not dispute the application of any of these legal rules.

Instead, Plaintiffs simply claim that because the Governor did not identify witnesses in his initial disclosure, there must be no other source of information. But it is not the Governor's burden to prove Plaintiffs' case or demonstrate the elements of the extraordinary circumstances test. It is *Plaintiffs* who must identify other sources of information, including on issues that bear on the Eighth Amendment claim against the Governor. And as it turns out, they have already done so. *See* ECF No. 127 at 16 (arguing, based on deposition testimony from other state officials, that "the Governor's Office was informed many times over many years regarding the conditions at the correctional facilities [and] . . . was ignored for an extended period of time"). Although the Governor certainly disputes Plaintiffs' allegations of deliberate indifference, even taking them as true, Plaintiffs do not *also need* the Governor's testimony to obtain evidence of his knowledge and actions when other officials have testified concerning that issue.

Finally, Plaintiffs argue that they are, in fact, entitled to demand testimony from the Governor concerning his mental processes in reaching a decision once the extraordinary circumstances test is satisfied. *See* ECF No. 127 at 17. But for all the reasons set forth in the Governor's Renewed Motion for Protective Order and this Reply, Plaintiffs have fallen short

9

every step of the way to meet the heavy burden of demonstrating the "extraordinary circumstances" that would require compelling the Governor of a sovereign state to testify concerning his discretionary policy development and exercise of core state constitutional prerogatives. Even so, they also fail to satisfy the exception to state sovereign immunity under *Ex Parte Young*. After all, state sovereign immunity is not simply a bar to liability, but also from the burdens of litigation in total, including discovery.

Having failed to demonstrate the presence of extraordinary circumstances on every element, the renewed motion for protective order should be granted.

## II. State sovereign immunity bars the deposition of the Governor.

There is a second, independent basis to grant the requested protective order. As the motion explains, the Governor and COS Abraham are entitled to state sovereign immunity such that they may not be subject to the burdens of litigation, including deposition. Plaintiffs sued the Governor only in his official capacity, meaning that this suit is effectively against the State, thereby implicating state sovereign immunity. (So too, discovery is plainly sought from COS Abraham in his official capacity). And there has been no abrogation of sovereign immunity by Congress or waiver by the State. As such, Plaintiffs' effort to dragoon the Governor and his COS into a legal proceeding is barred by state sovereign immunity unless Plaintiffs can establish the exception under *Ex parte Young*, 209 U.S. 123 (1908). They fail to do so.

In their response, Plaintiffs incorporate by reference their responses in opposition to the Governor's motion to dismiss on state sovereign immunity grounds. In that same respect, the Governor incorporates by reference his reply in support of his motion to dismiss on the issue of sovereign immunity. *See* ECF No. 23 at 1–6. Plaintiffs then assert that "[s]overeign immunity is not applicable in the face of violations of the Constitution of the United States for which Plaintiffs seek prospective relief," ECF No. 127 at 18—but that is only true if the "special

10

relation" requirement of *Ex parte Young* is satisfied. That is the crux of the dispute. Specifically, there must be a direct connection between the challenged law or conduct and the authority of the particular official sued to enforce the challenged law or remedy the alleged wrong. Here, for the reasons already explained in the renewed motion and related briefing on the Governor's motion to dismiss, Plaintiffs do not satisfy *Ex parte Young*.[5]

### III. Communications regarding CARES Act funding are *irrelevant* to Plaintiffs' deliberate indifference claims.

During the COVID-19 pandemic, the federal government provided funding to the states to help allay COVID-19 related costs. As explained in the renewed motion for protective order, the funds received under the CARES Act (like most federal funding) had to be used consistent with that purpose. At the time the CARES Act funds were received, the State had already reimbursed the Division of Corrections and Rehabilitation for its COVID-related expenses. And so, instead of going to the DCR directly, some CARES Act funds were reimbursed to the State through the Governor's Contingent Grants and Gifts fund. ECF No. 109 at 10–12.

At this Court's May 31 hearing, Plaintiffs asserted that communications regarding CARES Act funding is relevant to demonstrate that the Governor had funding available but did not spend it on prisons and jails. When received by the State, the CARES Act funds, like all federal funds, were not available for discretionary spending—a fact that Plaintiffs do not contest. Instead, they could only be used to reimburse expenses incurred due to the COVID-19 pandemic. Without any allegation that DCR was not properly reimbursed for its COVID-related expenses,

---

[5] In the final paragraph of their argument section, *see* ECF No. 127 at 18, Plaintiffs quote *Scheuer v. Rhodes*, 416 U.S. 232 (1974), but do not explain its relevance to the proper legal analysis. That case had nothing to do with the defense of state sovereign immunity but rather concerned the potential immunity under the Eleventh Amendment for officials sued for damages in their individual rather than official capacities. *See Hafer v. Melo*, 502 U.S. 21, 30 (1991) (discussing *Scheuer*). Here, of course, Plaintiffs only sued the defendants in their official capacities seeking injunctive and declaratory relief. *Scheuer* is irrelevant.

as required under the CARES Act (and there are none), communications regarding CARES Act funds (or any other federal funds) are irrelevant to Plaintiffs' claims and otherwise not discoverable under the deliberative process privilege.

## CONCLUSION

For the foregoing reasons, the Governor's Renewed Motion for Protective Order should be granted, and Plaintiffs' Motion to Compel responses to Requests for Production 15 and 25 should be denied.

**James C. Justice, II, Governor,
By Counsel:**

*/s/ Michael B. Hissam*
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for James C. Justice, II, Governor, in his official capacity.*