# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

THOMAS SHEPPHEARD, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO. 5:23-cv-00530

JAMES C. JUSTICE, JR., et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant Mark Sorsaia's Motion to Dismiss* (Document 12), the *Memorandum of Law in Support of Defendant Mark Sorsaia's Motion to Dismiss* (Document 13), the *Plaintiffs' Response in Opposition to Defendant Mark Sorsaia's Motion to Dismiss* (Document 17), and the *Reply in Support of Defendant Mark Sorsaia's Motion to Dismiss* (Document 22).

In addition, the Court has reviewed *Governor Justice's Combined Motion to Dismiss and to Transfer Division* (Document 15), *Governor Justice's Memorandum of Law Supporting His Motion to Dismiss* (Document 16), the *Plaintiffs' Response in Opposition to Governor Justice's Combined Motion to Dismiss and to Transfer Division* (Document 18), and *Governor Justice's Reply Supporting His Motion to Dismiss* (Document 23).

The Court has also reviewed the Plaintiffs' *Class Action Complaint for Declaratory and Injunctive Relief* (Document 9), as well as all attached exhibits.[1] For the reasons stated herein, the Court finds that the Defendants' motions to dismiss should be granted.

---

1 To the extent that the Plaintiffs' exhibits are "integral to the complaint and authentic," the Court considers them as

## FACTUAL ALLEGATIONS

The Plaintiffs, Thomas Sheppheard, Tyler Randall, and Adam Perry, next friend and guardian of minor plaintiff J.P., initiated this action with a *Class Action Complaint for Declaratory and Injunctive Relief* (Document 9) filed on August 8, 2023. They named James C. Justice, Jr., and Mark Sorsaia as Defendants in their respective official capacities as the Governor of West Virginia and the Cabinet Secretary of the West Virginia Department of Homeland Security.

At all relevant times, Mr. Sheppheard was incarcerated in the Mount Olive Correctional Complex, Mr. Randall was incarcerated in the Southwestern Regional Jail, and Plaintiff J.P. was housed in the Donald R. Kuhn Juvenile Center. The Plaintiffs, on behalf of all currently incarcerated persons housed in West Virginia state prisons, jails and juvenile centers, allege that the Defendants have failed to alleviate pervasive conditions of overcrowding, understaffing, and deferred maintenance at all such facilities for over a decade. As a result, they allege that West Virginia inmates have suffered inhumane conditions of confinement and deliberate indifference to their health and safety in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiffs sue Governor Justice and Secretary Sorsaia in their official capacities, ostensibly as the state officials with ultimate authority over the maintenance and operation of West Virginia's correctional facilities. The Complaint contains one cause of action for Eighth Amendment Violations under 42 U.S.C. § 1983 (Conditions of Confinement). The Plaintiffs request that the Court:

> a) Certify a class … of all individuals currently incarcerated at any correctional facility within the state of West Virginia;

---

relevant herein. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation omitted).

b) Declare … that Defendants' actions and/or inactions … violate the Eighth and Fourteenth Amendments to the United States Constitution;

c) Enjoin … Defendants from engaging in further unconstitutional practices …, and compel them to implement and enforce policies, procedures, and practices necessary to ensure the minimal civilized measure of life's necessities and/or provide the Constitutional thresholds of confinement to all inmates housed in the states jails, correctional facilities, and juvenile centers;

d) Enjoin … Defendants from engaging in further unconstitutional practices …, and compel them to make all necessary structural and/or infrastructure repairs, hazard abatements, financial investments, and personnel changes/additions to ensure these constitutional deprivations cease and do not continue in the future;

e) Enjoin and compel … Defendants to spend state budget surplus funds (or submit bills, call for a special session, etc.) in order to make all of the necessary deferred maintenance repairs required at all West Virginia correctional facilities in an amount not less than 270 million dollars;

f) Enjoin and compel … Defendants to spend state budget surplus funds to hire and pay the requisite number of correctional staff needed to appropriately staff the facilities, not less than 60 million dollars;

g) Enjoin … Defendants from engaging in further unconstitutional practices … by the least intrusive means to correcting that harm with respect to all inmates housed in a West Virginia prison;

h) Impose definite time limitations within which the Defendants and the State of West Virginia must comply with the injunction;

i) Award attorney's fees and costs … pursuant to 42 U.S.C. § 1988;

j) Grant any and all relief Plaintiffs or class members may be entitled to in law or equity; and

k) Grant any further relief this Honorable Court deems just and proper.

(Compl. at 25–27) (Document 9.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. "In contrast to its

3

treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint).  Reasonable discovery may be necessary to permit the plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations.  *Id.*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

4

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

5

**DISCUSSION**

Although Secretary Sorsaia and Governor Justice separately presented their respective grounds for dismissal, both Defendants argued that the Plaintiffs lack standing to pursue this action because they cannot establish that their alleged injuries are fairly traceable to either Defendant's conduct or that their injuries would be redressed by a favorable decision against either Defendant.

The "judicial Power" of federal courts extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (alterations and internal quotation marks omitted). The Plaintiffs, as "the part[ies] invoking federal jurisdiction, bear[ ] the burden of establishing these elements." *Spokeo, Inc.*, 578 U.S. at 338. The Court must evaluate standing separately as to each defendant. *See Bostic v. Schaefer*, 760 F.3d 352, 370–71 (4th Cir. 2014). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

"A plaintiff's injury satisfies the traceability element of standing when there is 'a causal connection between the injury and the [defendant's] conduct complained of by the plaintiff.'"

6

*Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (quoting *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (internal quotation marks omitted)). "While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the 'independent action of some third party not before the court.'" *Air Evac EMS, Inc.* at 760 (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th Cir. 2005)). "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)), *cert. denied*, 572 U.S. 1015 (2014). "A plaintiff's burden to establish redressability 'is not onerous': he must only 'show that [he] personally would benefit in a tangible way from the court's intervention.'" *Disability Rts. S.C.*, 24 F.4th at 903 (quoting *Deal*, 911 F.3d at 189 (internal citation omitted)). To that end, "[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Deal*, 911 F.3d at 190 (internal quotation omitted). However, redressability is "problematic when third persons not party to the litigation must act in order for an injury to arise or be cured." *Doe*, 713 F.3d at 755.

    A.    Secretary Sorsaia

Secretary Sorsaia argues that the Plaintiffs' alleged injuries are not sufficiently traceable to his conduct as Cabinet Secretary of WVDHS, nor are the alleged injuries likely to be redressed by a favorable decision against him, because he lacks the legal authority to act as requested or deliver the relief requested in the Complaint. (Sorsaia Mem. at 8) (Document 13.) Specifically, to the extent that the Plaintiffs' alleged harms arise from a lack of relevant appropriations, he

7

contends he "has neither the ability to propose budgets or appropriations nor the ability to pass them into law." (Sorsaia Mem. at 6.) He maintains that such authority "resides in the Governor and the Legislature, respectively." (*Id.*) Likewise, he asserts that he has only a general supervisory role as Cabinet Secretary and that the Plaintiffs "have pointed to no authority" allowing him "to carry out the additional injunctive relief requested." (*Id.*) He notes that the Commissioner of the Division of Corrections and Rehabilitation (DCR) is the relevant state official tasked with "exercis[ing] general supervision over the administration of the institutions under the jurisdiction of the division," "[e]stablish[ing] rules, policies, and regulations in writing governing all subdivisions and institutions within the division," and "[s]upervis[ing] the treatment, custody, and discipline of all inmates and residents and the maintenance of the institutions and their industries." (*Id.* at 6) (citing W. Va. Code §§ 15A-3-4(a)(1), (3), (8).) Thus, he argues that the Plaintiffs' injuries will not likely be redressed by a favorable decision against the Cabinet Secretary.

The Plaintiffs argue that Secretary Sorsaia "has the authority to ensure that [WVDHS] is operated in a constitutional manner." (Pls.' Resp. in Opp. to Def. Sorsaia's Mot. to Dismiss at 14) (Document 17.) However, they do not point to any source affirmatively vesting the Cabinet Secretary of WVDHS with the specific authority to remedy unconstitutional conditions of confinement or otherwise provide the relief requested in the Complaint. Instead, the Plaintiffs cite a news article noting former Cabinet Secretary Jeff Sandy's consolidation of jails, prisons, and juvenile centers into one government unit, as well as an *Order and Proposed Findings and Recommendation* in another case within this district stating that former Secretary Sandy "visited

the [Southern Regional Jail] regarding issues concerning toilet paper, mattresses, and water." (*Id.*) (internal citation omitted.)

Secretary Sorsaia responds that former Secretary Jeff Sandy's consolidation of the Division of Corrections and the Regional Jail Authority into the Division of Corrections and Rehabilitation "has no bearing" on the standing issue. (Sorsaia Reply at 5) (Document 22.) He reiterates that he lacks legal authority to appropriate funds and again points to the Commissioner of DCR as the appropriate official with specific authority to remedy the alleged injuries related to conditions of confinement. He maintains that the Plaintiffs' reliance on his general supervisory duties is insufficient to establish traceability and contends the Fourth Circuit has considered and rejected similar arguments in other cases.

The Court finds that the Plaintiffs do not have standing to pursue this action against Secretary Sorsaia. The Plaintiffs allege that Secretary Sorsaia "is charged with providing support, oversight, and guidance to the West Virginia Division of Corrections and Rehabilitation." (Compl. at ¶ 16.) However, this general duty does not provide a sufficient "causal connection" between the Plaintiffs' alleged injuries and Secretary Sorsaia's conduct. *See Disability Rts. S.C.*, 24 F.4th at 901 (4th Cir. 2022) (finding principles underlying Eleventh Amendment immunity considerations "apply with equal force in the standing context") (citing *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) ("The requirements of *Lujan* are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute.")). In addition, while Secretary Sorsaia's conduct "need not be the last link in the causal chain," the Plaintiffs have not alleged that their injuries were caused by his conduct as Cabinet Secretary. Indeed, the Complaint, on its face, suggests that their injuries

9

are due in large part to the "independent action of some third party not before the court," namely, the state Legislature. *Air Evac EMS, Inc.* at 760 (internal quotation omitted). The Complaint details how the former Cabinet Secretary had knowledge of understaffing (Compl. at ¶¶ 32, 46), deferred maintenance (*id.* at ¶ 75) and overcrowding (*id.* at ¶ 78, 79) in state facilities. However, the Plaintiffs appear to acknowledge that legislative action is necessary to resolve these issues. (*See, e.g.*, Compl. at ¶¶ 45 (pay raise bill for corrections officers), 75 (deferred maintenance), 77 (general availability of funding).) Inasmuch as the Plaintiffs' claim for unconstitutional conditions of confinement is traceable to actual or perceived legislative inaction, they cannot satisfy this element of standing as to Secretary Sorsaia.

Nevertheless, even if the Plaintiffs could trace their alleged injuries to Secretary Sorsaia's conduct, it is "merely speculative" that such injuries would be redressed by a favorable decision against him. *See Doe*, 713 F.3d at 755. Relevant here, redressability is "problematic when third persons not party to the litigation must act in order for an injury to arise or be cured." *Id.* Notably, the Plaintiffs cite no authority imputed to the Cabinet Secretary which might grant him the ability to directly remedy the alleged violations in the Complaint. Indeed, while they request relief in the form of spending state budget surplus funds on deferred maintenance and staffing, Secretary Sorsaia's budget authority extends only so far as "[f]ormulat[ing] comprehensive budgets for consideration by the Governor." W. Va. Code § 5F-2-2(a)(7). Although he maintains the authority to "[e]nter into contracts or agreements requiring the expenditure of public funds and authorize the expenditure or obligation of public funds as authorized by law," such authority necessarily requires legislative approval. *Id.* § 5F-2-2(a)(8); *see also id.* § 15A-1-9(e)(1). Moreover, the state Legislature has instructed that the Secretary's powers "shall not

10

exceed or be interpreted as authority to exceed the powers granted by the Legislature to the various commissioners, directors, or board members of the various departments, agencies, or boards that comprise and are incorporated into each secretary's department." *Id.* The state Legislature has vested the Commissioner of the Division of Corrections and Rehabilitation not only with general supervisory authority over the administration of institutions within the jurisdiction of WVDHS, *id.* § 15A-3-4(a)(1), but also with the specific authority to

> [e]stablish rules, policies, and regulations in writing governing all subdivisions and institutions within the division; [and]
> Supervise the treatment, custody, and discipline of all inmates and residents and the maintenance of the institutions and their industries;

*Id.* §§ 15A-3-4(a)(3), (8). The Plaintiffs ostensibly acknowledge as much, noting in their Complaint that the current Commissioner of WVDCR is William K. Marshall, III, and identifying the above statutory provisions as vesting the WVDCR with such authority. (Compl. at ¶¶ 19, 20.) Thus, it is speculative, at best, that an order enjoining Secretary Sorsaia from engaging in unconstitutional practices and compelling him to "implement and enforce policies, procedures, and practices" to alleviate the alleged overcrowding and to "make all necessary structural and/or infrastructural repairs, hazard abatements, financial investments, and personnel changes/additions" to remedy understaffing and deferred maintenance would redress the Plaintiffs' claimed injuries. Therefore, dismissal is appropriate as to Secretary Sorsaia.

  B. *Governor Justice*

Likewise, Governor Justice contends the Plaintiffs "cannot rely on [his] 'general' duty and right to enforce state law and oversee the executive branch to satisfy the traceability element of standing." (Justice Mem. at 13) (Document 16.) Thus, barring reliance on Governor Justice's general law enforcement authority, he maintains that there is no causal connection between the

Plaintiffs' alleged injuries and his official conduct. He further asserts that an order granting the Plaintiffs' requested relief is not likely to redress their alleged injuries because he lacks specific legal authority over conditions of confinement in state correctional facilities and any action involving appropriations necessarily requires approval by the state Legislature. (*See* Justice Mem. at 14.)

The Plaintiffs incorporate their arguments regarding Eleventh Amendment immunity into their standing analysis. To that end, they argue that Governor Justice, "at minimum, has the legal ability to address overcrowding" due to his authority to grant reprieves and pardons. (Pls.' Resp. in Opp. to Def. Justice's Mot. to Dismiss at 7) (Document 18.) As to understaffing, the Plaintiffs point to the Governor's declaration of a state of emergency and activation of the National Guard in state jails and prisons via Executive Order in August 2022. (*Id.* at 8.) Regarding deferred maintenance, they argue that Governor Justice "has the power to propose increased funding for the deferred maintenance from various sources." (*Id.*) They maintain that the Governor's power to do all of the above relies not on his general duties and law enforcement right as governor, but on "his specific power deriving, in part, from the state constitution for setting the budget for certain items, including corrections." (*Id.* at 8–9.) In addition, the Plaintiffs dispute the assertion that a lack of public spending is the sole basis for the alleged unconstitutional conditions or that such conditions "will be entirely alleviated without additional staffing and additional policy changes." (*Id.* at 17.) They appear to argue that at least the alleged overcrowding could be remedied by the issuance of a prisoner release order pursuant to 18 U.S.C. § 3626. The Plaintiffs further contend the West Virginia Supreme Court of Appeals established "the requisite connection between overcrowding and the Governor" in *State ex rel. Dodrill v. Scott*, 352 S.E.2d 741 (W. Va. 1986),

when it noted that "to bring our overcrowded prisons into constitutional compliance, the Governor may pardon, parole, transfer, or otherwise make constitutional accommodations for those convicts already incarcerated." (Pls.' Resp. in Opp. to Def. Justice's Mot. to Dismiss at 17 (quoting *Dodrill*, 352 S.E.2d at 745).) Thus, they maintain that Governor Justice's arguments are "wholly unsupported under the federal statute and West Virginia precedent." (*Id.*)

Governor Justice maintains that the Plaintiffs' reliance on his pardon and budget powers is not enough to demonstrate standing. As to his pardon or commutation power, he argues that such power is "wholly discretionary" and that federal courts are specifically precluded from controlling the discretionary actions of state officials. (Justice Reply at 3, 8) (Document 23.) He asserts that courts have refused to exercise jurisdiction over a state governor to remedy alleged overcrowding based on the governor's pardon and commutation powers. (*Id.* at 3.) He further contends the Plaintiffs' reliance on prisoner release orders as a potential remedy for overcrowding is inappropriate in the context of § 1983 litigation and thus misplaced.[2] (*Id.* at 9.) To the extent that the Plaintiffs rely on his power to propose public spending, he maintains that such action "does not remedy the wrongs as alleged" in the Complaint because, "[a]ccording to Plaintiffs, it is the spending *itself* that … is required to remedy the alleged Eighth Amendment violations." (*Id.* at 4; *see also id.* at 7.) Thus, he argues that any reliance on his power to propose appropriations "is to base redressability only on speculation of future, hypothetical appropriations" which is insufficient to establish standing. (*Id.* at 7.)

For the same reasons they lack standing to sue Secretary Sorsaia, the Court finds that the Plaintiffs lack standing to pursue this action against Governor Justice. The Plaintiffs point to the

---

2 The Plaintiffs do not appear to seek the issuance of prisoner release orders from this Court as a remedy for their alleged injuries, and the Court does not consider this point further as it relates to the standing analysis.

13

Governor's pardon and budget powers as evidence of his direct control over West Virginia's correctional facilities. However, neither is sufficient to establish a "causal connection" between his conduct and the injuries alleged, nor can either ensure that an order against the Governor is likely to remedy the alleged unconstitutional conditions of confinement. As an initial matter, the Governor's pardon power is discretionary and the Court "cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform … merely ministerial in its nature, refuses or neglects to take such action." *Ex parte Young*, 209 U.S. 123, 158 (1908). Thus, to the extent the Plaintiffs suggest Governor Justice can remedy the alleged overcrowding by using his discretionary pardon power, the Court cannot order such relief.[3]

In addition, the Plaintiffs' reliance on *Dodrill* as establishing traceability or redressability appears to be misplaced. In *Dodrill*, the West Virginia Supreme Court of Appeals found invalid two Executive Orders issued by the Governor which attempted to alleviate overcrowding in state penal facilities by directing the Commissioner of the Department of Corrections to stop accepting inmates into his custody until conditions at each facility were deemed appropriate such that more inmates could be accepted. *See Dodrill*, 352 S.E.2d at 743–44. In finding that West Virginia's statutory scheme mandated the Department of Corrections to receive convicted persons and incarcerate them in a state penal facility, the *Dodrill* court acknowledged that, at the time, "obedience to this statutory scheme leads inexorably to unconstitutional overcrowding." *Id.* at 745. Nevertheless, the court noted that "until the legislature either amends the statutory scheme

---

3 The Court also notes that Governor Justice's alleged authority to alleviate understaffing by declaring a state of emergency and issuing Executive Orders dispatching the National Guard to staff state facilities is also a discretionary function of his position and not subject to the Court's control.

of sentencing and commitment or appropriates the funds necessary to provide constitutional accommodations for all" inmates, the Governor's "only permissible course of action" was to exercise his discretionary pardon power.  *Id.*   Read and cited in proper context, *Dodrill* appears to support Governor Justice's position that he does not have the requisite authority to provide the relief sought here. To be clear, this Court has no authority to order the Governor to perform discretionary acts and the court's discussion in *Dodrill* is not to the contrary.

As the Court noted with regard to Secretary Sorsaia, the text of the Complaint suggests that the Plaintiffs' injuries are traceable to and redressable by the independent action of the state Legislature and Commissioner of DCR, neither of which are parties to this matter.  Thus, to the extent the Plaintiffs rely on Governor Justice's general law enforcement powers and duties as governor, they have not established the requisite "causal connection" between the Governor's official conduct and their alleged injuries, *see Disability Rts. S.C.*, 24 F.4th at 901, and it remains "merely speculative" that such injuries would be redressed by a favorable decision against the Governor, *see Doe*, 713 F.3d at 755.   Inasmuch as the Plaintiffs lack standing to pursue this action against the named Defendants, the Court does not address the remaining grounds for dismissal presented by the individual Defendants.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Mark Sorsaia's Motion to Dismiss* (Document 12) be **GRANTED**.   The Court further **ORDERS** that *Governor Justice's Combined Motion to Dismiss and to Transfer Division* (Document 15) be **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: July 2, 2024

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA